Ilyce Shugall (CA Bar No. 250095)
Claudia Valenzuela*
IMMIGRANT LEGAL DEFENSE
1301 Clay St., #70010
Oakland, CA 94612
Telephone: (415) 758-3765
ilyce@ild.org

*Attorneys for Petitioner Mr. Rivera Larios*

*\*Pro hac vice application forthcoming*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

Jorge RIVERA LARIOS,

        Petitioner,

v.

SERGIO ALBARRAN, in his official capacity, San Francisco Field Office Director, U.S. Immigration and Customs Enforcement;

KRISTI NOEM, in her official capacity, Secretary of the U.S. Department of Homeland Security; and

PAMELA BONDI, in her official capacity, Attorney General of the United States,

        Respondents.

Case No. 3:25-cv-8799

**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

1. Petitioner Jorge Rivera Larios is a 43-year-old citizen of Mexico who has lived in California since 2017, when he arrived fleeing persecution. Since then, he has built a life in Lakeport, California. He is married to a U.S. citizen and is a father to a U.S. citizen son. He works in the agricultural industry.

2. In September 2021, U.S. Immigration and Customs Enforcement (ICE) arrested Mr. Rivera Larios near his home in Lakeport, California. As Mr. Rivera Larios was previously removed, on September 29, 2021, ICE issued a reinstatement of removal order under 8 U.S.C. § 1231(a)(5). Because Mr. Rivera Larios fears torture if returned to Mexico, U.S. Citizenship and Immigration Services (USCIS) conducted a reasonable fear interview. Subsequently, a USCIS officer made a positive reasonable fear determination, and on October 20, 2021, Mr. Rivera Larios's case was referred to immigration court for withholding only proceedings.

3. On January 28, 2022, Mr. Rivera Larios was released from ICE custody on an Order of Supervision. He was released, at least in part, due to symptoms he was experiencing because of a traumatic brain injury as well as due to heighted COVID-19 risk factors. Mr. Rivera Larios was subject to ICE reporting requirements and initially was also on the Intensive Supervision Appearance Program (ISAP). Mr. Rivera Larios has complied with both ICE and ISAP reporting obligations.

4. Mr. Rivera applied for U Nonimmigrant status, as he was a victim of a violent crime in the United States. USCIS received the application on July 31, 2023. On January 2, 2025, the San Francisco Immigration Court administratively closed his withholding only proceedings due to the pending application for U Nonimmigrant status.

5. On October 14, 2025, Mr. Rivera Larios presented himself at the San Francisco ICE Field Office for his annual in-person check-in with ICE. ICE arrested Mr. Rivera Larios and revoked his release under 8 U.S.C. § 1231, without providing any notice, or pre-deprivation hearing before a neutral arbiter. An ICE officer alleged that Mr. Rivera Larios was being arrested due to contact with law enforcement in August 2025, though no charges were filed against him. Mr. Rivera Larios is being processed at the San Francisco ICE field office.

6. ICE's revocation of Mr. Rivera Larios's release and re-arrest of Mr. Rivera Larios is in violation of 8 U.S.C. § 1231(a)(2) and (6), which only allows for re-detention after the removal period upon a

1. finding of flight risk or danger to the community. ICE has not made a finding as to either in Mr. Rivera Larios's case, and thus, his arrest is unlawful, and ICE must immediately release Mr. Rivera Larios.

7. ICE's revocation of Mr. Rivera Larios's release and re-arrest of Mr. Rivera Larios is also in violation of the Due Process Clause of the Fifth Amendment. It is well-established that Mr. Rivera Larios has a liberty interest in his current freedom, and that the Due Process Clause mandates that immigration detention serves a legitimate purpose: to mitigate flight risk and prevent danger to the community. Neither of those purposes are served by Mr. Rivera Larios's detention, given that ICE already determined that Mr. Rivera Larios was neither a flight risk or a danger when releasing him over three-and-a-half years ago, and where there are no changed circumstances that would alter that analysis. Due process requires that Mr. Rivera Larios be immediately released from custody, and that the conditions of his Order of Supervision that were in place at the time of his arrest be reinstated. If the government wants to argue that some material change in circumstances has occurred such that the terms of Mr. Rivera Larios's release should be modified in some way, they can do so before a neutral arbiter while he remains at liberty.

**JURISDICTION AND VENUE**

8. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*.

9. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

10. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq*., the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the All Writs Act, 28 U.S.C. § 1651.

11. Venue is properly before this Court pursuant to 28 U.S.C. § 1391(e)(1) because the Respondents are employees or officers of the United States, acting in their official capacity; because a substantial part of the events or omissions giving rise to the claim occurred or will occur in the Northern District of California; because one of the Respondents resides in this District; and because there is no real property involved in this action. Petitioner is presently detained in the Northern District of California.

**PARTIES**

12. Petitioner Jorge Rivera Larios is a national of Mexico who has lived in the United States since 2017. On January 28, 2022, ICE released Mr. Rivera Larios on an Order of Supervision. Between January 28, 2022 and today, he has lived in the community, in compliance with all supervision requirements imposed by ICE. Mr. Rivera Larios briefly served time in Lake County jail after his release from ICE custody, which was known to ICE and ISAP officers. He was required to report to county jail for a conviction that occurred prior to his September 2021 arrest by ICE. On October 14, 2025, ICE detained Mr. Rivera Larios at its San Francisco office, where he presented himself to comply with his annual check-in requirement. On information and belief, Mr. Rivera Larios is currently being held at the San Francisco ICE field office and under the direct control of Respondents.

13. Respondent Sergio Albarran is sued in his official capacity as the Director of the San Francisco Field Office of U.S. Immigration and Customs Enforcement. Respondent Albarran is a legal custodian of Petitioner and has authority to release him.

14. Respondent Kristi Noem is sued in her official capacity as the Secretary of the U.S. Department of Homeland Security (DHS). In this capacity, Respondent Noem is responsible for the implementation and enforcement of the Immigration and Nationality Act, and oversees U.S. Immigration and Customs Enforcement, the component agency responsible for Petitioner's detention. Respondent Noem is a legal custodian of Petitioner.

15. Respondent Pamela Bondi is sued in her official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice (DOJ). In that capacity, she has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review (EOIR), which administers the immigration courts and the BIA. Respondent Bondi is a legal custodian of Petitioner.

## STATEMENT OF FACTS

**Factual Background**

16. Petitioner Jorge Rivera Larios was born in Mexico and is a resident of California. In 2017, Mr. Rivera Larios fled Mexico after he was beaten and left for dead by members of the Sinaloa Cartel. Mr. Rivera Larios was arrested multiple times in Lake County, California between 2017 and September 2021 when he was arrested by ICE.

17. Because Mr. Rivera Larios fears torture in Mexico, a USCIS officer conducted a reasonable fear interview on October 15, 2021. As he was found to have a reasonable fear of persecution or torture, he was referred to the immigration court for withholding only proceedings.

18. On January 28, 2022, ICE released Mr. Rivera Larios on an Order of Supervision. Mr. Rivera Larios complied with all reporting requirements with ICE and ISAP.

19. Mr. Rivera Larios applied for withholding of removal and deferral of removal under the Convention Against Torture due to the harm he suffered in Mexico and due to the harm he fears if returned. That application remains pending with the San Francisco Immigration Court. On January 2, 2025, the immigration court administratively closed Mr. Rivera Larios's proceedings due to a pending application for U nonimmigrant status.

20. Mr. Rivera Larios was severely beaten in the United States on two occasions. He applied for U Nonimmigrant Status based on one of the beatings, as he cooperated with law enforcement after the attack. The application was received by USCIS on July 31, 2023 and remains pending. Mr. Rivera Larios suffered from headaches and dizziness due to the traumatic brain injuries that resulted from the beating in Mexico as well as in the United States.

21. Since his release from ICE custody in January 2022, Mr. Rivera Larios married his U.S. citizen wife and together they had a son. Mr. Rivera Larios has worked in agriculture, in the fields, in Lake County, California to support himself and his family.

22. On October 14, 2025, Mr. Rivera Larios attended his ICE check-in at the San Francisco ICE Field Office. At his check-in, ICE officers arrested and detained Mr. Rivera Larios. An ICE officer stated he was being arrested because he had contact with law enforcement in August 2025 and therefore violated his order of supervision.

## ARGUMENT

### I. Legal Framework

23. The Due Process Clause protects "all 'persons'"—including all noncitizens—against arbitrary detention. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process Clause protects. *Id.* at 690.

24. The INA allows ICE to detain individuals who have final orders of removal for the 90-day "removal period" following the date on which the order of removal became final for the purpose of effectuating removal. *See* 8 U.S.C. § 1231(a)(1)(A)–(B), (2)(A).

25. After this 90-day removal period, certain individuals may be detained *only* if they pose "a risk to the community" or are "unlikely to comply" with removal. *Id.* § 1231(a)(6). Otherwise, individuals with final orders of removal who are not removed within the 90-day removal period must be released subject to DHS supervision. *Id.* § 1231(a)(3).

26. Even individuals detained beyond the 90-day removal period pursuant to § 1231(a)(6) cannot be held indefinitely, pursuant to the Due Process Clause. *See Zadvydas*, 533 U.S. at 690, 697. Rather, post-final order detention is only authorized for a "period reasonably necessary to secure removal." *Id.* at 699–700. "[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699–700; *see* 8 C.F.R. § 241.13(b)(1) (authorizing release after ninety days where removal not reasonably foreseeable).

27. Noncitizens subject to a removal order may be released pursuant to 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13,[1] subject to an Order of Supervision. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 154 (W.D.N.Y. 2025).

28. These same regulations govern revocation of release. Under 8 C.F.R. § 241.4(l), noncitizens released under this provision can have their release revoked if they violate the conditions of release, *id.* § 241.4(l)(1), or if a district director determines that revocation is in the public interest, circumstances do not reasonably permit referral of the case to the ICE Executive Director, and the district director believes (i) the purposes of release have been served; (ii) the noncitizen violated any condition of release; (iii) it is appropriate to enforce a removal order or commence removal proceedings; or (iv) the conduct of the noncitizen or any other circumstance indicates release would no longer be appropriate, *id.*

---

[1] 8 C.F.R. § 241.13 concerns detention and release procedures involving individuals for whom ICE must make a determination on whether there is a significant likelihood of removal in the reasonably foreseeable future. It does not appear that Mr. Rivera Larios was released pursuant to this regulation; therefore, this Petition focuses on 8 C.F.R. § 241.4. However, there is also no significant likelihood that Mr. Rivera Larios can be removed in the reasonably foreseeable future, as he has an application for deferral of removal pending in immigration court.

§ 241.4(l)(2); *see Ceesay*, 781 F. Supp. 3d at 161 (citing 8 C.F.R. §§ 1.2, 241.4(l)(2) and explaining that the Homeland Security Act of 2002 renamed the position titles listed in § 241.4).

29. The regulations only permit certain officials to revoke an order of supervision: the ICE Executive Director, a field office director, or an official "delegated the function or authority . . . for a particular geographic district, region, or area." *Ceesay*, 781 F. Supp. 3d at 161. And for a delegated official to have authority to revoke an order of supervision, the delegation order must explicitly say so. *See Ceesay*, 781 F. Supp. at 161 (finding a delegation order that "refers only to a limited set of powers under part 241 that do not include the power to revoke release" insufficient to grant authority to revoke an order of supervision).

30. The regulations require that, upon revocation, the noncitizen be notified of the reasons for revocation, and that they be "afforded an initial information interview promptly" after re-detention, based upon which ICE may decide to release the noncitizen. *Id.* § 241.4(l)(1), (3).

**II.    Mr. Rivera Larios's Re-Detention Outside of the Removal Period Violates § 1231(a)(2) and (6).**

31. ICE released Mr. Rivera Larios on January 28, 2022. Mr. Rivera Larios has fully complied with all terms of supervision imposed by ICE since his release. Until he was arrested on October 14, 2025, ICE has not alleged otherwise.

32. Because Mr. Rivera Larios's 90-day removal period has run, ICE cannot detain him pursuant to 8 U.S.C. § 1231(a)(2). ICE released Mr. Rivera Larios pursuant to § 1231(a)(3). Mr. Rivera-Larios' custody determination notice also reflects that he was released pursuant to *Fraihat v. ICE*, 445 F.Supp.3d 709 (April 20, 2020 C.D. Cal.) as he was identified as having one or more risk factors for COVID-19, specifically, being a smoker. There has been no change in circumstances since Mr. Rivera Larios's release from custody. Accordingly, there is no statutory basis for ICE's detention of Mr. Rivera Larios Rather, his re-detention is in violation of 8 U.S.C. § 1231(a)(6).

33. Additionally, ICE's failure to abide by its own regulations while re-detaining Mr. Rivera Larios pursuant to § 1231 further underscores ICE's violation of § 1231. The regulations only allow ICE to revoke prior release where ICE has determined that the noncitizen has violated the conditions of release, or where a district director determines that it is in the public interest to revoke release. 8 C.F.R. §

241.4(l). Where ICE has not made such a determination here, under its own regulations, it has failed to make a determination that Mr. Rivera Larios is now a flight risk or danger to the community, and thus, has no statutory authority to detain Mr. Rivera Larios.

34. Because ICE previously released Mr. Rivera Larios on an Order of Supervision and there is no statutory basis to re-detain Mr. Rivera Larios, the Court should order that ICE immediately release Mr. Rivera Larios.

### III. Mr. Rivera Larios's Re-Detention Without Notice or Hearing Violates the Due Process Clause.

35. In the alternative, the Due Process Clause of the Constitution makes it unlawful for Respondents to re-arrest Mr. Rivera Larios without first providing a pre-deprivation hearing before a neutral adjudicator to determine whether circumstances have materially changed since his release under an Order of Supervision in January 2022, such that alteration in the terms of his conditional release would now be warranted.

36. Federal district courts in California, in this District and otherwise, have repeatedly recognized that due process requires a hearing for a noncitizen released by DHS under its supervision, like Mr. Rivera Larios, *before* ICE can possibly re-detain him. *See, e.g.*, *Pinchi v. Noem*, No. 25-cv-05632, 2025 WL 1853763, at *2–3 (N.D. Cal. July 4, 2025); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL1771438, at *3–4, 6 (N.D. Cal. June 26, 2025); see also *J.O.L.R. v. Wofford*, 1:25-cv-1241, 2025 WL 2718631, at *4 (E.D. Cal. Sept. 23, 2025); *Rodriguez Rodriguez v. Kaiser*, 1:25-cv-1111-KES-SAB, 2025 WL 2545359, at *5–6 (E.D. Cal. Sept. 4, 2025); *Maklad v. Murray*, 1:25-cv-946, 2025 WL 2299376, at *8 (E.D. Cal. Aug. 8, 2025); *Galindo Arzate v. Andrews*, No. 1:25-cv-00942-KES-SKO, 2025 WL 2230521, at *4–6 (E.D. Cal. Aug. 4, 2025); *Singh v. Andrews*, No. 1:25-cv-00801-KES-SKO, 2025 WL 1918679, at *7–8 (E.D. Cal. July 11, 2025); *Doe v. Becerra*, --- F. Supp. 3d ----, 2025 WL 691664, at *6, 8 (E.D. Cal. Mar. 3, 2025).

37. Detention violates the Due Process Clause unless it is "reasonably related" to the government's purpose, which in the immigration context is to prevent danger or flight risk. *See Zadvydas*, 533 U.S. at 690–91 (discussing twin justifications of detention as preventing flight and protecting the community); *id.* at 699 (purpose of detention is "assuring the [noncitizen]'s presence at the moment of removal"). ICE

previously released Mr. Rivera Larios on January 28, 2022 because he was neither a risk to the community or unlikely to comply with a removal order under 8 U.S.C. § 1231(a)(6). *See Singh v. Andrews*, No. 1:25-cv-801, 2025 WL 1918679, at *2 (E.D. Cal. July 11, 2025) ("DHS, at least implicitly, made a finding that petitioner was not a flight risk when it released him.").

38. Prior to re-detaining Mr. Rivera Larios, ICE made no findings that he poses a danger or flight risk that warrants post-final-order detention – as previously determined by ICE. *See* 8 C.F.R. § 241.4(e). Nor has ICE provided Mr. Rivera Larios with notification for the reasons for revocation of his release, nor has it provided Mr. Rivera Larios with an informal interview upon his re-detention. 8 C.F.R. § 241.4(l). ICE has made no representations or allegations that Mr. Rivera Larios violated any conditions of his release, other than stating that his encounter with law enforcement in August 2025 was a violation, nor has it represented that a district director found revocation proper under the regulation's requirements. *See* 8 C.F.R. § 241.4(l)(1)–(2). Moreover, ICE has not made a determination that removal is foreseeable in Mr. Rivera Larios's case, particularly where Mr. Rivera Larios is in withholding only proceedings in immigration court.

39. In the intervening three-and-a-half years since ICE released Mr. Rivera Larios, Mr. Rivera Larios has proven that ICE's assessment that he was neither a flight risk nor a danger was correct, as there have been no changed circumstances relating to his risk of danger or flight.

40. Mr. Rivera Larios has never violated the terms of his supervised release. He has dutifully appeared for all ICE and ISAP appointments, including the ICE appointment October 14, 2025, in which ICE detained him. He has been a contributing member of society and has supported his family. ICE has no basis to find that Mr. Rivera Larios is now a risk to the community or unlikely to comply with a removal order.

41. "Courts analyze [ ] due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)). Mr. Rivera Larios

has both a protected liberty interest in his release, and the government was required to give him a pre-deprivation hearing before detaining him.

### A. Mr. Rivera Larios Has a Protected Liberty Interest in His Release

42. Mr. Rivera Larios's liberty from immigration custody is protected by the Due Process Clause. *Zadvydas*, 533 U.S. at 690.

43. Since January 2022, Mr. Rivera Larios exercised that freedom pursuant to his prior release from custody by ICE and placement on an Order of Supervision. He thus retains a weighty liberty interest under the Due Process Clause of the Fifth Amendment in avoiding re-incarceration. *See Young v. Harper*, 520 U.S. 143, 146–47 (1997); *Gagnon v. Scarpelli*, 411 U.S. 788, 781–82 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 482–83 (1972).

44. Moreover, Mr. Rivera Larios continued presenting himself before ICE and ISAP for regular check-in appointments for the past three-and-a-half years, where ICE did not seek to re-arrest him during. One year ago, when Mr. Rivera Larios last reported to ICE, ICE gave him a future date and time to appear. On October 14, 2025, he reported as required.

45. In *Morrissey v. Brewer*, 408 U.S. 471, the Supreme Court examined "the nature of the interest" that a parolee has in "his continued liberty": "[S]ubject to the conditions of his parole, [a parolee] can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." *Id.* at 481–82.

46. Accordingly, "the parolee has relied on at least an implicit promise that the parole will be revoked only if he fails to live up to the parole conditions." *Id.* at 482. The Court clarified that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a grievous loss on the parolee and often others." *Id.* In turn, "[b]y whatever name, the liberty is valuable and must be seen within the protection of" due process. *Id.*

47. This basic principle – that individuals have a liberty interest in their conditional release – has been reinforced by the Supreme Court and circuit courts on numerous occasions. *See, e.g.*, *Young*, 520 U.S. at 152 (holding that individuals placed in a pre-parole program created to reduce prison overcrowding have a protected liberty interest requiring pre-deprivation process); *Gagnon*, 411 U.S. at 781–82 (holding that individuals released on felony probation have a protected liberty interest requiring

pre-deprivation process); *Hurd v. Dist. of Columbia*, 864 F.3d 671, 683 (D.C. Cir. 2017) ("[A] person who is in fact free of physical confinement – even if that freedom is lawfully revocable – has a liberty interest that entitles him to constitutional due process before he is re-incarcerated."). When analyzing the issue of whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as charactered by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2020).

48. Accordingly, courts in this Circuit, have recently and repeatedly held that noncitizens previously released by ICE have a liberty interest in their conditional release pursuant to *Morrissey*. *see Guillermo M.R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) ("[T]he liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL1771438, at *3 (N.D. Cal. June 26, 2025); *J.O.L.R. v. Wofford*, 1:25-cv-1241, 2025 WL 2718631 (E.D. Cal. Sept. 23, 2025); *Rodriguez Rodriguez v. Kaiser*, 1:25-cv-1111-KES-SAB, 2025 WL 2545359, at *4 (E.D. Cal. Sept. 4, 2025); *Maklad v. Murray*, 1:25-cv-946, 2025 WL 2299376 (E.D. Cal. Aug. 8, 2025); *Doe v. Becerra*, --- F. Supp. 3d ----, 2025 WL 691664, at *4–5 (E.D. Cal. Mar. 3, 2025).

49. Similarly, Mr. Rivera Larios has a liberty interest in his conditional release pursuant to *Morrissey*. For the last three-and-a-half years, Mr. Rivera Larios has been able "to do a wide range of things open to persons" who have never been in custody, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. Mr. Rivera Larios has been able to live in Lakeport, California and spend time with his young U.S. citizen son and his wife. He has been a supportive parent to his son and a partner to his wife – "undoubtedly one of the most 'enduring attachments of normal life.'" *Rodriguez Rodriguez*, 2025 WL 2545359, at *4 (quoting *Morrissey*, 408 U.S. at 482).

50. DHS's release of Mr. Rivera Larios in 2022 reflected a determination that he did not pose a flight risk or danger to the community. *Rodriguez Rodriguez*, 2025 WL 2545359, at *4 (citing *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia ex rel. A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018)); 8 C.F.R. § 1236.1 (c)(8).

51. Mr. Rivera Larios followed all terms of his release and appeared at all check-ins as required. ICE rearrested Mr. Rivera Larios "without showing any changed circumstances, contradicting the 'implicit promise that [petitioner's freedom] will be revoked only if []he fails to live up to the [release] conditions.'" *Rodriguez Rodriguez*, 2025 WL 2545359, at *4 (quoting *Morrissey*, 408 U.S. at 482); 8 C.F.R. § 241.4(l).

### B. Mr. Rivera Larios's Liberty Interest Mandates a Hearing Before Re-Arrest

52. Mr. Rivera Larios asserts that, here, (1) where he faces civil detention; (2) where he has been at liberty for three-and-a-half years, during which time he has complied with all conditions of release; and (3) where no change in circumstances exist that would justify his detention, due process mandates that he receive notice and a hearing before a neutral adjudicator *prior* to any re-arrest.

53. Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "The more important the interest and the greater the effect of its impairment, the greater the procedural safeguards that [government] must provide to satisfy due process." *Haygood v. Younger*, 769 F.2d 1350, 1355–56 (9th Cir. 1985) (en banc) (citing *Morrissey*, 408 U.S. at 481–82). The procedural protections required in a given situation are evaluated under the test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

54. Under the *Mathews* test, the government was required to give Mr. Rivera Larios procedural protections before depriving him of his freedom.

55. First, Mr. Rivera Larios has a profound private interest in remaining free from detention. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

56. Mr. Rivera Larios has been at liberty for three-and-a-half years, and during that time, continued his life in Lakeport with his family, including his son and wife. He has been working lawfully, pursuant to employment authorization provided to him by DHS. His detention now denies him that freedom. *See Rodriguez Rodriguez*, 2025 WL 2545359, at *5; *Galindo Arzate*, 2025 WL 2230521, at *5. Thus, Mr. Rivera Larios has a profound private interest at stake in this case, which must be weighed heavily when determining what process is owed under the Constitution. *See Mathews*, 424 U.S. at 334–35.

57. Second, "'the risk of erroneous deprivation of liberty is high' where, as here, 'the petitioner has not received any bond or custody redetermination hearing.'" *Rodriguez Rodriguez*, 2025 WL 2545359, at *5 (quoting *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025)).

58. Because immigration detention is civil detention, it is "nonpunitive in purpose and effect," and is only justified when a noncitizen presents a risk of flight or danger to the community. *Zadvydas*, 533 U.S. at 690.

59. In releasing Mr. Rivera Larios in January 2022, ICE determined that he was neither a flight risk nor a danger to the community. There are no changed circumstances relating to Mr. Rivera Larios's risk of flight or dangerousness since ICE made such a determination three-and-a-half years ago. Mr. Rivera Larios has attended every ICE check-in since he was released. In fact, Mr. Rivera Larios was arrested *at* his ICE check-in on October 14, 2025, without notice and without being provided any procedural safeguards to determine whether the circumstances had changed such that his re-detention was justified. *See Galindo Arzate*, 2025 WL 2230521, at *5.

60. Indeed, it is doubtful that ICE *could* justify Mr. Rivera Larios's detention. There have been no changed circumstances as to Mr. Rivera Larios's risk of flight or danger. To the extent ICE relies on Mr. Rivera Larios's contact with law August 2025, this contact did not lead to any criminal charges. No open charges, criminal cases, or warrants remain for Mr. Rivera Larios. *See Galindo Arzate*, 2025 WL 2230521, at *5 (holding that "public safety is not jeopardized" where petitioner was arrested for a nonviolent misdemeanor and was not charged) (quoting *Doe v. Noem*, No. 2:25-cv-01103-DAD-AC, 2025 WL 1134977, at *8 (E.D. Cal. Apr. 17, 2025); *Doe v. Becerra*, 2025 WL 691664, at *5 (E.D. Cal. Mar. 3, 2025) (explaining that immigration judge's prior determination that petitioner was not flight risk

1  or danger had "largely borne out" because petitioner was only arrested for a misdemeanor in the
2  interim).
3  61.  Nor has ICE shown any changed circumstances relating to its ability to remove Mr. Rivera
4  Larios. Though administratively closed, Mr. Rivera Larios's withholding only proceedings remain
5  pending in immigration court.
6  62.  Additionally, ICE has failed to follow its own procedural regulations for revocation, further
7  increasing the likelihood of erroneous deprivation and itself likely constituting a due process violation.
8  *See Diaz v. Wofford*, No. 1:25-cv-01079 JLT EPG, 2025 WL 2581575, at *7 (E.D. Cal. Sept. 5, 2025)
9  (citing *Zhu v. Genalo*, No. 1:25-cv-06523, 2025 WL 2452352, at *7 (S.D.N.Y. Aug. 26, 2025)); *Delkash*
10  *v. Noem*, 2025 WL 2683988, at *5 (C.D. Cal. Aug. 28, 2025); *Santamaria Orellana v. Baker*, No. 1:25-
11  cv-1788, 2025 WL 2444087, at *6–8 (D. Md. Aug. 25, 2025); *M.S.L. v. Bostock*, No. 6:25-cv-01204,
12  2025 WL 2430267, at *12 (D. Or. Aug. 21, 2025); *Ceesay*, 781 F. Supp. 3d at 166.[2] To date, ICE has
13  not provided notice of the reasoning for revocation of Mr. Rivera Larios's release, nor has it provided an
14  interview to determine whether such revocation was justified. 8 C.F.R. § 241.4(l)(1).
15  63.  None of the reasoning that would justify revocation under the regulation applies to Mr. Rivera
16  Larios, as he has not violated any condition of release, nor is it in the public interest to revoke his
17  release. 8 C.F.R. § 241.4(l)(1)–(2). And his revocation was not effectuated by the ICE Executive
18  Director, a district director, or another agent specifically delegated the authority to revoke his release. 8
19  C.F.R. § 241.4(l).

---

[2] In these cases, courts outside of this district have detailed how violation of the procedures set forth in 8 C.F.R. § 241.4(l) constitute a due process violation. Mr. Rivera Larios does not contend that the procedures set forth in 8 C.F.R. § 241.4(l), if properly followed, would be sufficient to provide him with due process as required under the Fifth Amendment. *See Diouf v. Napolitano*, 634 F.3d 1081, 1091 (9th Cir. 2011), *abrogated on other grounds by Johnson v. Arteaga-Martinez*, 142 S. Ct. 1827 (2022); *Casas-Castrillon v. DHS*, 535 F.3d 942, 951–52 (9th Cir. 2008), *abrogated on other grounds in part by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *see also Zadvydas*, 533 U.S. at 701 (holding that indefinite detention under § 1231(a)(6) raised serious constitutional concerns, in part because "the sole procedural protections available to the [noncitizen] are found in administrative proceedings, where the [noncitizen] bears the burden of proving that his is not dangerous"). However, ICE has failed to meet even this bare minimum of process that it set out in its own regulations, further underscoring the violation of Mr. Rivera Larios's due process rights.

64. Given the absence of any procedural safeguards to determine if Mr. Rivera Larios's re-detention is justified, and given the absence of any apparent justification for re-detaining Mr. Rivera Larios, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *Rodriguez Rodriguez*, 2025 WL 254359, at *5 (quoting *A.E.*, 2025 WL 1424382, at *5). This high likelihood of erroneous deprivation counsels heavily in favor of providing Mr. Rivera Larios procedural safeguards.

65. And third, the government's interest in detaining Mr. Rivera Larios without a bond hearing is low. In immigration court, bond hearings are "routine and impose a 'minimal' cost." *Rodriguez Rodriguez*, 2025 WL 2545359, at *5 (quoting *Doe v. Becerra*, --- F. Supp. 3d ----, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)).

66. Providing Mr. Rivera Larios with a hearing before a neutral decisionmaker to determine whether there is clear and convincing evidence that he is a flight risk or danger to the community would impose only a *de minimis* burden on the government, because the government routinely provides this sort of review to individuals in Mr. Rivera Larios's same circumstances. 8 C.F.R. § 241.4(e)–(f). Here, the "fiscal and administrative burdens" that a pre-deprivation bond hearing would impose is nonexistent in the immigration context. *See Mathews*, 424 U.S. at 334–35.

67. The government's interest in detaining Mr. Rivera Larios is further diminished where Mr. Rivera Larios has appeared before ICE and ISAP on a regular basis since his release, for every appointment that has been scheduled. *See Morrissey*, 408 U.S. at 482 ("It is not sophistic to attach greater importance to a person's justifiable reliance in maintaining his conditional freedom so long as he abides by the conditions on his release, than to his mere anticipation or hope of freedom.") (internal quotation omitted); *Pinchi v. Noem*, --- F. Supp. 3d ----, No. 5:25-cv-05632-PCP, 2025 WL 2084921, at *3 (N.D. Cal. July 24, 2025) ("[T]he government's decision to release an individual from custody creates an 'implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].") (quoting *Morrissey*, 408 U.S. at 482); *see also Garcia-Ayala v. Andrews*, 2025 WL 2597508, at *4 (E.D. Cal. Aug. 8, 2025) (citing *Pinchi v. Noem*, No. 5:25-cv-05632-PCP, 2025 WL 1853763, at *2 (N.D. Cal. July 4, 2025)).

68. Mr. Rivera Larios's full compliance with check-ins, including on October 14, 2025, where he was arrested by ICE, further confirms that he is not a flight risk and that he is likely to present himself at

any future ICE appearances, as he has always done. Thus, the government's interest in detaining Mr. Rivera Larios is particularly low.

69. In fact, continued freedom from confinement until ICE demonstrates that Mr. Rivera Larios is a flight risk or danger to the community is far *less* costly and burdensome for the government than keeping him detained. *See Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) ("The costs to the public of immigration detention are staggering."); *Pinchi*, 2025 WL 1853763, at *3.

70. Providing Mr. Rivera Larios with a hearing before a neutral decisionmaker regarding any re-arrest is a routine procedure that the government provides to those in immigration jails on a daily basis. At that hearing, the adjudicator would have the opportunity to determine whether circumstances have changed sufficiently to justify re-detention. But there is no justifiable reason to re-incarcerate Mr. Rivera Larios without providing such a hearing.

71. As the Supreme Court noted, even where the government has an "overwhelming interest in being able to return [a parolee] to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole . . . the State has no interest in revoking parole without some informal procedural guarantees." *Morrissey*, 408 U.S. at 483.

72. Here, where Mr. Rivera Larios has abided by the conditions of his release and the cost of providing such a hearing is extremely low, the government's interest in detaining Mr. Rivera Larios is low and counsels heavily in favor of provision of a bond hearing before detention. Because ICE failed to provide Mr. Rivera Larios any process before detention, Mr. Rivera Larios's detention is unlawful and he must be released.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### Violation of 8 U.S.C. § 1231(a)

73. The allegations in the above paragraphs are realleged and incorporated herein.

74. The INA requires mandatory detention of individuals with final removal orders only during the 90-day removal period. 8 U.S.C. § 1231(a)(2).

75. A noncitizen who is not removed within that period "shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3).

76. While § 1231(a)(6) permits detention beyond the removal period in certain situations, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

77. No statute permits Respondents to re-detain an individual who has been released under § 1231(a)(3) without evidence that removal is now reasonably foreseeable or that the individual has violated the conditions of their release.

78. Mr. Rivera Larios's final order of removal was entered over 90 days ago. Thus, Mr. Rivera Larios is outside the 90-day removal period and cannot be detained for that reason alone.

79. Mr. Rivera Larios was released by ICE under § 1231(a)(3), pursuant to an Order of Supervision. He was never detained under § 1231(a)(6).

80. Mr. Rivera Larios has never violated any terms of his supervised release. There are no changed circumstances that alter his flight risk or danger. There is no reasonable likelihood that Mr. Rivera Larios will be removed in the foreseeable future. Thus, Mr. Rivera Larios cannot be detained pursuant to *Zadvydas* and § 1231(a)(3).

81. For these reasons, the Court should order that Respondents release Mr. Rivera Larios

## SECOND CAUSE OF ACTION

### Violation of Fifth Amendment Due Process Clause

82. The allegations in the above paragraphs are realleged and incorporated herein.

83. The Due Process Clause of the Fifth Amendment forbids the government from depriving any "person" of liberty "without due process of law." U.S. Const. amend. V.

84. ICE previously detained Mr. Rivera Larios and released him after an individualized custody determination that considered any danger or unmitigable flight risk. He has a liberty interest in remaining free from physical confinement on conditional release under the Due Process Clause. *See Morrissey*, 408 U.S. at 482–83. Due Process does not permit the government to strip him of that liberty without a hearing before this Court. *See id.* at 487–88.

85. Accordingly, "[i]n the context of immigration detention, it is well-settled that due process requires adequate procedural protections to ensure that the government's asserted justification for

physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Hernandez*, 872 F.3d at 990 (cleaned up); *Zinermon*, 494 U.S. at 127).

86. In the immigration context, for such hearings to comply with due process, the government must bear the burden to demonstrate, by clear and convincing evidence, that the noncitizen poses a flight risk or danger to the community. *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011); *see also Martinez v. Clark*, 124 F.4th 775, 785, 786 (9th Cir. 2024).

87. Mr. Rivera Larios's re-detention without a pre-deprivation hearing violated due process. Three-and-a-half years after deciding to release Mr. Rivera Larios from custody, Respondents re-detained him without notice, with no explanation of the justification for his re-detention, and without any opportunity to contest his re-detention before a neutral adjudicator before ICE took him back into custody.

88. Mr. Rivera Larios has a profound personal interest in his liberty. Because he received no procedural protections, the risk of erroneous deprivation is high, and the government has no legitimate interest in detaining him without a hearing. Bond hearings are conducted as a matter of course in immigration proceedings, and nothing in Mr. Rivera Larios's record suggests that he would abscond or endanger the community before a bond hearing could occur.

89. For these reasons, Respondents have violated the Due Process Clause of the Fifth Amendment. The Court should order that Respondents provide Mr. Rivera Larios with a hearing before a neutral arbiter at which the government bears the burden of justifying Mr. Rivera Larios's re-detention by clear and convincing evidence.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff prays that this Court grant the following relief:

(1) Assume jurisdiction over this action;

(2) Enjoin Respondents from transferring Mr. Rivera Larios outside the jurisdiction of the Northern District of California pending the resolution of this case;

(2) Declare that Mr. Rivera Larios's detention violates 8 U.S.C. § 1231(a) and the Due Process Clause of the Fifth Amendment;

(3) Issue a writ of habeas corpus and order Respondents to immediately release Mr. Rivera Larios from DHS's physical custody and reinstate his Order of Supervision with the same conditions in place at the time of his unlawful arrest;

(4) Enjoin Respondents from re-detaining Mr. Rivera Larios unless his re-detention is ordered at a custody hearing before a neutral arbiter in which the government bears the burden of proving, by clear and convincing evidence, that he is a flight risk or danger to the community;

(5) This Court must grant the petition for writ of habeas corpus or issue an order to show cause to the Respondents "forthwith," unless Mr. Rivera Larios is not entitled to relief. 28 U.S.C. § 2243. If this Court issues an order to show cause, it must require Respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added);

(6) Award costs and reasonable attorney fees under the Equal Access to Justice Act, 5 U.S.C. § 504, and 28 U.S.C. § 2412(b), and any other applicable law; and

(7) Grant such further relief as the Court deems just and proper.

Dated: October 14, 2025                                          IMMIGRANT LEGAL DEFENSE

By:  /s/ Ilyce Shugall
Ilyce Shugall
Claudia Valenzuela
IMMIGRANT LEGAL DEFENSE
1301 Clay St., #70010
Oakland, CA 94612
ilyce@ild.org

*Attorneys for Petitioner Jorge Rivera Larios*

**Verification Pursuant to 28 U.S.C. § 2242**

I am submitting this verification on behalf of Petitioner because I am his attorney in the instant habeas petition. As his attorney, I hereby verify that the factual statements made in this Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Date: October 14, 2025

/s/ Ilyce Shugall
Ilyce Shugall
Claudia Valenzuela
IMMIGRANT LEGAL DEFENSE
1301 Clay St., #70010
Oakland, CA 94612
ilyce@ild.org

*Attorneys for Petitioner Jorge Rivera Larios*