Ilyce Shugall (CA Bar No. 250095)
Claudia Valenzuela*
IMMIGRANT LEGAL DEFENSE
1301 Clay St., #70010
Oakland, CA 94612
Telephone: (415) 758-3765
ilyce@ild.org

*Attorneys for Petitioner Mr. Rivera Larios*

*Pro hac vice application forthcoming*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| Jorge RIVERA LARIOS, | |
|                     Petitioner, | Case No. 3:25-cv-8799-AMO |
|       v. | |
| SERGIO ALBARRAN, in his official capacity, San Francisco Field Office Director, U.S. Immigration and Customs Enforcement; | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| KRISTI NOEM, in her official capacity, Secretary of the U.S. Department of Homeland Security; and | |
| PAMELA BONDI, in her official capacity, Attorney General of the United States, | |
|                     Respondents. | |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................a

TABLE OF AUTHORITIES ......................................................................................... b

I.       INTRODUCTION ............................................................................................ 1

II.      STATEMENT OF FACTS ............................................................................... 1

III.     ARGUMENT .................................................................................................... 4

A.       MR. RIVERA LARIOS IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIM
         ............................................................................................................................5

         a.   Legal Framework ........................................................................................5

         b.   Mr. Rivera Larios's Re-Detention Outside of the Removal Period
         Violates 8 U.S.C. § 1231(a)(2) and (6). ........................................................7

         c.   Mr. Rivera Larios's Re-Detention Without Notice or Hearing Violates
         the Due Process Clause ..................................................................................8

         i.   Mr. Rivera Larios Has a Protected Liberty Interest in His Release .....10

         ii.  Mr. Rivera Larios's Liberty Interest Mandates a Hearing Before Re-
         Arrest.............................................................................................................13

B.       MR. RIVERA LARIOS WILL SUFFER IRREPARABLE HARM ABSENT
         INJUNCTIVE RELIEF.......................................................................................18

C.       THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST FAVOR
         GRANTING A TEMPORARY RESTRAINING ORDER .............................20

IV.      SECURITY ..................................................................................................... 21

V.       CONCLUSION............................................................................................... 22

1

## **TABLE OF AUTHORITIES**

2

3

**CASES**

4   *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ........................................5
*Alonso-Juarez v. Garland*, 80 F.4th 1039 (9th Cir. 2023).........................................................................3
5   *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009) ....................................4
*Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053 (9th Cir. 2014).......................................................20
6   *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719 (C.D. Cal. 1996) ..............................21
*Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137 (W.D.N.Y. 2025).........................................................6, 7, 15
7   *Delkash v. Noem*, 2025 WL 2683988 (C.D. Cal. Aug. 28, 2025) ......................................................15
*Diaz v. Wofford*, No. 1:25-cv-01079 JLT EPG, 2025 WL 2581575 (E.D. Cal. Sept. 5, 2025)..........15
8   *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011)...................................................................8, 15
*Doe v. Becerra*, --- F. Supp. 3d ----, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664 (E.D. Cal. Mar. 3,
9       2025) ...............................................................................................................................passim
10  *Elrod v. Burns*, 427 U.S. 347 (1976) ........................................................................................19
*Fraihat v. ICE*, 445 F.Supp.3d 709 (C.D. Cal. April 20, 2020) ...................................................2, 9
11  *Gagnon v. Scarpelli*, 411 U.S. 788 (1973)............................................................................10, 11
*Galvez v. Jaddou*, 52 F.4th 821 (9th Cir. 2022) ..............................................................................20
12  *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596 (E.D. Cal. July 14, 2025)...............10
*Garcia-Ayala v. Andrews*, 2025 WL 2597508 (E.D. Cal. Aug. 8, 2025) ..........................................17
13  *Gonzalez-Fuentes v. Molina*, 607 F.3d 864 (1st Cir. 2010)............................................................11
*Guillermo M.R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677 (N.D. Cal. July 17, 2025) ...............12
14  *Haygood v. Younger*, 769 F.2d 1350 (9th Cir. 1985) ....................................................................13
*Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017)...................................................17, 19, 20
15  *Hurd v. Dist. of Columbia*, 864 F.3d 671 (D.C. Cir. 2017) .............................................................11
16  *J.O.L.R. v. Wofford*, 1:25-cv-1241, 2025 WL 2718631 (E.D. Cal. Sept. 23, 2025).........................8, 12
*Jennings v. Rodriguez*, 583 U.S. 281 (2018) ...............................................................................8, 15
17  *Johnson v. Arteaga-Martinez*, 142 S. Ct. 1827 (2022) ...............................................................8, 15
*Jorgensen v. Cassiday*, 320 F.3d 906 (9th Cir. 2003)...................................................................21
18  *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454 (1989)...................................................10
*Lopez v. Heckler*, 713 F.2d 1432 (9th Cir. 1983) .......................................................................20, 21
19  *M.S.L. v. Bostock*, No. 6:25-cv-01204, 2025 WL 2430267 (D. Or. Aug. 21, 2025)...........................15
20  *Maklad v. Murray*, 1:25-cv-946, 2025 WL 2299376 (E.D. Cal. Aug. 8, 2025) ....................8, 12, 15
*Mathews v. Eldridge*, 424 U.S. 319 (1976)..........................................................................13, 14, 16
21  *Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012)........................................................................19
*Morrissey v. Brewer*, 408 U.S. 471 (1972) .................................................................................passim
22  *Nken v. Holder*, 556 U.S. 418 (2009) ........................................................................................20
*Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL1771438 (N.D. Cal. June 26, 2025) ..............8, 12
23  *People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency*, 766 F.2d 1319 (9th Cir.),
24      *amended*, 775 F.2d 998 (9th Cir. 1985) .................................................................................21
*Perera v. Jennings*, 2021 WL 2400981 (N.D. Cal. 2021) ..............................................................18
25  *Pinchi v. Noem*, --- F. Supp. 3d ----, No. 5:25-cv-05632-PCP, 2025 WL 2084921 (N.D. Cal. July 24,
26      2025) .......................................................................................................................................8, 17
*Preap v. Johnson*, 831 F.3d 1193 (9th Cir. 2016)........................................................................19
27  *Riley v. Bondi*, 145 S. Ct. 2190 (2025) .......................................................................................3, 7
28

*Rivera Larios v. Bondi*, No. 25-4588 (9th Cir. July 24, 2025) ............................................................. 3

*Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022) .................................................................. 20

*Rodriguez Rodriguez v. Kaiser*, 1:25-cv-1111-KES-SAB, 2025 WL 2545359 (E.D. Cal. Sept. 4, 2025) passim

*Santamaria Orellana v. Baker*, No. 1:25-cv-1788, 2025 WL 2444087 (D. Md. Aug. 25, 2025) ................... 15

*Saravia ex rel. A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) ........................................................ 12

*Saravia v. Sessions*, 280 F. Supp. 3d 1168 (N.D. Cal. 2017) ............................................................. 12

*Singh v. Andrews*, No. 1:25-cv-801, 2025 WL 1918679 (E.D. Cal. July 11, 2025) .................................... 9

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832 (9th Cir. 2001) ..................................... 4

*Sun v. Noem*, 2025 WL 2800037 (S.D. Cal. Sept. 30, 2025) ............................................................... 15

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .................................................................. 4

*Young v. Harper*, 520 U.S. 143 (1997) ............................................................................... 10, 11, 13

*Zadvydas v. Davis*, 533 U.S. 678 (2001) ................................................................................. passim

*Zepeda v. INS*, 753 F.2d 719 (9th Cir. 1983) .............................................................................. 20

*Zhu v. Genalo*, No. 1:25-cv-06523, 2025 WL 2452352 (S.D.N.Y. Aug. 26, 2025) .................................... 15

*Zinermon v. Burch*, 494 U.S. 113 (1990) ................................................................................. 13

**STATUTES**

8 U.S.C. § 1231(a)(6) .................................................................................................... passim

8 U.S.C. § 1231(a)(1)(A) ..................................................................................................... 5

8 U.S.C. § 1231(a)(2) ..................................................................................................... 5, 7

8 U.S.C. § 1231(a)(5) ....................................................................................................... 7

California Health and Safety Code § 11379(a) .............................................................................. 1

California Vehicle Code § 14601.5(a) ...................................................................................... 1

**REGULATIONS**

8 C.F.R. § 1236.1(c)(8) .................................................................................................. 12

8 C.F.R. § 208.31(e) ...................................................................................................... 7

8 C.F.R. § 241.13(i)(2) ................................................................................................... 15

8 C.F.R. § 241.4(l) .................................................................................................. passim

8 C.F.R. § 1.2 ............................................................................................................ 6

## I.    INTRODUCTION

Petitioner Jorge Rivera Larios seeks a Temporary Restraining Order (TRO) to enjoin Respondents from continuing his detention while he proceeds with his claims before this Court.

## II.    STATEMENT OF FACTS

Petitioner Jorge Rivera Larios was born in Mexico. *See* attached Declaration of Ilyce Shugall in Support of Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction (Shugall Decl.), ¶ 3. In 2017, Mr. Rivera Larios fled Mexico after he was beaten and left for dead by members of the Sinaloa Cartel. *Id*. ¶¶ 3-4. He settled in Lakeport, California, where he has resided since. *Id*. ¶ 5. Mr. Rivera Larios had encounters with law enforcement in Lake County, California between 2017 and September 2021. *Id*. In 2019, he was convicted for a misdemeanor violation of California Vehicle Code § 14601.5(a) and a violation of California Health and Safety Code § 11379(a). *Id*. In 2021, he admitted a probation violation on the Section 11379(a) offense and in May 2021, was arrested for possession of a firearm. *Id*. Subsequently, in September 2021, Mr. Rivera Larios was arrested by ICE, which caused him to miss court appearances in the firearms case. *Id*. He served time in Lake County Jail after his release from ICE custody. *Id*.

In September 2021, U.S. Immigration and Customs Enforcement (ICE) arrested him near his home in Lakeport. *Id*. On September 29, 2021, ICE issued a final administrative order reinstating Mr. Rivera Larios's January 22, 2016 order of removal. *Id*. ¶ 6. Mr. Rivera Larios had first attempted to seek protection in the United States in January 2016 after Sinaloa Cartel members attempted to kill him and left him for dead. *Id*. ¶ 4. U.S. Customs and Border Protection (CBP) issued an expedited removal order and removed Mr. Rivera Larios to Mexico at that time. *Id*.

Because Mr. Rivera Larios fears persecution and torture in Mexico, a U.S. Citizenship and Immigration Services (USCIS) officer conducted a reasonable fear interview on October 15, 2021. *Id*. ¶ 7. As Mr. Rivera Larios was found to have a reasonable fear of persecution or torture, on October 20, 2021, he was referred to the immigration court for withholding only proceedings. *Id*. On January 10, 2022, Mr. Rivera

Larios filed his Form I-589 in support of his application for withholding of removal and deferral of removal under the Convention Against Torture. *Id*. ¶ 8. That application remains pending. *Id*.

On January 28, 2022, ICE released Mr. Rivera Larios on an Order of Supervision. His notice of custody determination indicates that ICE released him pursuant to *Fraihat v. ICE*, 445 F.Supp.3d 709 (C.D. Cal. April 20, 2020) as he was identified as having one or more risk factors for COVID-19. *Id*. Due to the beatings that he endured in both Mexico and the United States, Mr. Rivera Larios endured dizziness and nausea. *Id*. ICE released Mr. Rivera Larios on an Order of Supervision and enrolled him in its Intensive Supervision and Appearance Program (ISAP).[1] Following his release, Mr. Rivera Larios complied with all reporting requirements with ICE and ISAP. *Id*. ¶ 9. He appeared at regular check ins with both ICE and ISAP. *Id*. In June 2022, Mr. Rivera Larios surrendered himself to the Lake County jail to serve a sentence for a conviction ordered prior to the ICE detention. *Id*. ¶ 11.  Subsequently, following his completion of the sentence, Mr. Rivera Larios continued to comply with the terms of his supervision with ICE. *Id*. ICE eventually discontinued the more stringent ISAP requirements and required that Mr. Rivera Larios check-in annually with ICE. *Id.*

In August 2018, Mr. Rivera Larios was the victim of a violent attack in his home. *Id*. ¶ 12. He applied for U Nonimmigrant Status with USCIS on this basis, having suffered injuries and cooperated with law enforcement after the attack. *Id*. The application was received by USCIS on July 31, 2023 and remains pending. *Id*. On January 2, 2025, the immigration court administratively closed Mr. Rivera Larios's withholding only proceedings due to the pending application for U nonimmigrant status. *Id*.

---

[1] ICE's ISAP is an "alternative to detention," whereby "[p]articipants are thoroughly vetted by officers before enrollment." *See* https://www.ice.gov/features/atd. Further, "[o]fficers review several factors when making enrollment determinations," such as criminal, immigration and supervision history; family and/or community ties; status as a caregiver or provider, and humanitarian or medical considerations. *Id*. ISAP entails the use of technology, such as telephonic reporting, GPS monitoring and SmartLINK "to ensure compliance with release conditions." *Id*.

On July 24, 2025, Mr. Rivera Larios filed a Petition for Review with the Ninth Circuit Court of Appeals in the wake of the Supreme Court's decision in *Riley v. Bondi*, 145 S. Ct. 2190, 2197–99 (2025). *Rivera Larios v. Bondi*, No. 25-4588 (9th Cir. July 24, 2025). *Id.* ¶ 13. In *Riley*, the Supreme Court determined that the 30-day window for filing a petition for review in cases in which DHS issues an administrative order of removal runs from the issuance of the administrative order. *Id.* In holding so, the Supreme Court's decision overturned prior Ninth Circuit precedent requiring the petition for review to be filed within 30 days of the conclusion of withholding-only proceedings. *See Alonso-Juarez v. Garland*, 80 F.4th 1039 (9th Cir. 2023). *Id.* Mr. Rivera Larios filed his petition to safeguard his right to review, should it become necessary, once his application for protection is adjudicated. *Id.* Mr. Rivera Larios's petition remains pending before the Ninth Circuit. *Id.*

On October 13, 2022, after his release from ICE custody in January 2022, Mr. Rivera Larios married his U.S. citizen wife, Phylis Rivera Larios, and together they had a son, I.R.J., who is presently three-years old. *Id.* ¶ 10. Mr. Rivera Larios also has a 19-year-old stepdaughter. *Id.* Mr. Rivera Larios has worked in agriculture in Lake County, California to support himself and his family. *Id.* He strives to support his family both emotionally and financially. *Id.*

In August 2025, the police in Lakeport, California were called to Mr. Rivera Larios's home due to a domestic dispute. *Id.* ¶ 14. The police detained Mr. Rivera Larios and booked him into the police station. *Id.* The Lake County police released him the next day without charges. *Id.*

On October 14, 2025, Mr. Rivera Larios attended his annual ICE check-in at the San Francisco ICE Field Office with counsel. *Id.* ¶ 15. At his check-in, ICE officers arrested and detained Mr. Rivera Larios. *Id.* An ICE officer stated that ICE arrested Mr. Rivera Larios because he had contact with law enforcement in August 2025 and therefore violated his order of supervision. *Id.* After counsel left the field office, an ICE officer met with Mr. Rivera Larios and attempted to convince him to agree to his removal, despite Mr. Rivera

Larios's pending application for withholding of removal and deferral of removal under the Convention Against Torture and his pending Petition for Review before the Ninth Circuit. *Id.* Mr. Rivera Larios spent the night at the San Francisco ICE Field Office, where he slept on the floor with a Mylar blanket. *Id.*

Mr. Rivera Larios filed a habeas petition that same day, on the evening of October 14, 2025. *Id.* ¶ 16. Prior to filing the habeas petition, counsel for Mr. Rivera Larios communicated with counsel for Respondents to confirm whether it was ICE's intention to keep Mr. Rivera Larios in its custody, indicating that if so, Mr. Rivera Larios would pursue a habeas petition in addition to seeking a temporary restraining order. *Id.* Counsel for Respondents confirmed today, October 15, 2025, that ICE intends to keep Mr. Rivera Larios in custody. *Id.* The reason provided by counsel for Respondents confirms Mr. Rivera Larios's understanding, that is, that ICE considers him to have violated his Order of Supervision based on the August 2025 arrest that resulted in no charges being filed against him. *Id.* Counsel for Mr. Rivera Larios confirmed with counsel for Respondents that Mr. Rivera Larios would seek emergency relief from the Court. *Id.* ICE officers also advised Mr. Rivera Larios that he will remain at the San Francisco Field Office due to the pending habeas petition. *Id.*

## III.   ARGUMENT

The standard for issuing a temporary restraining order is the same as the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Mr. Rivera Larios is entitled to a temporary restraining order if he establishes that he is (1) "likely to succeed on the merits, (2) likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). Even if Mr. Rivera Larios does not show a likelihood of success on the merits, the Court may still grant a temporary restraining order if he raises "serious questions" as to the merits of his claims, the balance of hardships tips "sharply" in his favor, and the remaining equitable factors are satisfied. *Alliance for*

*the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011). Mr. Rivera Larios overwhelmingly satisfies both standards.

### A.  MR. RIVERA LARIOS IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIM

Mr. Rivera Larios is likely to succeed on both of his claims: that ICE is violating its statutory authority under 8 U.S.C. § 1231(a)(2) and (6) in re-detaining Mr. Rivera Larios outside of the removal period, and that ICE is violating the Due Process Clause of the Fifth Amendment by re-detaining Mr. Rivera Larios without having first provided a pre-deprivation hearing before a neutral adjudicator to determine whether circumstances have materially changed since his release under an Order of Supervision in January 2022.

### a.  Legal Framework

The Due Process Clause protects "all 'persons'"—including all noncitizens—against arbitrary detention. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process Clause protects.  *Id.* at 690.

The INA allows ICE to detain individuals who have final orders of removal for the 90-day "removal period" following the date on which the order of removal became final for the purpose of effectuating removal. *See* 8 U.S.C. § 1231(a)(1)(A)–(B), (2)(A). After this 90-day removal period, certain individuals may be detained *only* if they pose "a risk to the community" or are "unlikely to comply" with removal. *Id.* § 1231(a)(6). Otherwise, individuals with final orders of removal who are not removed within the 90-day removal period must be released subject to DHS supervision. *Id.* § 1231(a)(3).

Even individuals detained beyond the 90-day removal period pursuant to § 1231(a)(6) cannot be held indefinitely, pursuant to the Due Process Clause. *See Zadvydas*, 533 U.S. at 690, 697. Rather, post-

final order detention is only authorized for a "period reasonably necessary to secure removal." *Id.* at

699–700. "[I]f removal is not reasonably foreseeable, the court should hold continued detention

unreasonable and no longer authorized by statute." *Id.* at 699–700; *see* 8 C.F.R. § 241.13(b)(1)

(authorizing release after ninety days where removal not reasonably foreseeable).

DHS has promulgated regulations to purportedly implement its statutory obligations under 8

U.S.C. § 1231. Thus, noncitizens subject to a removal order may be released pursuant to 8 C.F.R. §

241.4 or 8 C.F.R. § 241.13,[2] subject to an Order of Supervision. *See Ceesay v. Kurzdorfer*, 781 F. Supp.

3d 137, 154 (W.D.N.Y. 2025). These same regulations govern revocation of release. Under 8 C.F.R. §

241.4(l), noncitizens released under this provision can have their release revoked if they violate the

conditions of release, *id.* § 241.4(l)(1), or if a district director determines that revocation is in the public

interest, circumstances do not reasonably permit referral of the case to the ICE Executive Director, and

the district director believes (i) the purposes of release have been served; (ii) the noncitizen violated any

condition of release; (iii) it is appropriate to enforce a removal order or commence removal proceedings;

or (iv) the conduct of the noncitizen or any other circumstance indicates release would no longer be

appropriate, *id.* § 241.4(l)(2); *see Ceesay*, 781 F. Supp. 3d at 161 (citing 8 C.F.R. §§ 1.2, 241.4(l)(2) and

explaining that the Homeland Security Act of 2002 renamed the position titles listed in § 241.4). The

regulations only permit certain officials to revoke an order of supervision: the ICE Executive Director, a

field office director, or an official "delegated the function or authority . . . for a particular geographic

district, region, or area." *Ceesay*, 781 F. Supp. 3d at 161. And for a delegated official to have authority

---

[2] 8 C.F.R. § 241.13 concerns detention and release procedures involving individuals for whom ICE must make a determination on whether there is a significant likelihood of removal in the reasonably foreseeable future. Respondents have confirmed that the basis for Mr. Rivera Larios's re-detention is due to ICE's determination that he has violated the terms of his Order of Supervision; therefore, this Petition focuses on 8 C.F.R. § 241.4. However, there is also no significant likelihood that Mr. Rivera Larios can be removed in the reasonably foreseeable future, as he has a pending application for withholding of removal and deferral of removal under the Convention Against Torture in withholding only proceedings, as well as a petition for review with the Ninth Circuit.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION

to revoke an order of supervision, the delegation order must explicitly say so. *See Ceesay*, 781 F. Supp.

at 161 (finding a delegation order that "refers only to a limited set of powers under part 241 that do not

include the power to revoke release" insufficient to grant authority to revoke an order of supervision).

The regulations require that, upon revocation, the noncitizen be notified of the reasons for revocation,

and that they be "afforded an initial information interview promptly" after re-detention, based upon

which ICE may decide to release the noncitizen. *Id.* § 241.4(l)(1), (3).

### b. Mr. Rivera Larios's Re-Detention Outside of the Removal Period Violates 8 U.S.C. § 1231(a)(2) and (6).

ICE issued a final administrative reinstatement of removal order on September 29, 2021 pursuant

to 8 U.S.C. § 1231(a)(5). Subsequently, on October 20, 2021, Mr. Rivera Larios was referred to

immigration court for withholding only proceedings, which remain pending. However, in such

proceedings, Mr. Rivera Larios may only seek protection from removal, he cannot challenge the order

under 8 U.S.C. § 1231(a)(5). *See* 8 C.F.R. § 208.31(e); *see also Riley v. Bondi*, 145 S. Ct. 2190, 2197–99

(2025). Thus, Mr. Rivera Larios's 90-day removal period expired on December 28, 2021. *See* 8 U.S.C. §

1231(a)(1)(B). ICE released Mr. Rivera Larios on January 28, 2022. Mr. Rivera Larios has fully

complied with all terms of supervision imposed by ICE since his release.

Because Mr. Rivera Larios's 90-day removal period has run, ICE cannot detain him pursuant to

8 U.S.C. § 1231(a)(2). ICE released Mr. Rivera Larios pursuant to § 1231(a)(3), thereby concluding that

ICE did not consider Mr. Rivera Larios to be "a risk to the community or unlikely to comply with the

order of removal" under § 1231(a)(6). There is no change in circumstances relating to Mr. Rivera

Larios's flight risk or danger. Accordingly, there is no statutory basis for ICE's detention of Mr. Rivera

Larios. Rather, his re-detention is in violation of 8 U.S.C. § 1231(a)(6).

Additionally, ICE's failure to abide by its own regulations while re-detaining Mr. Rivera Larios

pursuant to § 1231 further underscores ICE's violation of § 1231. The regulations only allow ICE to

revoke prior release where ICE has determined that the noncitizen has violated the conditions of release,

or where a district director determines that it is in the public interest to revoke release. 8 C.F.R. § 241.4(l). Where ICE has not made such a determination here, under its own regulations, it has failed to make a determination that Mr. Rivera Larios is now a flight risk or danger to the community, and thus, has no statutory authority to detain Mr. Rivera Larios.[3] Because ICE previously released Mr. Rivera Larios on an Order of Supervision and there is no statutory basis to re-detain Mr. Rivera Larios, Mr. Rivera Larios is likely to succeed on his statutory claim.

### c.  Mr. Rivera Larios's Re-Detention Without Notice or Hearing Violates the Due Process Clause

Mr. Rivera Larios is also likely to succeed on his constitutional claim. The Due Process Clause of the Constitution makes it unlawful for Respondents to re-arrest Mr. Rivera Larios without first providing a pre-deprivation hearing before a neutral adjudicator to determine whether circumstances have materially changed since his release under an Order of Supervision in January 2022, such that alteration in the terms of his conditional release would now be warranted. Federal district courts in California have repeatedly recognized that due process requires a hearing for a noncitizen released by ICE under its supervision, like Mr. Rivera Larios, *before* ICE can re-detain him, and have granted the emergency relief Mr. Rivera Larios seeks here on that basis. *See, e.g.*, *Pinchi v. Noem*, No. 25-cv-05632, 2025 WL 1853763, at *2–3 (N.D. Cal. July 4, 2025); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3–4, 6 (N.D. Cal. June 26, 2025); *see also J.O.L.R. v. Wofford*, 1:25-cv-1241, 2025 WL 2718631, at *4 (E.D. Cal. Sept. 23, 2025); *Rodriguez Rodriguez v. Kaiser*, 1:25-cv-1111-KES-SAB, 2025 WL 2545359, at *5–6 (E.D. Cal. Sept. 4, 2025); *Maklad v. Murray*, 1:25-cv-946, 2025 WL 2299376, at *8 (E.D. Cal. Aug. 8, 2025); *Galindo Arzate v. Andrews*, No. 1:25-cv-00942-KES-SKO,

---

[3] As noted further at infra, n. 3, the Ninth Circuit and the Supreme Court have questioned the efficacy of DHS's regulations governing post-removal order release in satisfying constitutional due process. *See Diouf v. Napolitano*, 634 F.3d 1081, 1091 (9th Cir. 2011), *abrogated on other grounds by Johnson v. Arteaga-Martinez*, 142 S. Ct. 1827 (2022); *Casas-Castrillon v. DHS*, 535 F.3d 942, 951–52 (9th Cir. 2008), *abrogated on other grounds in part by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *see also Zadvydas*, 533 U.S. at 701.

2025 WL 2230521, at \*4–6 (E.D. Cal. Aug. 4, 2025); *Singh v. Andrews*, No. 1:25-cv-00801-KES-SKO, 2025 WL 1918679, at \*7–8 (E.D. Cal. July 11, 2025); *Doe v. Becerra*, --- F. Supp. 3d ----, 2025 WL 691664, at \*6, 8 (E.D. Cal. Mar. 3, 2025);

Detention violates the Due Process Clause unless it is "reasonably related" to the government's purpose, which in the immigration context is to prevent danger or flight risk. *See Zadvydas*, 533 U.S. at 690–91 (discussing twin justifications of detention as preventing flight and protecting the community); *id.* at 699 (purpose of detention is "assuring the [noncitizen]'s presence at the moment of removal"). ICE previously released Mr. Rivera Larios on January 28, 2022 because of high-risk health conditions under *Fraihat v. ICE*. By putting him on an Order of Supervision, ICE implicitly found he was neither a risk to the community or unlikely to comply with a removal order under 8 U.S.C. § 1231(a)(6). *See Singh v. Andrews*, No. 1:25-cv-801, 2025 WL 1918679, at \*2 (E.D. Cal. July 11, 2025) ("DHS, at least implicitly, made a finding that petitioner was not a flight risk when it released him.").

Prior to re-detaining Mr. Rivera Larios, ICE made no findings that he poses a danger or flight risk that warrants post-final-order detention – as it previously determined. *See* 8 C.F.R. § 241.4(e). ICE failed to provide Mr. Rivera Larios with notification for the reasons for revocation of his release, nor has it provided Mr. Rivera Larios with an informal interview upon his re-detention. 8 C.F.R. § 241.4(l). Rather, at his check in, an ICE officer alleged that Mr. Rivera Larios violated a condition of his release due to contact with law enforcement; however, Mr. Rivera Larios did not commit a crime, nor was he charged with a crime. Furthermore, in detaining him, ICE did not indicate that a district director found revocation proper under the regulation's requirements. *See* 8 C.F.R. § 241.4(l)(1)–(2). Moreover, ICE has provided no justification for why Mr. Rivera Larios's August 2025 arrest - which did not result in any charges being filed against him – constitutes a violation of his terms of supervision.

Importantly, in the intervening three-and-a-half years since ICE released Mr. Rivera Larios, Mr. Rivera Larios has proven that ICE's initial assessment that he was neither a flight risk nor a danger was

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

correct, as there have been no changed circumstances relating to his risk of danger or flight. Mr. Rivera Larios has never violated the terms of his supervised release. He has dutifully appeared for all ICE appointments, including after serving time in county jail in June 2022 and the appointment on October 14, 2025, at which ICE detained him. He has worked in the fields and supported his family financially while living in the community. He has also continued to pursue meritorious claims for immigration relief, including an application for U nonimmigrant status as the victim of a violent crime who has cooperated with law enforcement. Not only has ICE not adhered to its own regulations, it has no substantive basis to find that Mr. Rivera Larios has violated the terms of his supervision or any of the any factors governing revocation of his supervision. 8 C.F.R. § 241.4(e)-(f).

"Courts analyze [ ] due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)). Mr. Rivera Larios has both a protected liberty interest in his release, and the government was required to give him a pre-deprivation hearing before detaining him.

### i. Mr. Rivera Larios Has a Protected Liberty Interest in His Release

Mr. Rivera Larios's liberty from immigration custody is protected by the Due Process Clause. *Zadvydas*, 533 U.S. at 690. Since January 2022, Mr. Rivera Larios exercised that freedom pursuant to his prior release from custody by ICE and placement on an Order of Supervision. He thus retains a weighty liberty interest under the Due Process Clause of the Fifth Amendment in avoiding re-incarceration. *See Young v. Harper*, 520 U.S. 143, 146–47 (1997); *Gagnon v. Scarpelli*, 411 U.S. 788, 781–82 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 482–83 (1972). Moreover, Mr. Rivera Larios continued presenting himself before ICE and ISAP for his regular check-in appointments for the past

three-and-a-half years, where ICE did not seek to re-arrest him, including after serving time in Lake County, California. Most recently, ICE ordered him to appear on October 14, 2025, an order with which he complied, but was nevertheless arrested.

In *Morrissey v. Brewer*, 408 U.S. 471, the Supreme Court examined "the nature of the interest" that a parolee has in "his continued liberty": "[S]ubject to the conditions of his parole, [a parolee] can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." *Id.* at 481–82. Accordingly, "the parolee has relied on at least an implicit promise that the parole will be revoked only if he fails to live up to the parole conditions." *Id.* at 482. The Court clarified that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a grievous loss on the parolee and often others." *Id.* In turn, "[b]y whatever name, the liberty is valuable and must be seen within the protection of" due process. *Id.*

This basic principle – that individuals have a liberty interest in their conditional release – has been reinforced by the Supreme Court and circuit courts on numerous occasions. *See, e.g.*, *Young*, 520 U.S. at 152 (holding that individuals placed in a pre-parole program created to reduce prison overcrowding have a protected liberty interest requiring pre-deprivation process); *Gagnon*, 411 U.S. at 781–82 (holding that individuals released on felony probation have a protected liberty interest requiring pre-deprivation process); *Hurd v. Dist. of Columbia*, 864 F.3d 671, 683 (D.C. Cir. 2017) ("[A] person who is in fact free of physical confinement – even if that freedom is lawfully revocable – has a liberty interest that entitles him to constitutional due process before he is re-incarcerated."). When analyzing the issue of whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as charactered by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2020).

Accordingly, this Court, and others in this Circuit, have recently and repeatedly held that noncitizens previously released by ICE on supervision or other conditions have a liberty interest in their conditional release pursuant to *Morrissey*. *see Guillermo M.R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) ("[T]he liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL1771438, at *3 (N.D. Cal. June 26, 2025); *J.O.L.R. v. Wofford*, 1:25-cv-1241, 2025 WL 2718631 (E.D. Cal. Sept. 23, 2025); *Rodriguez Rodriguez v. Kaiser*, 1:25-cv-1111-KES-SAB, 2025 WL 2545359, at *4 (E.D. Cal. Sept. 4, 2025); *Maklad v. Murray*, 1:25-cv-946, 2025 WL 2299376 (E.D. Cal. Aug. 8, 2025); *Doe v. Becerra*, --- F. Supp. 3d ----, 2025 WL 691664, at *4–5 (E.D. Cal. Mar. 3, 2025). Similarly, Mr. Rivera Larios has a liberty interest in his conditional release pursuant to *Morrissey*. For the last three-and-a-half years, Mr. Rivera Larios has been able "to do a wide range of things open to persons" who have never been in custody, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. Mr. Rivera Larios has been able to live in Lakeport with his U.S. citizen son and his wife-- "undoubtedly one of the most 'enduring attachments of normal life.'" *Rodriguez Rodriguez*, 2025 WL 2545359, at *4 (quoting *Morrissey*, 408 U.S. at 482).

DHS's release of Mr. Rivera Larios in 2022 reflected a determination that he did not pose a flight risk or danger to the community. *Rodriguez Rodriguez*, 2025 WL 2545359, at *4 (citing *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia ex rel. A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018)); 8 C.F.R. § 1236.1(c)(8). Mr. Rivera Larios followed all terms of his release and appeared at all immigration proceedings and check-ins as required. ICE rearrested Mr. Rivera Larios "without showing any changed circumstances, contradicting the 'implicit promise that [petitioner's freedom] will be revoked only if []he fails to live up to the [release] conditions.'"

*Rodriguez Rodriguez*, 2025 WL 2545359, at *4 (quoting *Morrissey*, 408 U.S. at 482); 8 C.F.R. § 241.4(l).

### ii.  Mr. Rivera Larios's Liberty Interest Mandates a Hearing Before Re-Arrest

Mr. Rivera Larios asserts that, here, (1) where he faces civil detention; (2) where he has been at liberty for three-and-a-half years, during which time he has complied with all conditions of release; and (3) where no change in circumstances exist that would justify his detention, due process mandates that he receive notice and a hearing before a neutral adjudicator *prior* to any re-arrest.

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "The more important the interest and the greater the effect of its impairment, the greater the procedural safeguards that [government] must provide to satisfy due process." *Haygood v. Younger*, 769 F.2d 1350, 1355–56 (9th Cir. 1985) (en banc) (citing *Morrissey*, 408 U.S. at 481–82). The procedural protections required in a given situation are evaluated under the test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

Under the *Mathews* test, the government was required to give Mr. Rivera Larios procedural protections before depriving him of his freedom. First, Mr. Rivera Larios has a profound private interest in remaining free from detention. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Mr. Rivera Larios has been at liberty for three-and-a-half years, and during that time, continued his life in Lakeport with his family, including his son and wife. He has been working lawfully, pursuant to employment authorization provided to him by DHS. His detention

now denies him that freedom. *See Rodriguez Rodriguez*, 2025 WL 2545359, at *5; *Galindo Arzate*, 2025 WL 2230521, at *5. Thus, Mr. Rivera Larios has a profound private interest at stake in this case, which must be weighed heavily when determining what process is owed under the Constitution. *See Mathews*, 424 U.S. at 334–35.

Second, "'the risk of erroneous deprivation of liberty is high' where, as here, 'the petitioner has not received any bond or custody redetermination hearing.'" *Rodriguez Rodriguez*, 2025 WL 2545359, at *5 (quoting *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025)). Because immigration detention is civil detention, it is "nonpunitive in purpose and effect," and is only justified when a noncitizen presents a risk of flight or danger to the community. *Zadvydas*, 533 U.S. at 690. In releasing Mr. Rivera Larios in January 2022, ICE determined that he was neither a flight risk nor a danger to the community. There are no changed circumstances relating to Mr. Rivera Larios's risk of flight or dangerousness since ICE made such a determination three-and-a-half years ago. Mr. Rivera Larios has led a productive life and attended every ICE check-in since he was released. In fact, Mr. Rivera Larios was arrested *at* his ICE check-in on October 14, 2025, without notice and without being provided any procedural safeguards to determine whether the circumstances had changed such that his re-detention was justified. *See Galindo Arzate*, 2025 WL 2230521, at *5.

Indeed, it is doubtful that ICE *could* justify Mr. Rivera Larios's detention. There have been no changed circumstances as to Mr. Rivera Larios's risk of flight or danger. To the extent ICE relies on Mr. Rivera Larios's contact with law enforcement in August 2025, this incident is insufficient to justify his re-detention. Mr. Rivera Larios was detained after police came to his home. No charges were filed against Mr. Rivera Larios. No open charges, criminal cases, or warrants remain for Mr. Rivera Larios. Rather, Mr. Rivera Larios was promptly released from custody, evidencing that he had not engaged in any violation of the law. *See Galindo Arzate*, 2025 WL 2230521, at *5 (holding that "public safety is not jeopardized" where petitioner was arrested for a nonviolent misdemeanor and was not charged) (quoting

*Doe v. Noem*, No. 2:25-cv-01103-DAD-AC, 2025 WL 1134977, at *8 (E.D. Cal. Apr. 17, 2025); *Doe v. Becerra*, 2025 WL 691664, at *5 (E.D. Cal. Mar. 3, 2025) (explaining that immigration judge's prior determination that petitioner was not flight risk or danger had "largely borne out" because petitioner's misdemeanor charges under California Vehicle Code section 10851(a) were dismissed pursuant to diversion program).

Nor has ICE shown any changed circumstances relating to its ability to remove Mr. Rivera Larios. Mr. Rivera Larios still has a pending application for protection in immigration court and therefore cannot be removed. *See* 8 C.F.R. § 241.13(i)(2); *see also Sun v. Noem*, 2025 WL 2800037, at *2 (S.D. Cal. Sept. 30, 2025) (holding that "vague assertions" about future plans to remove petitioner were "insufficient to meet ICE's own requirement to show 'changed circumstances' or 'a significant likelihood that the alien may be removed in the reasonably foreseeable future.'"). Mr. Rivera Larios has further sought to safeguard his appeal rights by filing a petition for review with the Ninth Circuit, which remains pending.

Additionally, ICE has failed to follow its own procedural regulations for revocation, further increasing the likelihood of erroneous deprivation and itself likely constituting a due process violation. *See Diaz v. Wofford*, No. 1:25-cv-01079 JLT EPG, 2025 WL 2581575, at *7 (E.D. Cal. Sept. 5, 2025) (citing *Zhu v. Genalo*, No. 1:25-cv-06523, 2025 WL 2452352, at *7 (S.D.N.Y. Aug. 26, 2025)); *Delkash v. Noem*, 2025 WL 2683988, at *5 (C.D. Cal. Aug. 28, 2025); *Santamaria Orellana v. Baker*, No. 1:25-cv-1788, 2025 WL 2444087, at *6–8 (D. Md. Aug. 25, 2025); *M.S.L. v. Bostock*, No. 6:25-cv-01204, 2025 WL 2430267, at *12 (D. Or. Aug. 21, 2025); *Ceesay*, 781 F. Supp. 3d at 166.[4] To date, ICE has

---

[4] In these cases, courts outside of this district have detailed how violation of the procedures set forth in 8 C.F.R. § 241.4(l) constitute a due process violation. Mr. Rivera Larios does not contend that the procedures set forth in 8 C.F.R. § 241.4(l), if properly followed, would be sufficient to provide him with due process as required under the Fifth Amendment. *See Diouf v. Napolitano*, 634 F.3d 1081 at 1091 (9th Cir. 2011), *abrogated on other grounds by Johnson v. Arteaga-Martinez*, 142 S. Ct. 1827 (2022); *Casas-Castrillon v. DHS*, 535 F.3d 942, 951–52 (9th Cir. 2008), *abrogated on other grounds in part by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *see also Zadvydas*, 533 U.S. at 701 (holding that indefinite

not provided notice of the reasoning for revocation of Mr. Rivera Larios's release, nor has it provided an interview to determine whether such revocation was justified. 8 C.F.R. § 241.4(l)(1). None of the reasoning that would justify revocation under the regulation applies to Mr. Rivera Larios, as he has not violated any condition of release, nor is it in the public interest to revoke his release. 8 C.F.R. § 241.4(l)(1)–(2). And his revocation was not effectuated by the ICE Executive Director, a district director, or another agent specifically delegated the authority to revoke his release. 8 C.F.R. § 241.4(l).

Given the absence of any procedural safeguards to determine if Mr. Rivera Larios's re-detention is justified, and given the absence of any apparent justification for re-detaining Mr. Rivera Larios, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *Rodriguez Rodriguez*, 2025 WL 254359, at *5 (quoting *A.E.*, 2025 WL 1424382, at *5). This high likelihood of erroneous deprivation counsels heavily in favor of providing Mr. Rivera Larios procedural safeguards.

And third, the government's interest in detaining Mr. Rivera Larios without a bond hearing is low. In immigration court, bond hearings are "routine and impose a 'minimal' cost." *Rodriguez Rodriguez*, 2025 WL 2545359, at *5 (quoting *Doe v. Becerra*, --- F. Supp. 3d ----, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). Providing Mr. Rivera Larios with a hearing before a neutral decisionmaker to determine whether there is clear and convincing evidence that he is a flight risk or danger to the community would impose only a *de minimis* burden on the government, because the government routinely provides this sort of review to individuals in Mr. Rivera Larios's same circumstances. 8 C.F.R. § 241.4(e)–(f). Here, the "fiscal and administrative burdens" that a pre-deprivation bond hearing would impose is nonexistent in the immigration context. *See Mathews*, 424 U.S. at 334–35.

---

detention under § 1231(a)(6) raised serious constitutional concerns, in part because "the sole procedural protections available to the [noncitizen] are found in administrative proceedings, where the [noncitizen] bears the burden of proving that he is not dangerous"). However, ICE has failed to meet even this bare minimum of process that it set out in its own regulations, further underscoring the violation of Mr. Rivera Larios's due process rights.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

The government's interest in detaining Mr. Rivera Larios is further diminished where Mr. Rivera Larios has appeared before ICE and ISAP for every appointment that has been scheduled since his release. *See Morrissey*, 408 U.S. at 482 ("It is not sophistic to attach greater importance to a person's justifiable reliance in maintaining his conditional freedom so long as he abides by the conditions on his release, than to his mere anticipation or hope of freedom.") (internal quotation omitted); *Pinchi v. Noem*, --- F. Supp. 3d ----, No. 5:25-cv-05632-PCP, 2025 WL 2084921, at *3 (N.D. Cal. July 24, 2025) ("[T]he government's decision to release an individual from custody creates an 'implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'") (quoting *Morrissey*, 408 U.S. at 482); *see also Garcia-Ayala v. Andrews*, 2025 WL 2597508, at *4 (E.D. Cal. Aug. 8, 2025) (citing *Pinchi v. Noem*, No. 5:25-cv-05632-PCP, 2025 WL 1853763, at *2 (N.D. Cal. July 4, 2025)). Mr. Rivera Larios's full compliance with check-ins, including following his reporting to jail in Lake County in June 2022 and following his August 2025 contact with Lake County law enforcement, confirms that he is not a flight risk and that he is likely to present himself at any future ICE appearances, as he has always done. Thus, the government's interest in detaining Mr. Rivera Larios is particularly low.

In fact, continued freedom from confinement until ICE demonstrates that Mr. Rivera Larios is a flight risk or danger to the community is far *less* costly and burdensome for the government than keeping him detained. *See Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) ("The costs to the public of immigration detention are staggering."); *Pinchi*, 2025 WL 1853763, at *3. Providing Mr. Rivera Larios with a hearing before a neutral decisionmaker regarding any re-arrest is a routine procedure that the government provides to those in immigration jails on a daily basis. At that hearing, the adjudicator would have the opportunity to determine whether circumstances have changed sufficiently to justify re-detention. But there is no justifiable reason to re-incarcerate Mr. Rivera Larios without providing such a hearing. As the Supreme Court noted, even where the government has an

"overwhelming interest in being able to return [a parolee] to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole . . . the State has no interest in revoking parole without some informal procedural guarantees." *Morrissey*, 408 U.S. at 483.

Here, where Mr. Rivera Larios has abided by the conditions of his release and the cost of providing such a hearing is extremely low, the government's interest in detaining Mr. Rivera Larios is low and counsels heavily in favor of provision of a bond hearing before detention. Because ICE failed to provide Mr. Rivera Larios any process before detention, Mr. Rivera Larios's detention is unlawful, and Mr. Rivera Larios is likely to succeed on his due process claim.

## B.  MR. RIVERA LARIOS WILL SUFFER IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF

Mr. Rivera Larios currently suffers irreparable harm due to his unlawful detention and thus, a temporary restraining order ordering his immediate release is necessary to prevent further harm. First, Mr. Rivera Larios's re-detention has caused him irreparable harm because "any loss of liberty is fundamental and substantial." *Perera v. Jennings*, 2021 WL 2400981, at *5 (N.D. Cal. 2021). The harm is exacerbated here, where ICE previously detained Mr. Rivera Larios. During that time, Mr. Rivera Larios struggled with dizziness and nausea related to the head trauma he suffered because of the beatings he endured both in Mexico and United States, which led to his eligibility for a U visa as the victim of a violent criminal offense as well as his eligibility for withholding of removal and deferral of removal under the Convention Against Torture. ICE released Mr. Rivera Larios based on his medical issues and a determination that he did not constitute a flight risk or danger to the community. Following his release, Mr. Rivera Larios enjoyed well over three years of freedom from detention, only to have this liberty arbitrarily rescinded without due process.

The Ninth Circuit has recognized "irreparable harms imposed on anyone subject to immigration detention" including "subpar medical and psychiatric care in ICE detention facilities, the economic

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." *Hernandez*, 872 F.3d at 995; *Soto Garcia*, 2025 WL 1676855, at *3 (order granting TRO found irreparable harm from continued ICE detention); *see also Preap v. Johnson*, 831 F.3d 1193, 1195 (9th Cir. 2016) (recognizing that detainees in ICE custody are held in "prison-like conditions.").Mr. Rivera Larios endures irreparable harms as defined by the Ninth Circuit. First, he has already endured "subpar" medical care in ICE custody, serving as partly the reason for his release in 2022. Now, every day that ICE keeps Mr. Rivera Larios detained under no to subpar medical care, his physical health is impacted as he continues to suffer from headaches and dizziness due to head trauma he experienced when he was beaten in Mexico and in the United States. Moreover, after ICE released from, Mr. Rivera Larios worked to rebuild his life, including getting married and having a child. Mr. Rivera Larios has been living freely in Lakeport, California for over three-and-a-half years, with his son and wife, and he works and provides financially for them. Additional time in custody will magnify the "collateral harms" already inflicted on his family. Nothing could make Mr. Rivera Larios whole if he continues to be separated from his son and wife; his harm would truly be irreparable. And Mr. Rivera Larios's son and wife would be forced to recover and navigate their new lives without the financial, physical, and emotional support of Mr. Rivera Larios *See Hernandez*, 872 F.3d at 995 (noting that "irreparable harms" of immigration detention include the "economic burdens imposed on detainees and their families as a result of detention"); *Jorge M.F.*, 2021 WL 783561, at *3 (recognizing the severe economic hardship and psychological harm family members of detainees can face).

Finally, "[t]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). As detailed above, Mr. Rivera Larios's re-arrest absent notice and a hearing before a neutral adjudicator violated his due process and statutory rights. As this Court put it in *Doe*, the "violation of Petitioner's due process rights is sufficient to satisfy the irreparable harm requirement."

2025 WL 691664, at *6. The violation of a statutory right is similar in and of itself to an immediate and irreparable injury. *See Maldonado Bautista*, No. 5:25-CV-01873-SSS-BFM, at * 9 (*citing Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022)). A temporary restraining order is necessary to prevent additional irreparable harm by continued unlawful detention.

## C.   THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST FAVOR GRANTING A TEMPORARY RESTRAINING ORDER

Where the government is the opposing party, the balance of the equities and the public interest merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, the balance of equities and the public interest weigh strongly in favor of Mr. Rivera Larios. Mr. Rivera Larios faces grave hardships absent a temporary restraining order. Absent relief, he faces detention in violation of his constitutional rights, separation from his son and wife, economic hardship, a lack of adequate medical care, and other harms. Faced with "preventable human suffering," the Ninth Circuit has had "little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor." *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)). This Court should find the same.

Federal courts have also recognized a strong public interest "in upholding procedural protections against unlawful detention and . . . that the costs to the public of immigration detention are staggering." *See Soto Garcia*, 2025 WL 1676855, at *3 (citations omitted). Moreover, the government cannot suffer harm from an injunction that prevents it from engaging in an unlawful practice. *See Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983) ("[T]he INS cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."); *see also Doe*, 2025 WL 691664, at *6. "[I]t would not be equitable or in the public's interest to allow [a party] . . . to violate the requirements of federal law, especially when there are no adequate remedies available." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014); *see also Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) (holding that allowing continued violations of federal law would serve "neither equity nor the public interest").

Any burden imposed by requiring the DHS to release Mr. Rivera Larios from custody until he is provided a hearing before a neutral decisionmaker is minimal and clearly outweighed by the substantial harm he and his family suffer as long as he continues to be detained. *See Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983); *see also Soto Garcia*, 2025 WL 1676855 at *3. This is especially so where Mr. Rivera Larios had dutifully complied with ICE's terms of supervision prior to ICE's re-detention, at little cost to the government.

If a temporary restraining order is not entered, the government would effectively be granted permission to ignore the statutory text of the INA, its own regulations, and the requirements of Due Process. *See M.R.*, 2025 WL 1983677, at * 7 (noting the danger for arbitrary and erroneous deprivation of liberty if ICE is allowed to re-detain individuals released on bond with no additional process). In this context, the public interest overwhelmingly favors entering a temporary restraining order and preliminary injunction.

## IV.   SECURITY

No security is necessary here. Courts "may dispense with the filing of a bond when," as here, "there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). It is also proper to waive the bond requirement in cases raising constitutional claims, because "to require a bond would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996). And Mr. Rivera Larios's high likelihood of success on the merits supports the Court's waiving of bond in this case. *See, e.g., People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency*, 766 F.2d 1319, 1326 (9th Cir.), *amended*, 775 F.2d 998 (9th Cir. 1985).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## V.    CONCLUSION

For the foregoing reasons, Mr. Rivera Larios respectfully requests that the Court enter a temporary restraining order ordering ICE to immediately release him from civil immigration detention, reinstate his Order of Supervision, under the terms that were in place immediately before his re-arrest on October 14, 2025, without adding any intrusive electronic monitoring, and enjoin ICE from re-arresting him pending further order of this Court.


Dated: October 15, 2025                    IMMIGRANT LEGAL DEFENSE


By:  /s/ Ilyce Shugall____
     Ilyce Shugall
     Claudia Valenzuela
     IMMIGRANT LEGAL DEFENSE
     1301 Clay St., #70010
     Oakland, CA 94612
     ilyce@ild.org

     *Attorneys for Petitioner Jorge Rivera Larios*