CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6488
FAX: (415) 436-6748
kelsey.helland@usdoj.gov

Attorneys for Respondents

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JORGE RIVERA LARIOS,<br><br>Petitioner,<br><br>v.<br><br>SERGIO ALBARRAN, et al.,<br><br>Respondents. | Case No. 3:25-cv-08799-AMO<br><br>**RESPONDENTS' OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER** |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ....... ii

I. INTRODUCTION ....... 1

II. FACTUAL BACKGROUND ....... 1

A. Petitioner's Unlawful Entry, Removals, and Unlawful Reentries. ....... 1

B. Petitioner's Request for Withholding of Removal to Mexico and U Visa. ....... 2

C. Petitioner's 2025 Arrest and Re-Detention. ....... 2

III. LEGAL STANDARDS ....... 3

A. Detention of Noncitizens Under 8 U.S.C. § 1231 ....... 3

B. Temporary Restraining Orders. ....... 4

C. Habeas Corpus. ....... 5

IV. ARGUMENT ....... 5

A. Petitioner's Claims Fail On The Merits. ....... 5

1. Petitioner's redetention does not violate 8 U.S.C. § 1231. ....... 5

2. Petitioner's redetention does not violate due process. ....... 6

(i) Petitioner's history and status reduce his liberty interest. ....... 7

(ii) The risk of erroneous deprivation is minimal. ....... 9

(iii) The government has a strong interest in detention pending removal. ....... 11

B. Petitioner Fails to Show Irreparable Harm. ....... 11

C. Neither the Balance of Equities Nor Public Interest Favors Petitioner. ....... 12

VI. CONCLUSION ....... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abel v. United States*,
362 U.S. 217 (1960) .......... 6

*Arzate v. Andrews*,
No. 1:25-cv-00942-KES-SKO, 2025 WL 2230521 (E.D. Cal. Aug. 4, 2025) .......... 8

*Carlson v. Landon*,
342 U.S. 524 (1952) .......... 6, 12

*Demore v. Kim*,
538 U.S. 510 (2003) .......... passim

*Dirks v. Cnty. of Los Angeles*,
No. 07-cv-2664, 2008 WL 11355528 (C.D. Cal. Dec. 10, 2008) .......... 9

*Doe v. Becerra*,
787 F. Supp. 3d 1083 (E.D. Cal. 2025) .......... 8

*Doe v. Noem*,
No. 2:25-cv-01103-DAD-AC, 2025 WL 1134977 (E.D. Cal. Apr. 17, 2025) .......... 8

*Drakes Bay Oyster Co. v. Jewell*,
747 F.3d 1073 (9th Cir. 2014) .......... 12

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015) .......... 4

*Gen. Contractors of Cal., Inc. v. Coal for Econ. Equity*,
950 F.2d 1401 (9th Cir. 1991) .......... 12

*Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*,
739 F.2d 466 (9th Cir. 1984) .......... 12

*In re Guerra*,
24 I. & N. Dec. 37 (BIA 2006) .......... 9

*Johnson v. Arteaga-Martinez*,
596 U.S. 573 (2022) .......... 6, 7

*Johnson v. Guzman Chavez*,
594 U.S. 523 (2021) .......... passim

*Lopez v. Brewer*,
680 F.3d 1068 (9th Cir. 2012) .......... 4

*Marin All. For Med. Marijuana v. Holder*,
866 F. Supp. 2d 1142 (N.D. Cal. 2011) .......... 12

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009) .......... 4

*Mathews v. Diaz*,
426 U.S. 67 (1976) .......... 7

*Mathews v. Eldridge*,
424 U.S. 319 (1976) .......... 7

*Mendez v. ICE*,
No. 23-cv-00829-TLT, 2023 WL 2604585 (N.D. Cal. Mar. 15, 2023) .......... 5

*Meneses v. Jennings*,
No. 21-cv-07193-JD, 2021 WL 4804293 (N.D. Cal. Oct. 14, 2021) .......... 12

*Moran v. DHS*,
No. 20-cv-00696-DOC, 2020 WL 6083445 (C.D. Cal. Aug. 21, 2020) .......... 10

*Morrissey v. Brewer*,
408 U.S. 471 (1972) .......... 8

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 13

*Noem v. Abrego Garcia*,
145 S. Ct. 1017 (2025) .......... 10

*Panosyan v. Mayorkas*,
854 F. App'x 787 (9th Cir. 2021) .......... 9

*Preminger v. Principi*,
422 F.3d 815 (9th Cir. 2005) .......... 13

*Rauda v. Jennings*,
55 F.4th 773 (9th Cir. 2022) .......... 5

*Reno v. Flores*,
507 U.S. 292 (1993) .......... 6, 12

*Rodriguez Diaz v. Garland*,
53 F.4th 1189 (9th Cir. 2022) .......... passim

*Roe v. Oddo*, No. 3:25-cv-128, 2025 WL 1892445 (W.D. Pa. July 9, 2025) .... 10

*Senate of Cal. v. Mosbacher*, 968 F.2d 974 (9th Cir. 1992) .... 5

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415 (9th Cir. 1984) .... 4

*Stanley v. Univ. of S. Cal.*, 13 F.3d 1313 (9th Cir. 1994) .... 4

*Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009) .... 13

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832 (9th Cir. 2001) .... 4

*Thomas v. Zachry*, No. 3:17-cv-0219-LRH, 2017 WL 2174946 (D. Nev. May 17, 2017) .... 5

*Uc Encarnacion v. Kaiser*, No. 22-cv-04369-CRB, 2022 WL 9496434 (N.D. Cal. Oct. 14, 2022) .... 7, 8, 9, 11

*United States v. Cisneros*, No. 19-cr-00280-RS-5, 2021 WL 5908407 (N.D. Cal. Dec. 14, 2021) .... 9

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) .... 13

*Winter v. NRDC*, 555 U.S. 7 (2008) .... 4

*Wong Wing v. United States*, 163 U.S. 228 (1896) .... 6

*Zadvydas v. Davis*, 533 U.S. 678 (2001) .... 4, 7, 9

**Statutes**

8 U.S.C. § 1182 .... 3
8 U.S.C. § 1231 .... passim
8 U.S.C. § 1252 .... 5
28 U.S.C. § 2241 .... 5

**Rules**

Federal Rule of Civil Procedure 65(a)(2) ........ 5

**Regulations**

8 C.F.R. § 241.4 ........ passim
8 C.F.R. § 241.13 ........ 3, 4, 9

# I. INTRODUCTION

Petitioner Jorge Rivera Larios is subject to a final order of removal from the United States because he has unlawfully entered the United States at least six times. In 2021, Petitioner requested what is called "withholding-only" relief, which does not challenge the order of removal, but rather requests a determination that he cannot be removed to a specific country. Petitioner was released from ICE custody in the meantime, subject to certain conditions, including that he not commit any crimes. However, in August of this year, Petitioner was arrested by local law enforcement for a felony domestic violence offense of causing bodily harm to a spouse or cohabitant. ICE reasonably determined that Petitioner's arrest reflected a violation of his conditions of release, and therefore revoked that release and returned him to custody.

Petitioner now brings this habeas petition and motion for temporary restraining order to obtain his immediate release and prevent his redetention, at least without a bond hearing.

Petitioner's claims are without merit. Congress has created a comprehensive scheme governing the detention of aliens pending removal, and the Department of Homeland Security has promulgated detailed regulations to implement that scheme, all of which the Supreme Court has consistently upheld. DHS has well-established authority to revoke the release of an individual who has violated the conditions of their release, as Petitioner has here. And granting Petitioner's requested relief would judicially graft on an additional layer of detention review that Congress, the Executive Branch, and the Supreme Court have never held is required in these circumstances.

The Court should deny Petitioner's motion for a temporary restraining order.

# II. FACTUAL BACKGROUND

## A. Petitioner's Unlawful Entry, Removals, and Unlawful Reentries.

Petitioner is a native of Mexico. *See* Pet. ¶¶ 12, 16. ICE records indicate that Petitioner first entered the United States unlawfully in 2005, and was removed pursuant to an expedited removal order. *See* Declaration of Kelsey J. Helland ("Helland Decl.") ¶ 2. He reentered unlawfully again in 2005 and 2007, and was again removed under expedited removal orders both times. *See id.* He again reentered unlawfully in 2014 and 2016, and on both occasions the government reinstated his prior order of removal and removed him to Mexico. *See id.*

Petitioner reentered the United States unlawfully again in 2017, for what was at least the sixth time. *See* Pet. ¶ 16. This time, ICE did not encounter Petitioner until 2021. *See id.* In the meantime, Petitioner was arrested "multiple times." *Id.* These included arrests for: a misdemeanor DUI in 2017; felony carrying a dirk or dagger in 2018; felony possession and transportation of a controlled substance in April 2019; felony possession and transportation of a controlled substance in August 2019; felony possession of a firearm and ammunition in January 2021; and misdemeanor use of a controlled substance in July 2021. *See* Helland Decl. ¶ 3. At least some of these arrests resulted in a criminal conviction. *See* Pet. ¶ 12.

ICE arrested Petitioner in September 2021. *See id.* In January 2022, Petitioner was released on an Order of Supervision. *See id.*; *see also* Helland Decl. Ex. A. One of the conditions of that order was that Petitioner not commit any crimes. *See* Helland Decl. Ex. A.

**B. Petitioner's Request for Withholding of Removal to Mexico and U Visa.**

In October 2021, Petitioner claimed a fear of torture if he were returned to Mexico. *See* Pet. 17.[1] An asylum officer determined that he had a reasonable fear and referred his claim to the immigration court. *See id.*

In 2023, Petitioner applied for a non-immigrant U visa, allegedly based on his suffering a criminal attack in the United States and subsequently cooperating with law enforcement. *See id.* ¶ 20. DHS records indicate that USCIS has determined that Petitioner's visa application is not bona fide, and therefore the application should be denied (although it remains pending at this time). *See* Helland Decl. Ex. B.

In January 2025, Petitioner's withholding-only proceedings were administratively closed due to his pending visa application. *See id.*

**C. Petitioner's 2025 Arrest and Re-Detention.**

On August 17, 2025, local law enforcement officers arrested Petitioner for felony infliction of corporal injury to a spouse or cohabitant, a domestic violence offense. *See* Pet. ¶¶ 5, 22, 60; Helland

[1] Due to his history of unlawful entry, Petitioner was (and is) not eligible for asylum in the United States. Rather, his "withholding-only" claim only would only prevent his removal to a specific country—here, Mexico. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 526 (2021).

Decl. Ex. B. Local authorities released him and have not yet filed any criminal charges.

On October 14, 2025, Petitioner attended a check-in appointment at the ICE Field Office in San Francisco. *See* Pet. ¶ 22. The ICE Field Office Director determined that Petitioner's August 2025 criminal arrest evidenced a violation his conditions of supervision, and placed Petitioner in detention. *See* Helland Decl. Ex. B; *see also* Pet.¶ 22.

That same day, Petitioner was provided with an Informal Interview Upon Revocation of Order of Supervision Under 8 C.F.R. § 241.4(l) and 8 C.F.R. § 241.13(i). *See* Helland Decl. Ex. C. Petitioner stated that, although he was arrested in August 2025, he was not convicted. *See id.* ICE did not release Petitioner following the interview. Under the Notice of Revocation of Release, ICE will review Petitioner's custody again in approximately three months. *See id.* Ex. B.

## III. LEGAL STANDARDS

### A. Detention of Noncitizens Under 8 U.S.C. § 1231.

The detention of an alien following reinstatement of a prior order of removal is governed by 8 U.S.C. § 1231(a). *See Guzman Chavez*, 594 U.S. at 526. Section 1231(a)(2) provides that the government "shall detain" the alien for a 90-day "removal period," the commencement of which can be triggered by various events in the alien's proceedings. *See* 8 U.S.C. § 1231(a)(1)(B).

"If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." *Id.* § 1231(a)(3). The governing regulations provide that DHS may release an alien under certain conditions, and may revoke the alien's release when those conditions are violated. *See generally* 8 C.F.R. § 241.4.

Moreover, an alien "may be detained beyond the [90-day] removal period" if, among other things, he is "inadmissible" (for example, because he reentered the country unlawfully, *see* 8 U.S.C. § 1182(a)(9)(C)) or if the government determines that he is "a risk to the community or unlikely to comply with the order of removal." *Id.* § 1231(a)(6). And, "if released," such an alien "shall be subject to the terms of supervision in paragraph (3)." *Id.*

Section 1231(a) does not provide for a bond hearing for the noncitizen to challenge their detention. *See Guzman Chavez*, 594 U.S. at 526. Rather, noncitizens subject to final orders of removal

can request review of their detention after the expiration of the 90-day removal period "where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). Moreover, the Supreme Court has recognized that detention of up to six months to effectuate the removal of a noncitizen is "presumptively reasonable" and constitutionally valid, though longer detention may require additional justification. *See Zadvydas v. Davis*, 533 U.S. 678, 689 (2001).

**B. Temporary Restraining Orders.**

The standard for issuing a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Such an injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). To obtain relief, the moving party must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008).

The purpose of a preliminary injunction is to preserve the status quo pending final judgment rather than to obtain a preliminary adjudication on the merits. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). "A preliminary injunction can take two forms." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009). "A prohibitory injunction prohibits a party from taking action and 'preserves the status quo pending a determination of the action on the merits.'" *Id*. (internal quotation omitted). "A mandatory injunction orders a responsible party to take action," as Petitioners seek here. *Id*. at 879 (internal quotation omitted). "A mandatory injunction goes well beyond simply maintaining the status quo pendente lite and is particularly disfavored." *Ibid*. "In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases." *Ibid*. Where plaintiffs seek a mandatory injunction, "courts should be extremely cautious." *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319 (9th Cir. 1994) (internal quotation omitted). The moving party "must establish that the law and facts *clearly favor* [their] position, not simply that [they are] likely to succeed." *Garcia v. Google, Inc.*,

786 F.3d 733, 740 (9th Cir. 2015) (emphasis original). Courts have also denied TRO motions where the relief the plaintiffs seek is the same relief sought on the merits, because "[j]udgment on the merits in the guise of preliminary relief is a highly inappropriate result." *Mendez v. ICE*, No. 23-cv-00829-TLT, 2023 WL 2604585, at *3 (N.D. Cal. Mar. 15, 2023) (quoting *Senate of Cal. v. Mosbacher*, 968 F.2d 974, 978 (9th Cir. 1992)).

Under Federal Rule of Civil Procedure 65(a)(2), the Court may consolidate consideration of a motion for a preliminary injunction with the consideration of the merits of an action. "Consolidation is generally appropriate when it would (1) result in an expedited resolution of the case; (2) conserve judicial resources and avoid duplicative proceedings; (3) involves only legal issues based on uncontested evidence and public records; and (4) would not be prejudicial to any of the parties." *Thomas v. Zachry*, No. 3:17-cv-0219-LRH, 2017 WL 2174946, at *1 (D. Nev. May 17, 2017) (citing cases).

### C. Habeas Corpus.

Federal district courts may grant writs of habeas corpus if the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). In immigration cases, the federal courts' habeas jurisdiction is limited by 8 U.S.C. § 1252(a)(2)(B), which provides that "no court shall have jurisdiction to review" "decision[s]" for which the statute grants "discretion" to the Attorney General. *See also id.* § 1252(g); *Rauda v. Jennings*, 55 F.4th 773, 776-77 (9th Cir. 2022) (holding district courts lack jurisdiction to enjoin the execution of removal orders).

## IV. ARGUMENT

### A. Petitioner's Claims Fail On The Merits.

Petitioner's August 2025 arrest for domestic violence violated the conditions of his Order of Supervision. ICE therefore properly redetained Petitioner under the governing statutes and regulations. The Supreme Court has squarely held that aliens pursuing withholding-only relief are not entitled to a bond hearing. *See Guzman Chavez*, 594 U.S. at 531. The Constitution does not require any extra process in Petitioner's case. Petitioner's claims therefore fail on the merits.

#### 1. Petitioner's redetention does not violate 8 U.S.C. § 1231.

Petitioner first claims that his redetention outside of the 90-day removal period violates 8 U.S.C. § 1231(a)(2) and (6). *See* Pet. ¶¶ 31-34. But Petitioner simply ignores that Congress authorized DHS to

promulgate regulations for the ongoing supervision of aliens who are not removed within 90 days. *See* 8 U.S.C. § 1231(a)(3). Those regulations specifically provide that DHS may redetain an alien beyond the removal period in various circumstances, including if DHS determines that the alien has violated his conditions of supervision. *See* 8 C.F.R. § 241.4(l).

That is what happened here. Petitioner's 2022 Order of Supervision included a condition that Petitioner not commit any crimes. But in August 2025, Petitioner was arrested for a domestic violence offense. DHS reasonably determined that Petitioner had violated his conditions of release. His redetention was therefore authorized by statute and regulation.

Petitioner's argument to the contrary would lead to the absurd result that Congress failed to provide DHS with the authority to redetain aliens who violated the conditions of their release. Petitioner supplies no reason to think that Congress intended such a result. Nor could he, since Congress plainly did authorize detention in these circumstances. *See* 8 U.S.C. § 1231(a)(3), (6); 8 C.F.R. § 241.4(l).

**2. Petitioner's redetention does not violate due process.**

The Supreme Court has squarely held that noncitizens in Petitioner's procedural posture—those subject to reinstated removal orders pending an immigration judge's withholding of removal determination—are subject to detention under § 1231 and "are not entitled to a bond hearing while they pursue withholding of removal." *Guzman Chavez*, 594 U.S. at 526; *see also, e.g.*, *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 581 (2022) (rejecting argument that § 1231(a)(6) "require[s] an initial bond hearing" "at the outset of detention"). And that textual holding is reinforced by the Supreme Court's prior determinations that, so long as it is not prolonged, detention to effectuate removal is generally constitutionally permissible.

Indeed, the Supreme Court has repeatedly "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003); *see also, e.g.*, *Reno v. Flores*, 507 U.S. 292, 309 (1993) (rejecting procedural due process claim that "the INS procedures are faulty because they do not provide for automatic review by an immigration judge of the initial deportability and custody determinations"); *Abel v. United States*, 362 U.S. 217, 233-34 (1960) (noting the "impressive historical evidence of acceptance of the validity of statutes providing for administrative deportation arrest from almost the beginning of the Nation"); *Carlson v. Landon*, 342

U.S. 524, 538 (1952) ("Detention is necessarily a part of this deportation procedure."); *Wong Wing v. United States*, 163 U.S. 228, 235 (1896) ("We think it clear that detention or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens, would be valid."). As the Supreme Court has explained, "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976). Petitioner's substantive due process claim therefore fails. *See Demore*, 538 U.S. at 531; *see also Zadvydas*, 533 U.S. at 701 (recognizing a "presumptively reasonable period of detention" of up to six months to effectuate a final removal order).

True, noncitizens held under § 1231 may be able to obtain review of their detention after six months, including to avoid the constitutional problems with "prolonged" detention. *See Zadvydas*, 533 U.S. at 699 ("[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by [§ 1231(a)]."); *but see Arteaga-Martinez*, 596 U.S. at 580-82 (rejecting claim that statutory text of § 1231(a)(6) required periodic bond hearings every six months). But Petitioner does not and cannot argue that his detention has become prolonged, or that his removal is not reasonably foreseeable at this time. *See generally* Pet.

Petitioner nevertheless asserts that, under *Mathews v. Eldridge*, 424 U.S. 319 (1976), he is entitled to a bond hearing before the government can revoke his release and take him into custody again. As an initial matter, the government does not concede that *Mathews* applies here, given "the unique constitutional treatment of detained aliens." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). Nevertheless, if the Court were to apply *Mathews*, it would consider three factors: the plaintiff's private interest, the risk of erroneous deprivation without additional procedures, and the government's interest. These factors weigh against the additional process requested here.

**(i) Petitioner's history and status reduce his liberty interest.**

First, Petitioner's liberty interest is reduced by the fact that he is a noncitizen subject to a final order of removal who violated the conditions of his release. *See Uc Encarnacion v. Kaiser*, No. 22-cv-04369-CRB, 2022 WL 9496434, at *3 (N.D. Cal. Oct. 14, 2022) (holding released noncitizen had a reduced liberty interest where he "always knew that his release was subject to appellate review"); *see also Rodriguez Diaz* 53 F.4th at 1206-08.

Indeed, that is especially true in light of Petitioner's particular circumstances here. Petitioner has unlawfully entered the country at least six times. He is subject to an administratively final order of removal. Although he can seek withholding of his removal to the specific country of Mexico, he cannot challenge the order of removal itself. *See Guzman Chavez*, 594 U.S. at 531, 535. And again, he violated the specific conditions of the very order of release on which is liberty was based. All of these factors reduce Petitioner's liberty interest here. *See Rodriguez Diaz*, 53 F.4th at 1206-08.

Petitioner wrongly argues that his liberty interest is actually heightened here because he was conditionally released in January 2022. That is mistaken. Petitioner has never been granted any form of lawful status in the United States; his release was always subject to revocation, including if Petitioner violated the conditions of his release, as he in fact did here. Petitioner's conditional release does not somehow increase the strength of his liberty interest now. *See Uc Encarnacion*, 2022 WL 9496434, at *3. This case is also fundamentally unlike cases like *Morrissey v. Brewer*, 408 U.S. 471 (1972) and its progeny, where U.S. citizens were released from custody in other contexts, such as post-sentence parole: "The recognized liberty interests of U.S. citizens and aliens are not coextensive." *Rodriguez Diaz*, 53 F.4th at 1206; *see also Uc Encarnacion*, 2022 WL 9496434, at *3 ("Morrissey involved subsequent revocation of post-release parole for alleged violation of parole conditions, not appellate review of the original decision to parole the petitioner.").

Petitioner also argues that recent district-court cases establish that merely being arrested without facing criminal charges does not constitute "changed circumstances" that can justify revoking his release. *See* Pet. ¶ 60 (citing *Arzate v. Andrews*, No. 1:25-cv-00942-KES-SKO, 2025 WL 2230521, at *5 (E.D. Cal. Aug. 4, 2025); *Doe v. Noem*, No. 2:25-cv-01103-DAD-AC, 2025 WL 1134977, at *8 (E.D. Cal. Apr. 17, 2025); and *Doe v. Becerra*, 787 F. Supp. 3d 1083 (E.D. Cal. 2025)). But *Arzate* did not involve a violation of the conditions or release; it involved a misdemeanor arrest, not felony domestic violence; the arrest at issue was more than a year old, whereas here Petitioner was arrested less than two months ago; and most importantly, *Arzate* did not discuss 8 C.F.R. § 241.4 whatsoever, much less explain why that authority would not apply when one of the conditions for release was that the alien not be arrested again. *See* 2025 WL 2230521, at *2-4 (noting that the petitioner had "complied with his release conditions"). Similarly, neither *Doe v. Noem* nor *Doe v. Becerra* involved violent felonies, and

neither discussed the revocation process under § 241.4. *See generally* 2025 WL 1134977; 787 F. Supp. 3d 1083. Petitioner cannot find support in these decisions that don't even mention the dispositive issue in this case.

By contrast, although the government need not expressly show "changed circumstances" here, other courts have recognized that a criminal arrest can so qualify and therefore support revoking a release—even if charges were never filed. *See, e.g.*, *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021) (noting that "reinvolvement with the criminal justice system" can qualify as "changed circumstances"); *United States v. Cisneros*, No.19-cr-00280-RS-5, 2021 WL 5908407, at *4 (N.D. Cal. Dec. 14, 2021) ("An arrest can be considered in determining whether an immigrant should be detained—not only convictions, and not only arrests for crimes of moral turpitude.") (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)); *accord Dirks v. Cnty. of Los Angeles*, No. 07-cv-2664, 2008 WL 11355528, at *1 (C.D. Cal. Dec. 10, 2008) ("[P]rosecutors decline cases on numerous grounds having nothing to do with the merits of the case.").

The government recognizes that any form of detention will implicate an individual's liberty interests, and that Petitioner, like virtually everyone subject to detention, has personal reasons for wanting to remain out of custody. But those reasons do not change the fact that Petitioner's status and his history in immigration proceedings reduce his liberty interest here.

**(ii) The risk of erroneous deprivation is minimal.**

Second, the risk of erroneous deprivation of Petitioner's liberty here is minimal. *See Rodriguez Diaz*, 53 F.4th at 1209; *Uc Encarnacion*, 2022 WL 9496434, at *4. There is no dispute that § 1231 authorizes detention to effectuate an individual's removal. *See, e.g.*, *Guzman Chavez*, 594 U.S. at 526; *see also Zadvydas*, 533 U.S. at 701. The Supreme Court has long upheld the legality of such detentions. Petitioner has made no argument that § 1231 does not apply here. *See generally* Pet. And "existing agency procedures sufficiently protected [Petitioner's] liberty interest and mitigated the risk of erroneous deprivation." *Rodriguez Diaz*, 53 F.4th at 1209; *see also* 8 C.F.R. §§ 241.13(d)(1) & (j). Indeed, the Notice of Revocation of Release provides that Petitioner's detention will be reviewed again in approximately three months. *See* Helland Decl. Ex. B.

Petitioner ignores that Justice Sotomayor, in her Statement Respecting the Disposition of the

Application in *Noem v. Abrego Garcia*, specifically identified 8 C.F.R. § 241.4(l) as part of the "[f]ederal law governing detention and removal of immigration" that continues to be binding on ICE. *Abrego Garcia*, 145 S. Ct. 1017, 1019 (2025) (Statement of Sotomayor, J.). Describing these requirements, Justice Sotomayor wrote that "in order to revoke conditional release, the Government must provide adequate notice and 'promptly' arrange an 'initial informal interview . . . to afford the alien an opportunity to respond to the reasons for the revocation stated in the notification." *Id.* And that is precisely what happened here. *See* Helland Decl. Exs. B, C.

But significantly, these procedures do not require any pre-revocation hearing. And logically so: detention in these circumstances is a resumption of post-removal-period detention under § 1231(a), which is constitutionally permitted without a pre-detention hearing. For this Court to find in favor of Petitioner on the merits, it would need to conclude that the procedural protections which Petitioner received under 8 C.F.R. § 241.4(l) are constitutionally insufficient—essentially a finding that the regulation is facially unconstitutional. Petitioner has certainly not established as much here. Respondents are aware of no case, in this District or elsewhere, so holding. And Justice Sotomayor's statement in *Abrego Garcia* signals just the opposite: her citation of 8 C.F.R. § 241.4(l) implies *approval* of these procedural protections. Notably missing from her description of the regulation was any suggestion that these procedures are insufficient or that an extra-regulatory pre-revocation hearing before an immigration judge would be constitutionally required.[2]

Other courts have similarly held that the revocation of release under § 241.4(l) does not violate due process. *See, e.g.*, *Roe v. Oddo*, No. 3:25-cv-128, 2025 WL 1892445, at *8 (W.D. Pa. July 9, 2025) ("[C]ompliance with [8 U.S.C. § 1231 and 8 C.F.R. § 241.4] satisfies the requirements of procedural due process"); *Moran v. DHS*, No. 20-cv-00696-DOC, 2020 WL 6083445, at *9 (C.D. Cal. Aug. 21, 2020) (dismissing claim that § 241.4(l) violated procedural due process).

Finally, Petitioner argues without evidence that the government failed to comply with the procedural requirements of § 241.4(l). But the record plainly shows that the local Field Office Director

[2] Petitioner's request for a bond hearing at which the burden is reversed and heightened to the "clear and convincing" standard has been rejected by the Ninth Circuit. *See Rodriguez Diaz,* 53 F.4th at 1210-12.

made the revocation decision, and Petitioner was provided with an informal interview the same day. *See* Helland Decl. Exs. B, C. All of this complied with the regulation. *See* 8 C.F.R. § 241.4(l)(1)-(2).

**(iii) The government has a strong interest in detention pending removal.**

Turning to the third *Mathews* factor, the Ninth Circuit has held that "the government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law.'" *Rodriguez Diaz*, 53 F.4th at 1208 (quoting *Demore*, 538 U.S. at 518). And the Supreme Court has recognized that "aliens who reentered the country illegally after removal have demonstrated a willingness to violate the terms of a removal order, and they therefore may be less likely to comply with the reinstated order." *Guzman Chavez*, 594 U.S. at 544; *see also Rodriguez Diaz*, 53 F.4th at 1208-09 & n.8 (noting that "[t]he risk of a detainee absconding also inevitably escalates as the time for removal becomes more imminent").

All the more so here. Petitioner has a lengthy criminal history, consisting of multiple drug and weapons offenses, including an arrest for domestic violence just two months ago. The government has a strong interest in protecting the community from Petitioner until he can be removed from the country for the sixth time.

Moreover, Petitioner's request for an additional level of review would impose administrative and resource burdens on the government that would frustrate its ability to take congressionally authorized detention and removal actions. Congress has determined that the Executive Branch may detain noncitizens ordered removed without providing them a pre-detention bond hearing. Every extra hearing before an IJ adds further congestion to an already backlogged immigration-court system. It drains limited Executive Branch resources. The government has a significant interest in avoiding these extra-regulatory burdens. *See Uc Encarnacion*, 2022 WL 9496434, at *4-5 (additional bond hearing would "thwart the Congressional design").

In short, the three *Mathews* factors weigh decidedly against granting Petitioner the additional, pre-detention hearing he now requests.

**B. Petitioner Fails to Show Irreparable Harm.**

In addition to his failure to show a likelihood of success on the merits, Petitioner does not meet his burden of showing he will be irreparably harmed in the absence of a preliminary injunction.

Petitioner primarily claims three categories of injury if he is not afforded a hearing before he is arrested again: (1) alleged deprivation of constitutional rights; (2) inadequate medical care; and (3) separation from his family.

However, Petitioner's speculative claimed injuries are "too tenuous" to support a preliminary injunction. *See Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984). Petitioner supplies no evidence to suggest that he is currently receiving inadequate medical care. Moreover, Petitioner's claimed injuries regarding harm to him and his family arise from possible *detention*, not from the absence of a bond hearing. He thus offers no explanation for how those claimed injuries would be prevented by a temporary restraining order which—even if granted—could still result in his re-detention following notice and a hearing.

The injury that Petitioner asserts from his detention is also insufficient because, as discussed above, it is well established that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523; *see also, e.g.*, *Flores*, 507 U.S. at 306; *Carlson*, 342 U.S. at 538. And again, even while detained, Petitioner would have the opportunity to seek review of that detention if it extended over time. Petitioner therefore cannot show that any injury he might suffer from the specific absence of a *pre*-detention hearing is "irreparable."

Finally, the alleged infringement of Petitioner's constitutional rights is insufficient when—as here—Petitioner fails to demonstrate "'a sufficient likelihood of success on the merits of [his] constitutional claims to warrant the grant of a preliminary injunction.'" *Marin All. For Med. Marijuana v. Holder*, 866 F. Supp. 2d 1142, 1160 (N.D. Cal. 2011) (quoting *Assoc'd Gen. Contractors of Cal., Inc. v. Coal for Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991)); *see also Meneses v. Jennings*, No. 21-cv-07193-JD, 2021 WL 4804293, at *5 (N.D. Cal. Oct. 14, 2021) (denying TRO where petitioner "assume[d] a deprivation to assert the resulting harm").

Given his undisputed status as a noncitizen subject to a final order of removal whose detention has not been prolonged, Petitioner cannot establish that lawfully authorized detention would cause him irreparable harm.

**C. Neither the Balance of Equities Nor Public Interest Favors Petitioner.**

When the government is a party, the last two factors that Petitioner must establish to obtain a

preliminary injunction merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Here, for the same reasons that Petitioner has not shown the *Mathews* factors favor his requested additional process, Petitioner has not shown that a preliminary injunction barring his detention is in the public interest. To the contrary, the public interest lies squarely in detaining an individual subject to removal in the near term. *See Rodriguez Diaz*, 53 F.4th at 1208-09.

Indeed, Petitioner's motion ignores the public interest in application of immigration laws that the Supreme Court has long upheld. *See, e.g.*, *Demore*, 538 U.S. at 523; *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) (holding that the court "should give due weight to the serious consideration of the public interest" in enacted laws). Petitioner's claimed harm to himself and his family cannot outweigh this public interest in application of the law, particularly since courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (citation omitted). Recognizing the availability of a preliminary injunction under such circumstances would permit any noncitizen who had been released pursuant to an order of supervision pending removal to petition a federal district court for additional review, circumventing the comprehensive statutory scheme that Congress enacted.

And Petitioner's reliance on his assumed constitutional entitlement to an extra bond hearing does not save his argument. While it is "always in the public interest to protect constitutional rights," if, as here, the Petitioner has not shown a likelihood of success on the merits of that claim, that public interest does not outweigh the competing public interest in enforcement of existing laws. *See Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). The public and governmental interest in upholding the existing processes and permitting Petitioner to be detained without additional burdensome processes, while allowing Petitioner to then challenge his detention if it becomes prolonged, is significant.

///

## VI. CONCLUSION

For the foregoing reasons, the Court should deny the request for a temporary restraining order.

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

Dated: October 15, 2025 By: */s/ Kelsey J. Helland*
KELSEY J. HELLAND
Assistant United States Attorney
Attorney for Respondents