UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE RIVERA LARIOS,<br><br>   Plaintiff,<br><br>  v.<br><br>SERGIO ALBARRAN, et al.,<br><br>   Defendants. | Case No. 25-cv-08799-AMO<br><br>**ORDER GRANTING TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 5 |

Before the Court is Petitioner Jorge Rivera Larios's Motion for Temporary Restraining Order ("TRO"). TRO Mot., Dkt. No. 5. On October 14, 2025, Petitioner filed a Petition for Writ of Habeas Corpus, and on October 15, he filed a Motion for Temporary Restraining Order against San Francisco Field Office Director for U.S. Immigration and Customs Enforcement Sergio Albarran, Secretary of the Department of Homeland Security Kristi Noem, and United States Attorney General Pamela Bondi. Dkt. Nos. 1, 5. Petitioner asks this Court to (1) order his immediate release from Respondents' custody pending these proceedings, and (2) enjoin Respondents from transferring him out of this District or deporting him during the pendency of the underlying proceedings. *See* Notice of Mot., Dkt. No. 5. On the same day, Defendants submitted an opposition. Dkt. No. 6. For the foregoing reasons, the TRO is GRANTED as modified below.

**I. BACKGROUND**

Petitioner is a native of Mexico. *See* Dkt. No. 1 ("Pet.") ¶¶ 12, 16. ICE records indicate that Petitioner first entered the United States unlawfully in 2005 and was removed pursuant to an expedited removal order. *See* Dkt. No. 6-1, Helland Decl. ¶ 2. He reentered unlawfully again in 2005 and 2007 and was again removed under expedited removal orders both times. *See id*. He

1  again reentered unlawfully in 2014 and 2016, and on both occasions the government reinstated his
2  prior order of removal and removed him to Mexico. *See id.*

3  Petitioner reentered the United States unlawfully again in 2017, but ICE did not encounter
4  Petitioner until 2021. *See* Pet. ¶ 16. ICE arrested Petitioner in September 2021. *See* Pet. ¶ 12. In
5  January 2022, Petitioner was released on an Order of Supervision. *See id.*; *see also* Helland Decl.
6  Ex. A. One of the conditions of that order was that Petitioner not commit any crimes. *See*
7  Helland Decl. Ex. A.

8  In October 2021, Petitioner claimed a fear of torture if he were returned to Mexico. *See*
9  Pet. ¶ 17. An asylum officer determined that he had a reasonable fear and referred his claim to the
10 immigration court. *See id.* In 2023, Petitioner applied for a non-immigrant U-visa based on his
11 allegedly suffering a criminal attack in the United States and subsequently cooperating with law
12 enforcement. *See id.* ¶ 20. In January 2025, Petitioner's withholding-only proceedings were
13 administratively closed due to his pending U-visa application. *See id.*

14 On August 17, 2025, local law enforcement officers arrested Petitioner for a domestic
15 violence offense but released him the next day. *See* Pet. ¶¶ 5, 22, 60; Helland Decl. Ex. B. To
16 date, no charges have been filed. *Id.*

17 On October 14, 2025, Petitioner attended a check-in appointment at the ICE Field Office in
18 San Francisco. *See* Pet. ¶ 22. The ICE Field Office Director determined that Petitioner's August
19 2025 criminal arrest evidenced a violation his conditions of supervision, and placed Petitioner in
20 detention. Shugall Decl. ¶ 15. Petitioner currently remains detained at the ICE Field Office in
21 San Francisco, California. *Id.* ¶ 17.

22 **II.  DISCUSSION**

23 Petitioner now moves for a TRO. Dkt. No. 5.

24 **A.  Legal Standard**

25 The standard for issuing a temporary restraining order is substantially identical to the
26 standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th
27 Cir. 2017). Thus, a party seeking a temporary restraining order must establish "[1] that he is likely
28 to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of

preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

**B.     Analysis**

Petitioner has demonstrated a likelihood of success on the merits of his claim that his ongoing detention violates his procedural due process rights under the Fifth Amendment. Petitioner has a substantial interest in remaining out of custody, and the Due Process Clause entitles Petitioner to a bond hearing before an immigration judge prior to any arrest or detention. *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025) (applying the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to similar circumstances); *Pinchi v. Noem*, --- F. Supp. 3d ----, No. 25-cv-05632-PCP, 2025 WL 2084921, at *2-6 (N.D. Cal. July 24, 2025) (same); *see also Pablo Sequen v. Kaiser*, --- F. Supp. 3d ----, No. 25-cv-06487-PCP, 2025 WL 2203419, at *2 (N.D. Cal. Aug. 1, 2025) (collecting cases). At minimum, Petitioner here demonstrates "serious questions on the merits" weighing in favor of injunctive relief because, while Respondents' stated justification for redetention of Petitioner under Title 8 U.S.C. § 1231(a) was Petitioner's alleged commission of a crime, that

rationale falters in light of a mere arrest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Petitioner has also demonstrated a likelihood of irreparable injury in the absence of temporary relief. The likely unconstitutional deprivation of liberty that Petitioner faces is an immediate and irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *see also Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005). "[I]t follows inexorably from [the] conclusion" that Petitioner's detention without a hearing is "likely unconstitutional" that he has "also carried [his] burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.

The final two *Winter* factors, the balance of the equities and public interest, also weigh heavily in favor of granting temporary relief. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). As other courts in this district and others have concluded under similar circumstances, "the potential harm to [Petitioner] is significant, while the potential harm to the government is minimal." *Pablo Sequen*, 2025 WL 2203419, at *3. At most, the Government faces a short delay in detaining Petitioner if it ultimately demonstrates, by clear and convincing evidence, that his detention is necessary to prevent danger to the community or flight. *See Jorge M. F.*, 2021 WL 783561, at *3; *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). The Government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little

4

difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." *Hernandez*, 872 F.3d at 996) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

A TRO immediately releasing Petitioner is appropriate to return him to the status quo. *E. Bay Sanctuary Covenant*, 932 F.3d at 779. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to Petitioner's likely illegal detention. *See Kuzmenko v. Phillips*, No. 25-cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo).

Because Petitioner satisfies all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the TRO Motion is granted as detailed below. This Order accords with many other recent grants of temporary relief in similar circumstances. *See, e.g.*, *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-RMI (EKL), 2025 WL 2453968, at *1 (N.D. Cal. Aug. 16, 2025) (granting temporary restraining order)*; Alva v. Kaiser*, No. 25-cv-06676, 2025 WL 2294917, at *3 (N.D. Cal. Aug. 7, 2025) (same); *Pinchi v. Noem*, No. 25-cv-05632, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (granting temporary restraining order requiring release of asylum seeker and a pre-detention bond hearing before re-arrest); *Singh*, 2025 WL 1918679, at *10 (granting preliminary injunction); *Doe v. Becerra*, No. 25-cv-647-DJC-DMC, 2025 WL 691664, at *8 (E.D. Cal. Mar. 3, 2025) (granting temporary restraining order); *see also Diaz*, 2025 WL 1676854 (granting temporary restraining order requiring pre-detention hearing before re-detention of noncitizen out of custody five years); *Garcia v. Bondi*, No. 25-cv-5070, 2025 WL 1676855, at *3 (N.D. Cal. June 14, 2025) (granting temporary restraining order requiring pre-detention hearing before re-detention of noncitizen out of custody six years ); *Enamorado v. Kaiser*, No. 25-cv-4072-NW, 2025 WL 1382859, at *3 (N.D. Cal. May 12, 2025).

Finally, the Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. "[T]here is no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Therefore, no security is

needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

### III. CONCLUSION AND ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioner's Motion for Temporary Restraining Order is **GRANTED** to preserve the status quo pending further briefing and a hearing on this matter. Respondents are **ORDERED** to immediately release Petitioner from Respondents' custody and **ENJOINED AND RESTRAINED** from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker, and from removing Petitioner from the United States.[1] This Order shall remain in effect until October 29, 2025. Respondents **SHALL** provide a status report confirming Petitioner's release by no later than noon on October 16, 2025.

Respondents are **ORDERED TO SHOW CAUSE** in a hearing via Zoom at 10:30 a.m. on Tuesday, October 28, 2025, why a preliminary injunction should not issue. The Court ORDERS counsel for both sides to meet and confer regarding a briefing schedule on Petitioner's motion for preliminary injunction, with a reply brief due by no later than noon on Friday, October 24, 2025. The parties' joint or separate proposed briefing schedules shall be filed on the docket by no later than 10:00 a.m. on October 17, 2025. The parties may stipulate to an extended briefing schedule and later hearing date, provided that the parties also stipulate that the temporary restraining order will continue in effect until that hearing date.

**IT IS SO ORDERED.**

Dated: 12:05 a.m. on October 16, 2025

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

---

[1] Petitioner also asks the Court to order that he remain within the Northern District of California in order to preserve this Court's jurisdiction, but it is well-established that "when the Government moves a habeas petitioner after he properly files a petition naming his immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004).