1    CRAIG H. MISSAKIAN (CABN 125202)
     United States Attorney
2    PAMELA T. JOHANN (CABN 145558)
     Chief, Civil Division
3    KELSEY J. HELLAND (CABN 298888)
     Assistant United States Attorney
4
            450 Golden Gate Avenue, Box 36055
5           San Francisco, California 94102-3495
            Telephone: (415) 436-6488
6           FAX: (415) 436-6748
            kelsey.helland@usdoj.gov
7
     Attorneys for Respondents
8
                        UNITED STATES DISTRICT COURT
9
                     NORTHERN DISTRICT OF CALIFORNIA
10
                          SAN FRANCISCO DIVISION
11

12   JORGE RIVERA LARIOS,                    )   Case No. 3:25-cv-08799-AMO
                                             )
13          Petitioner,                      )   **RESPONDENTS' RESPONSE TO ORDER**
                                             )   **SHOW CAUSE; OPPOSITION TO MOTION**
14     v.                                    )   **FOR PRELIMINARY INJUNCTION; AND**
                                             )   **RETURN TO HABEAS PETITION**
15   SERGIO ALBARRAN, et al.,                )
                                             )
16          Respondents.                     )
                                             )
17                                           )
     _____)
18

19

20

21

22

23

24

25

26

27

28

RESPONDENTS' OPP. TO PI MOT.
3:25-cv-08799-AMO

1

## <u>TABLE OF CONTENTS</u>

2     TABLE OF AUTHORITIES…………………………………………………………………..ii

3     I.      INTRODUCTION ...................................................................................................1

4     II.     FACTUAL BACKGROUND ................................................................................2

5          A.     Petitioner's Unlawful Entry, Removals, and Unlawful Reentries. ...................2

6          B.     Petitioner's Request for Withholding of Removal to Mexico and U Visa. .........3

7          C.     Petitioner's 2025 Arrest and Re-Detention. .....................................................4

8     III.    LEGAL STANDARDS ........................................................................................4

9          A.     Detention of Noncitizens Under 8 U.S.C. § 1231 ............................................4

10         B.     Preliminary Injunctions. ..................................................................................5

11         C.     Habeas Corpus. ...............................................................................................6

12     IV.    ARGUMENT .......................................................................................................7

13          A.     Petitioner's Claims Fail On The Merits. .........................................................7

14              1.     Petitioner's redetention does not violate 8 U.S.C. § 1231. .....................7

15              2.     Petitioner's redetention does not violate due process. ...........................7

16                  (i)     Petitioner's history and status reduce his liberty interest............................9

17                  (ii)    The risk of erroneous deprivation is minimal. ...........................................10

18                  (iii)   The government has a strong interest in detention pending

19                       removal. ..................................................................................................13

20          B.     Petitioner Fails to Show Irreparable Harm. ...................................................14

         C.     Neither the Balance of Equities Nor Public Interest Favors Petitioner. ..........15

21     V.     CONCLUSION...................................................................................................16

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Abel v. United States*,
   362 U.S. 217 (1960) ........................................................................................................ 8

*Alliance for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ...................................................................................... 12

*Arzate v. Andrews*,
   No. 1:25-cv-00942-KES-SKO, 2025 WL 2230521 (E.D. Cal. Aug. 4, 2025) ............... 10

*Carlson v. Landon*,
   342 U.S. 524 (1952) ................................................................................................. 8, 15

*Demore v. Kim*,
   538 U.S. 510 (2003) ........................................................................................... 8, 13, 15

*Dirks v. Cnty. of Los Angeles*,
   No. 07-cv-2664, 2008 WL 11355528 (C.D. Cal. Dec. 10, 2008) .................................. 13

*Doe v. Becerra*,
   787 F. Supp. 3d 1083 (E.D. Cal. 2025) ......................................................................... 10

*Doe v. Noem*,
   No. 2:25-cv-01103-DAD-AC, 2025 WL 1134977 (E.D. Cal. Apr. 17, 2025) ................. 10

*Drakes Bay Oyster Co. v. Jewell*,
   747 F.3d 1073 (9th Cir. 2014) ...................................................................................... 15

*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. 2015) .......................................................................................... 6

*Gen. Contractors of Cal., Inc. v. Coal for Econ. Equity*,
   950 F.2d 1401 (9th Cir. 1991) ...................................................................................... 15

*Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*,
   739 F.2d 466 (9th Cir. 1984) ........................................................................................ 14

*In re Guerra*,
   24 I. & N. Dec. 37 (BIA 2006) ...................................................................................... 10

*Johnson v. Arteaga-Martinez*,
   596 U.S. 573 (2022) ................................................................................................... 7, 8

*Johnson v. Guzman Chavez*,
 594 U.S. 523 (2021) ................................................................................................. passim

*Lopez v. Brewer*,
 680 F.3d 1068 (9th Cir. 2012) ........................................................................................... 5

*Marin All. For Med. Marijuana v. Holder*,
 866 F. Supp. 2d 1142 (N.D. Cal. 2011) .......................................................................... 15

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
 571 F.3d 873 (9th Cir. 2009) ............................................................................................. 6

*Mathews v. Diaz*,
 426 U.S. 67 (1976) .............................................................................................................. 8

*Mathews v. Eldridge*,
 424 U.S. 319 (1976) ............................................................................................................ 8

*Mendez v. ICE*,
 No. 23-cv-00829-TLT, 2023 WL 2604585 (N.D. Cal. Mar. 15, 2023) ............................ 6

*Meneses v. Jennings*,
 No. 21-cv-07193-JD, 2021 WL 4804293 (N.D. Cal. Oct. 14, 2021) .............................. 15

*Moran v. DHS*,
 No. 20-cv-00696-DOC, 2020 WL 6083445 (C.D. Cal. Aug. 21, 2020) .......................... 12

*Morrissey v. Brewer*,
 408 U.S. 471 (1972) ............................................................................................................ 9

*Nken v. Holder*,
 556 U.S. 418 (2009) .......................................................................................................... 15

*Noem v. Abrego Garcia*,
 145 S. Ct. 1017 (2025) ...................................................................................................... 11

*Panosyan v. Mayorkas*,
 854 F. App'x 787 (9th Cir. 2021) ................................................................................ 10, 12

*Preminger v. Principi*,
 422 F.3d 815 (9th Cir. 2005) ........................................................................................... 16

*Rauda v. Jennings*,
 55 F.4th 773 (9th Cir. 2022) .............................................................................................. 6

*Reno v. Flores*,
 507 U.S. 292 (1993) ...................................................................................................... 8, 15

*Rodriguez Diaz v. Garland*,
  53 F.4th 1189 (9th Cir. 2022) ........................................................................ passim

*Roe v. Oddo*,
  No. 3:25-cv-128, 2025 WL 1892445 (W.D. Pa. July 9, 2025) ................................ 12

*Senate of Cal. v. Mosbacher*,
  968 F.2d 974 (9th Cir. 1992) ................................................................................. 6

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
  739 F.2d 1415 (9th Cir. 1984) ............................................................................... 5

*Standlee v. Rhay*,
  557 F.2d 1303 (9th Cir. 1977) ............................................................................. 13

*Stanley v. Univ. of S. Cal.*,
  13 F.3d 1313 (9th Cir. 1994) ................................................................................. 6

*Stormans, Inc. v. Selecky*,
  586 F.3d 1109 (9th Cir. 2009) ............................................................................. 15

*Thomas v. Zachry*,
  No. 3:17-cv-0219-LRH, 2017 WL 2174946 (D. Nev. May 17, 2017) ....................... 6

*Uc Encarnacion v. Kaiser*,
  No. 22-cv-04369-CRB, 2022 WL 9496434 (N.D. Cal. Oct. 14, 2022) ............ 9, 11, 14

*United States v. Cisneros*,
  No.19-cr-00280-RS-5, 2021 WL 5908407 (N.D. Cal. Dec. 14, 2021) ............... 10, 12

*United States v. Green*,
  12 F.4th 970 (9th Cir. 2021) ............................................................................... 13

*United States v. Hulen*,
  879 F.3d 1015 (9th Cir. 2018) ............................................................................. 13

*Weinberger v. Romero-Barcelo*,
  456 U.S. 305 (1982) ........................................................................................... 16

*Winter v. NRDC*,
  555 U.S. 7 (2008) ................................................................................................. 5

*Wong Wing v. United States*,
  163 U.S. 228 (1896) ............................................................................................. 8

*Zadvydas v. Davis*,
  533 U.S. 678 (2001) ................................................................................... 5, 8, 11

**Statutes**

8 U.S.C. § 1182 ............................................................................................................... 5
8 U.S.C. § 1231 ....................................................................................................... passim
8 U.S.C. § 1252 ............................................................................................................... 6
28 U.S.C. § 2241 ............................................................................................................. 6
28 U.S.C. § 2243 ............................................................................................................. 2

**Rules**

Federal Rule of Civil Procedure 65 ................................................................................ 6

**Regulations**

8 C.F.R. § 241.4 ..................................................................................................... passim
8 C.F.R. § 241.13 ................................................................................................ 4, 5, 11

## I.    INTRODUCTION

Petitioner Jorge Rivera Larios is subject to a final order of removal from the United States because he has unlawfully entered the United States at least six times.  In 2021, Petitioner requested what is called "withholding-only" relief, which does not challenge the order of removal, but rather requests a determination that he cannot be removed to a specific country.  Petitioner was released from ICE custody in the meantime, subject to certain conditions, including that he not commit any crimes. However, in August of this year, Petitioner was arrested by local law enforcement for a felony domestic violence offense of causing bodily harm to a spouse or cohabitant.  ICE reasonably determined that Petitioner's arrest reflected a violation of his conditions of release, and therefore revoked that release and returned him to custody.

Petitioner brought this habeas petition seeking his release from custody and the establishment of additional procedural requirements before he could be taken into custody again.  The Court previously granted his request for a temporary restraining order, asserting in a single sentence, without citation to pertinent authority, that Petitioner's arrest was not sufficient by itself for ICE to determine that Petitioner had violated the conditions of his release and return him to custody.

The Court's analysis in the TRO was mistaken, and Petitioner's claims are without merit.  Other courts have upheld ICE's authority to determine that an individual's "mere arrest" for a criminal offense may support detaining that individual pending removal.  Petitioner has not even represented to the Court that he did not commit the crime for which he was arrested; he merely notes that charges have not been filed against him.  But the Court should not second-guess ICE's reasonable determination that Petitioner's arrest for harming another person in his house is in fact evidence that he committed a crime, and a sufficient basis to return Petitioner to immigration custody.

Indeed, the agency's determination here fits squarely within the comprehensive detention framework authorized by Congress, under which the Department of Homeland Security has promulgated detailed regulations, all of which the Supreme Court has consistently upheld.  DHS has well-established authority to revoke the release of an individual who has violated the conditions of their release, as Petitioner has here.  And granting Petitioner's requested relief would judicially graft on an additional layer of detention review that Congress, the Executive Branch, and the Supreme Court have never held

is required in these circumstances.

The Court should deny Petitioner's motion for a preliminary injunction and deny the habeas petition.[1]

## II.    FACTUAL BACKGROUND

### A.    Petitioner's Unlawful Entry, Removals, and Unlawful Reentries.

Petitioner is a native of Mexico. *See* Pet. ¶¶ 12, 16. ICE records indicate that Petitioner first entered the United States unlawfully in 2005, and was removed pursuant to an expedited removal order. *See* Declaration of Deportation Officer Jennifer Ramirez ("Ramirez Decl."), ¶ 7 & Ex. 3. He reentered unlawfully again in 2005 and 2007, and was again removed under expedited removal orders both times. *See id.* ¶¶ 8-9. He again reentered unlawfully in 2014 and 2016, and on both occasions the government reinstated his prior order of removal and removed him to Mexico. *See id.* ¶¶ 10-11.

Petitioner reentered the United States unlawfully again, for what was at least the sixth time. *See* Pet. ¶ 16. This time, ICE did not encounter Petitioner until 2021. *See id.* In the meantime, Petitioner was arrested "multiple times." *Id.*

First, on June 18, 2016, the Lake Country Sheriff's Department arrested Petitioner on misdemeanor charges for driving under the influence of alcohol, driving under the influence of drugs, and driving without a license. *See* Ramirez Decl. ¶ 12 & Ex. 6.

Next, on April 26, 2018, the Lake County Sheriff's Department arrested Petitioner on a felony charge of carrying a concealed dirk or dagger under section 21310 of the California Penal Code and on a misdemeanor charge for driving without a license. *See id.* ¶ 13 & Ex. 6.

Less than a year later, on April 13, 2019, the Lake Country Sheriff's Department arrested Petitioner on a felony charge of possession of a controlled substance for sale under section 11378 of the Health and Safety Code, a felony charge of transporting a controlled substance under section 11379 of the Health and Safety Code, and a misdemeanor charge of obstructing a public officer under section 148(A)(1) of the California Penal Code. *See id.* ¶ 14. & Ex. 6.

On October 28, 2019, Petitioner was convicted in Lake County Superior Court of felony

---

[1] This Response serves as Respondents' return to the habeas petition. *See* 28 U.S.C. § 2243.

1    transport of a controlled substance under section 11379(A) of the Health and Safety Code.  *See id.* ¶ 15

2    & Ex. 6.  He was sentenced to participation in a work program, to pay a fine, and three years of

3    probation, a condition of which included a firearm restriction.  *See id.*

4          Then, on January 25, 2021, the Lake County Sheriff's Department arrested Petitioner on felony

5    charges of felon in possession of a firearm under section 29800(A)(1) of the California Penal Code and

6    of felon in possession of ammunition under section 30305(A)(1) of the California Penal Code and on

7    misdemeanor charges of possession of a controlled substance under section 11377(A) of the Health and

8    Safety Code and possession of a switchblade in a vehicle under section 21510(A) of the California Penal

9    Code.  *See id.* ¶ 16 & Ex. 6.

10          And on July 31, 2021, the Lake County Sheriff's Department arrested Petitioner on a

11    misdemeanor charge of use or being under the influence of a controlled substance under section

12    11550(A) of the Health and Safety Code.  *See id.* ¶ 17 & Ex. 6.

13          ICE arrested Petitioner in September 2021.  *See id.* ¶ 18.  In January 2022, Petitioner was

14    released on an Order of Supervision.  *See id.* ¶ 20 & Ex. 2.  One of the conditions of that order was that

15    Petitioner not commit any crimes.  *Ibid.*

16        **B.**    **Petitioner's Request for Withholding of Removal to Mexico and U Visa.**

17          In October 2021, Petitioner claimed a fear of torture if he were returned to Mexico.  *See* Pet. 17.[2]

18    An asylum officer determined that he had a reasonable fear and referred his claim to the immigration

19    court.  *See id.*

20          In 2023, Petitioner applied for a non-immigrant U visa, allegedly based on his suffering a

21    criminal attack in the United States and subsequently cooperating with law enforcement.  *See id.* ¶ 20.

22    DHS records indicate that USCIS has determined that Petitioner's visa application is not bona fide, and

23    therefore the application should be denied (although it remains pending at this time).  *See* Ramirez Decl.

24    Ex. 4.  Moreover, Petitioner's pending U visa application is not itself a basis to remain in the United

25    States; his application could be adjudicated even after he were removed from the United States.

26

27         [2] Due to his history of unlawful entry, Petitioner was (and is) not eligible for asylum in the

28    United States.  Rather, his "withholding-only" claim only would only prevent his removal to a specific
country—here, Mexico.  *See Johnson v. Guzman Chavez*, 594 U.S. 523, 526 (2021).

1    In January 2025, Petitioner's withholding-only proceedings were administratively closed due to

2    his pending visa application.  *See id.*  However, since that time, the Immigration Judge granted the

3    government's motion to recalendar Petitioner's case, such that his withholding-only proceedings have

4    been reactivated.

5           **C.**      **Petitioner's 2025 Arrest and Re-Detention.**

6           On August 17, 2025, local law enforcement officers arrested Petitioner for felony infliction of

7    corporal injury to a spouse or cohabitant, a domestic violence offense.  *See* Pet. ¶¶ 5, 22, 60; Ramirez

8    Decl. ¶ 23 & Ex. 6.  Local authorities released him and have not yet filed any criminal charges.

9           On October 14, 2025, Petitioner attended a check-in appointment at the ICE Field Office in San

10   Francisco.  *See* Pet. ¶ 22.  The ICE Field Office Director determined that Petitioner's August 2025

11   criminal arrest evidenced a violation his conditions of supervision, and placed Petitioner in detention.

12   *See* Ramirez Decl. Ex. 4; *see also* Pet.¶ 22.

13          That same day, Petitioner was provided with an Informal Interview Upon Revocation of Order of

14   Supervision Under 8 C.F.R. § 241.4(l) and 8 C.F.R. § 241.13(i).  *See* Ramirez Decl. Ex. 5.  Petitioner

15   stated that, although he was arrested in August 2025, he was not convicted.  *See id.*  ICE did not release

16   Petitioner following the interview.  Under the Notice of Revocation of Release, ICE would have

17   reviewed Petitioner's custody again in approximately three months.  *See id.* Ex. 4.

18          Petitioner filed this habeas petition on October 14, and moved for a temporary restraining order

19   on October 15.  *See* Dkt. Nos. 1, 5.  The government filed an opposition approximately one hour after

20   Petitioner filed his motion.  *See* Dkt. No. 6.  The Court granted Petitioner's request for a temporary

21   restraining order as modified just after midnight on October 16, and ordered Petitioner's release.  *See*

22   Dkt. No. 7.  The government confirmed that Petitioner was released at approximately 7:00 a.m. that

23   morning.  *See* Dkt. No. 9.

24   **III.**    **LEGAL STANDARDS**

25          **A.**      **Detention of Noncitizens Under 8 U.S.C. § 1231.**

26          The detention of an alien following reinstatement of a prior order of removal is governed by 8

27   U.S.C. § 1231(a).  *See Guzman Chavez*, 594 U.S. at 526.  Section 1231(a)(2) provides that the

28   government "shall detain" the alien for a 90-day "removal period," the commencement of which can be

1  triggered by various events in the alien's proceedings. *See* 8 U.S.C. § 1231(a)(1)(B).

2  "If the alien does not leave or is not removed within the removal period, the alien, pending

3  removal, shall be subject to supervision under regulations prescribed by the Attorney General." *Id.*

4  § 1231(a)(3). The governing regulations provide that DHS may release an alien under certain

5  conditions, and may revoke the alien's release when those conditions are violated. *See generally* 8

6  C.F.R. § 241.4.

7  Moreover, an alien "may be detained beyond the [90-day] removal period" if, among other

8  things, he is "inadmissible" (for example, because he reentered the country unlawfully, *see* 8 U.S.C.

9  § 1182(a)(9)(C)) or if the government determines that he is "a risk to the community or unlikely to

10  comply with the order of removal." *Id.* § 1231(a)(6). And, "if released," such an alien "shall be subject

11  to the terms of supervision in paragraph (3)." *Id.*

12  Section 1231(a) does not provide for a bond hearing for the noncitizen to challenge their

13  detention. *See Guzman Chavez*, 594 U.S. at 526. Rather, noncitizens subject to final orders of removal

14  can request review of their detention after the expiration of the 90-day removal period "where the alien

15  has provided good reason to believe there is no significant likelihood of removal to the country to which

16  he or she was ordered removed, or to a third country, in the reasonably foreseeable future." 8 C.F.R.

17  § 241.13(a). Moreover, the Supreme Court has recognized that detention of up to six months to

18  effectuate the removal of a noncitizen is "presumptively reasonable" and constitutionally valid, though

19  longer detention may require additional justification. *See Zadvydas v. Davis*, 533 U.S. 678, 689 (2001).

20  **B.    Preliminary Injunctions.**

21  A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted

22  unless the movant, by a clear showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d

23  1068, 1072 (9th Cir. 2012). To obtain relief, the moving party must show that "he is likely to succeed

24  on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

25  balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC*,

26  555 U.S. 7, 20 (2008).

27  The purpose of a preliminary injunction is to preserve the status quo pending final judgment

28  rather than to obtain a preliminary adjudication on the merits. *Sierra On-Line, Inc. v. Phoenix Software,*

1  *Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).  "A preliminary injunction can take two forms."  *Marlyn*

2  *Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009).  "A prohibitory

3  injunction prohibits a party from taking action and 'preserves the status quo pending a determination of

4  the action on the merits.'"  *Id.* (internal quotation omitted).  "A mandatory injunction orders a

5  responsible party to take action," as Petitioners seek here.  *Id.* at 879 (internal quotation omitted).  "A

6  mandatory injunction goes well beyond simply maintaining the status quo pendente lite and is

7  particularly disfavored."  *Ibid.*  "In general, mandatory injunctions are not granted unless extreme or

8  very serious damage will result and are not issued in doubtful cases."  *Ibid.*  Where plaintiffs seek a

9  mandatory injunction, "courts should be extremely cautious."  *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313,

10  1319 (9th Cir. 1994) (internal quotation omitted).  The moving party "must establish that the law and

11  facts *clearly favor* [their] position, not simply that [they are] likely to succeed." *Garcia v. Google, Inc.*,

12  786 F.3d 733, 740 (9th Cir. 2015) (emphasis original).  Courts have also denied TRO motions where the

13  relief the plaintiffs seek is the same relief sought on the merits, because "[j]udgment on the merits in the

14  guise of preliminary relief is a highly inappropriate result."  *Mendez v. ICE*, No. 23-cv-00829-TLT,

15  2023 WL 2604585, at *3 (N.D. Cal. Mar. 15, 2023) (quoting *Senate of Cal. v. Mosbacher*, 968 F.2d 974,

16  978 (9th Cir. 1992)).

17       Under Federal Rule of Civil Procedure 65(a)(2), the Court may consolidate consideration of a

18  motion for a preliminary injunction with the consideration of the merits of an action.  "Consolidation is

19  generally appropriate when it would (1) result in an expedited resolution of the case; (2) conserve

20  judicial resources and avoid duplicative proceedings; (3) involves only legal issues based on uncontested

21  evidence and public records; and (4) would not be prejudicial to any of the parties."  *Thomas v. Zachry*,

22  No. 3:17-cv-0219-LRH, 2017 WL 2174946, at *1 (D. Nev. May 17, 2017) (citing cases).

23       **C.    Habeas Corpus.**

24       Federal district courts may grant writs of habeas corpus if the petitioner is "in custody in

25  violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  In

26  immigration cases, the federal courts' habeas jurisdiction is limited by 8 U.S.C. § 1252(a)(2)(B), which

27  provides that "no court shall have jurisdiction to review" "decision[s]" for which the statute grants

28  "discretion" to the Attorney General.  *See also id.* § 1252(g); *Rauda v. Jennings*, 55 F.4th 773, 776-77

1   (9th Cir. 2022) (holding district courts lack jurisdiction to enjoin the execution of removal orders).

2   **IV.    ARGUMENT**

3       **A.    Petitioner's Claims Fail On The Merits.**

4       Petitioner's August 2025 arrest for domestic violence violated the conditions of his Order of

5   Supervision.  ICE therefore properly redetained Petitioner under the governing statutes and regulations.

6   The Supreme Court has squarely held that aliens pursuing withholding-only relief are not entitled to a

7   bond hearing.  *See Guzman Chavez*, 594 U.S. at 531.  The Constitution does not require any extra

8   process in Petitioner's case.  Petitioner's claims therefore fail on the merits.

9       **1.    Petitioner's redetention does not violate 8 U.S.C. § 1231.**

10      Petitioner first claims that his redetention outside of the 90-day removal period violates 8 U.S.C.

11  § 1231(a)(2) and (6).  *See* Pet. ¶¶ 31-34.  But Petitioner simply ignores that Congress authorized DHS to

12  promulgate regulations for the ongoing supervision of aliens who are not removed within 90 days.  *See* 8

13  U.S.C. § 1231(a)(3).  Those regulations specifically provide that DHS may redetain an alien beyond the

14  removal period in various circumstances, including if DHS determines that the alien has violated his

15  conditions of supervision.  *See* 8 C.F.R. § 241.4(l).

16      That is what happened here.  Petitioner's 2022 Order of Supervision included a condition that

17  Petitioner not commit any crimes.  But in August 2025, Petitioner was arrested for a domestic violence

18  offense.  DHS reasonably determined that Petitioner had violated his conditions of release.  His

19  redetention was therefore authorized by statute and regulation.

20      Petitioner's argument to the contrary would lead to the absurd result that Congress failed to

21  provide DHS with the authority to redetain aliens who violated the conditions of their release.  Petitioner

22  supplies no reason to think that Congress intended such a result.  Nor could he, since Congress plainly

23  did authorize detention in these circumstances.  *See* 8 U.S.C. § 1231(a)(3), (6); 8 C.F.R. § 241.4(l).

24      **2.    Petitioner's redetention does not violate due process.**

25      The Supreme Court has squarely held that noncitizens in Petitioner's procedural posture—those

26  subject to reinstated removal orders pending an immigration judge's withholding of removal

27  determination—are subject to detention under § 1231 and "are not entitled to a bond hearing while they

28  pursue withholding of removal."  *Guzman Chavez*, 594 U.S. at 526; *see also, e.g.*, *Johnson v. Arteaga-*

1  *Martinez*, 596 U.S. 573, 581 (2022) (rejecting argument that § 1231(a)(6) "require[s] an initial bond

2  hearing" "at the outset of detention").  And that textual holding is reinforced by the Supreme Court's

3  prior determinations that, so long as it is not prolonged, detention to effectuate removal is generally

4  constitutionally permissible.

5          Indeed, the Supreme Court has repeatedly "recognized detention during deportation proceedings

6  as a constitutionally valid aspect of the deportation process."  *Demore v. Kim*, 538 U.S. 510, 523 (2003);

7  *see also, e.g.*, *Reno v. Flores*, 507 U.S. 292, 309 (1993) (rejecting procedural due process claim that "the

8  INS procedures are faulty because they do not provide for automatic review by an immigration judge of

9  the initial deportability and custody determinations"); *Abel v. United States*, 362 U.S. 217, 233-34

10  (1960) (noting the "impressive historical evidence of acceptance of the validity of statutes providing for

11  administrative deportation arrest from almost the beginning of the Nation"); *Carlson v. Landon*, 342

12  U.S. 524, 538 (1952) ("Detention is necessarily a part of this deportation procedure."); *Wong Wing v.

13  United States*, 163 U.S. 228, 235 (1896) ("We think it clear that detention or temporary confinement, as

14  part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens,

15  would be valid.").  As the Supreme Court has explained, "[i]n the exercise of its broad power over

16  naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to

17  citizens."  *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976).  Petitioner's due process claim therefore fails.

18  *See Demore*, 538 U.S. at 531; *see also Zadvydas*, 533 U.S. at 701 (recognizing a "presumptively

19  reasonable period of detention" of up to six months to effectuate a final removal order).

20          True, noncitizens held under § 1231 may be able to obtain review of their detention after six

21  months, including to avoid the constitutional problems with "prolonged" detention.  *See Zadvydas*, 533

22  U.S. at 699 ("[O]nce removal is no longer reasonably foreseeable, continued detention is no longer

23  authorized by [§ 1231(a)]."); *but see Arteaga-Martinez*, 596 U.S. at 580-82 (rejecting claim that

24  statutory text of § 1231(a)(6) required periodic bond hearings every six months).  But Petitioner does not

25  and cannot argue that his detention has become prolonged, or that his removal is not reasonably

26  foreseeable at this time.  *See generally* Pet.

27          Petitioner nevertheless asserts that, under *Mathews v. Eldridge*, 424 U.S. 319 (1976), he is

28  entitled to a bond hearing before the government can revoke his release and take him into custody again.

1  As an initial matter, the government does not concede that *Mathews* applies here, given "the unique

2  constitutional treatment of detained aliens."  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir.

3  2022).  Nevertheless, if the Court were to apply *Mathews*, it would consider three factors:  the plaintiff's

4  private interest, the risk of erroneous deprivation without additional procedures, and the government's

5  interest.  These factors weigh against the additional process requested here.

6  <center>**(i)    Petitioner's history and status reduce his liberty interest.**</center>

7  First, Petitioner's liberty interest is reduced by the fact that he is a noncitizen subject to a final

8  order of removal who violated the conditions of his release.  *See Uc Encarnacion v. Kaiser*, No. 22-cv-

9  04369-CRB, 2022 WL 9496434, at *3 (N.D. Cal. Oct. 14, 2022) (holding released noncitizen had a

10  reduced liberty interest where he "always knew that his release was subject to appellate review"); *see*

11  *also Rodriguez Diaz* 53 F.4th at 1206-08.

12  Indeed, that is especially true in light of Petitioner's particular circumstances here.  Petitioner has

13  unlawfully entered the country at least six times.  He is subject to an administratively final order of

14  removal.  Although he can seek withholding of his removal to the specific country of Mexico, he cannot

15  challenge the order of removal itself.  *See Guzman Chavez*, 594 U.S. at 531, 535.  And again, he violated

16  the specific conditions of the very order of release on which is liberty was based.  All of these factors

17  reduce Petitioner's liberty interest here.  *See Rodriguez Diaz*, 53 F.4th at 1206-08.

18  Petitioner wrongly argues that his liberty interest is actually heightened here because he was

19  conditionally released in January 2022.  That is mistaken.  Petitioner has never been granted any form of

20  lawful status in the United States; his release was always subject to revocation, including if Petitioner

21  violated the conditions of his release, as he in fact did here.  Petitioner's conditional release does not

22  somehow increase the strength of his liberty interest now.  *See Uc Encarnacion*, 2022 WL 9496434, at

23  *3.  This case is also fundamentally unlike cases like *Morrissey v. Brewer*, 408 U.S. 471 (1972) and its

24  progeny, where U.S. citizens were released from custody in other contexts, such as post-sentence parole:

25  "The recognized liberty interests of U.S. citizens and aliens are not coextensive."  *Rodriguez Diaz*, 53

26  F.4th at 1206; *see also Uc Encarnacion*, 2022 WL 9496434, at *3 ("<u>Morrissey</u> involved subsequent

27  revocation of post-release parole for alleged violation of parole conditions, not appellate review of the

28  original decision to parole the petitioner.").

1    Petitioner also argues that recent district-court cases establish that merely being arrested without

2    facing criminal charges does not constitute "changed circumstances" that can justify revoking his

3    release.  *See* Pet. ¶ 60 (citing *Arzate v. Andrews*, No. 1:25-cv-00942-KES-SKO, 2025 WL 2230521, at

4    *5 (E.D. Cal. Aug. 4, 2025); *Doe v. Noem*, No. 2:25-cv-01103-DAD-AC, 2025 WL 1134977, at *8

5    (E.D. Cal. Apr. 17, 2025); and *Doe v. Becerra*, 787 F. Supp. 3d 1083 (E.D. Cal. 2025)).  But *Arzate* did

6    not involve a violation of the conditions or release; it involved a misdemeanor arrest, not felony

7    domestic violence; the arrest at issue was more than a year old, whereas here Petitioner was arrested less

8    than two months ago; and most importantly, *Arzate* did not discuss 8 C.F.R. § 241.4 whatsoever, much

9    less explain why that authority would not apply when one of the conditions for release was that the alien

10   not be arrested again.  *See* 2025 WL 2230521, at *2-4 (noting that the petitioner had "complied with his

11   release conditions").  Similarly, neither *Doe v. Noem* nor *Doe v. Becerra* involved violent felonies, and

12   neither discussed the revocation process under § 241.4.  *See generally* 2025 WL 1134977; 787 F. Supp.

13   3d 1083.  Petitioner cannot find support in these decisions that don't even mention the dispositive issue

14   in this case.

15       By contrast, although the government need not expressly show "changed circumstances" here,

16   other courts have recognized that a criminal arrest can so qualify and therefore support revoking a

17   release—even if charges were never filed.  *See, e.g.*, *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th

18   Cir. 2021) (noting that "reinvolvement with the criminal justice system" can qualify as "changed

19   circumstances"); *United States v. Cisneros*, No. 19-cr-00280-RS-5, 2021 WL 5908407, at *4 (N.D. Cal.

20   Dec. 14, 2021) ("An arrest can be considered in determining whether an immigrant should be

21   detained—not only convictions, and not only arrests for crimes of moral turpitude.") (citing *In re

22   Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).

23       The government recognizes that any form of detention will implicate an individual's liberty

24   interests, and that Petitioner, like virtually everyone subject to detention, has personal reasons for

25   wanting to remain out of custody.  But those reasons do not change the fact that Petitioner's status and

26   his history in immigration proceedings reduce his liberty interest here.

27           **(ii)    The risk of erroneous deprivation is minimal.**

28       Second, the risk of erroneous deprivation of Petitioner's liberty here is minimal.  *See Rodriguez*

1    *Diaz*, 53 F.4th at 1209; *Uc Encarnacion*, 2022 WL 9496434, at *4.  There is no dispute that § 1231

2    authorizes detention to effectuate an individual's removal.  *See, e.g.*, *Guzman Chavez*, 594 U.S. at 526;

3    *see also Zadvydas*, 533 U.S. at 701.  The Supreme Court has long upheld the legality of such detentions.

4    Petitioner has made no argument that § 1231 does not apply here.  *See generally* Pet.  And "existing

5    agency procedures sufficiently protected [Petitioner's] liberty interest and mitigated the risk of

6    erroneous deprivation."  *Rodriguez Diaz*, 53 F.4th at 1209; *see also* 8 C.F.R. §§ 241.13(d)(1) & (j).

7    Indeed, the Notice of Revocation of Release provided that Petitioner's detention would be reviewed

8    again in approximately three months.  *See* Ramirez Decl. Ex. 4.

9         Petitioner ignores that Justice Sotomayor, in her Statement Respecting the Disposition of the

10   Application in *Noem v. Abrego Garcia*, specifically identified 8 C.F.R. § 241.4(l) as part of the

11   "[f]ederal law governing detention and removal of immigration" that continues to be binding on ICE.

12   *Abrego Garcia*, 145 S. Ct. 1017, 1019 (2025) (Statement of Sotomayor, J.).  Describing these

13   requirements, Justice Sotomayor wrote that "in order to revoke conditional release, the Government

14   must provide adequate notice and 'promptly' arrange an 'initial informal interview . . . to afford the alien

15   an opportunity to respond to the reasons for the revocation stated in the notification."  *Id.*  And that is

16   precisely what happened here.  *See* Ramirez Decl. Exs. 4, 5.

17        But significantly, these procedures do not require any pre-revocation hearing.  And logically so:

18   detention in these circumstances is a resumption of post-removal-period detention under § 1231(a),

19   which is constitutionally permitted without a pre-detention hearing.  For this Court to find in favor of

20   Petitioner on the merits, it would need to conclude that the procedural protections which Petitioner

21   received under 8 C.F.R. § 241.4(l) are constitutionally insufficient—essentially a finding that the

22   regulation is facially unconstitutional.  Petitioner has certainly not established as much here.

23   Respondents are aware of no case, in this District or elsewhere, so holding.  And Justice Sotomayor's

24   statement in *Abrego Garcia* signals just the opposite: her citation of 8 C.F.R. § 241.4(l) implies *approval*

25   of these procedural protections.  Notably missing from her description of the regulation was any

26   suggestion that these procedures are insufficient or that an extra-regulatory pre-revocation hearing

27   before an immigration judge would be constitutionally required.[3]

28
_____
     [3] Petitioner's request for a bond hearing at which the burden is reversed and heightened to the

Other courts have similarly held that the revocation of release under § 241.4(l) does not violate due process. *See, e.g.*, *Roe v. Oddo*, No. 3:25-cv-128, 2025 WL 1892445, at *8 (W.D. Pa. July 9, 2025) ("[C]ompliance with [8 U.S.C. § 1231 and 8 C.F.R. § 241.4] satisfies the requirements of procedural due process"); *Moran v. DHS*, No. 20-cv-00696-DOC, 2020 WL 6083445, at *9 (C.D. Cal. Aug. 21, 2020) (dismissing claim that § 241.4(l) violated procedural due process).[4]

Nevertheless, in granting the TRO, the Court wrote that, "[a]t minimum, Petitioner here demonstrates 'serious questions on the merits' weighing in favor of injunctive relief because, while Respondents' stated justification for redetention of Petitioner under Title 8 U.S.C. § 1231(a) was Petitioner's alleged commission of a crime, that rationale falters in light of a mere arrest." Dkt. No. 7 at 3-4 (citing *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). While the Court may have cited *Alliance for the Wild Rockies* for the "serious questions on the merits" principle, that case was not an immigration case, and the Court cited no other authority for the proposition that a "mere arrest" cannot support ICE's determination that an alien has committed a crime on supervised release. To the contrary, as discussed above, Chief Judge Seeborg of this District has recognized that "[a]n arrest can be considered in determining whether an immigrant should be detained—not only convictions, and not only arrests for crimes of moral turpitude." *Cisneros*, 2021 WL 5908407, at *4. Similarly, the Ninth Circuit has recognized that "reinvolvement with the criminal justice system"—such as Petitioner's arrest for a domestic violence offense—can qualify as "changed circumstances" supporting re-detention. *See Panosyan*, 854 F. App'x at 788.

That makes sense, especially considering that, in the criminal context, federal courts routinely revoke supervised release for violations of the release conditions based on a preponderance of the evidence, even when no formal criminal charges are ever filed for such violations. Indeed, revocation decisions are reviewed for "abuse of discretion," where the reviewing court asks whether, "viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the

---

"clear and convincing" standard has been rejected by the Ninth Circuit. *See Rodriguez Diaz*, 53 F.4th at 1210-12.

[4] Petitioner previously argued without evidence that the government failed to comply with the procedural requirements of § 241.4(l). But the record plainly shows that the local Field Office Director made the revocation decision, and Petitioner was provided with an informal interview the same day. *See* Ramirez Decl. Exs. 4, 5. All of this complied with the regulation. *See* 8 C.F.R. § 241.4(l)(1)-(2).

1   essential elements of a violation by a preponderance of the evidence." *United States v. Green*, 12 F.4th

2   970, 973 (9th Cir. 2021) (internal quotation marks omitted). The Ninth Circuit has "repeatedly

3   recognized that revocation proceedings are not 'criminal cases' that would confer various rights due to

4   defendants in criminal proceedings," *United States v. Hulen*, 879 F.3d 1015, 1019 (9th Cir. 2018),

5   including upholding a parole board's decision finding a petitioner guilty of a parole violation, even

6   where the individual had been *acquitted* of the same charges in a criminal trial, *Standlee v. Rhay*, 557

7   F.2d 1303, 1305-07 (9th Cir. 1977) ("The hearing officer independently weighed the evidence and

8   concluded on a preponderance of the evidence that appellee was guilty of the six parole violations.").

9    In short, the Constitution does not require that a released immigration detainee actually be

10  convicted, or even charged, with a criminal offense for a government official to reasonably determine

11  that he has "committed a crime" in violation of his conditions of release. Here, Petitioner was arrested

12  for the offense of causing bodily harm to a spouse or cohabitant. *See* Ramirez Decl. Ex. 6. Still to this

13  day, Petitioner has not put forward any affirmative evidence that he *did not* commit that offense; both in

14  his informal ICE interview and to this Court, his only response is that he was not charged with or

15  convicted of that offense. *See* Ramirez Decl. Ex. 5; *see also* Pet. ¶ 60. But "prosecutors decline cases

16  on numerous grounds having nothing to do with the merits of the case." *Dirks v. Cnty. of Los Angeles*,

17  No. 07-cv-2664, 2008 WL 11355528, at *1 (C.D. Cal. Dec. 10, 2008). Faced with the evidence of

18  Petitioner's arrest for a domestic violence offense, and no evidence that Petitioner did not commit such

19  an offense, ICE reasonably determined that Petitioner violated the conditions of his release. The

20  Constitution does not require anything further before ICE can revoke its previous decision to release

21  Petitioner on supervision.

22     **(iii) The government has a strong interest in detention pending removal.**

23   Turning to the third *Mathews* factor, the Ninth Circuit has held that "the government clearly has

24  a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law.'"

25  *Rodriguez Diaz*, 53 F.4th at 1208 (quoting *Demore*, 538 U.S. at 518). And the Supreme Court has

26  recognized that "aliens who reentered the country illegally after removal have demonstrated a

27  willingness to violate the terms of a removal order, and they therefore may be less likely to comply with

28  the reinstated order." *Guzman Chavez*, 594 U.S. at 544; *see also Rodriguez Diaz*, 53 F.4th at 1208-09 &

1  n.8 (noting that "[t]he risk of a detainee absconding also inevitably escalates as the time for removal

2  becomes more imminent").

3        All the more so here.  Petitioner has a lengthy criminal history, consisting of multiple drug and

4  weapons offenses, including an arrest for domestic violence just two months ago.  The government has a

5  strong interest in protecting the community from Petitioner until he can be removed from the country for

6  the sixth time.

7        Moreover, Petitioner's request for an additional level of review would impose administrative and

8  resource burdens on the government that would frustrate its ability to take congressionally authorized

9  detention and removal actions.  Congress has determined that the Executive Branch may detain

10  noncitizens ordered removed without providing them a pre-detention bond hearing.  Every extra hearing

11  before an IJ adds further congestion to an already backlogged immigration-court system.  It drains

12  limited Executive Branch resources.  The government has a significant interest in avoiding these extra-

13  regulatory burdens.  *See Uc Encarnacion*, 2022 WL 9496434, at *4-5 (additional bond hearing would

14  "thwart the Congressional design").

15        In short, the three *Mathews* factors weigh decidedly against granting Petitioner the additional,

16  pre-detention hearing he now requests.

17        **B.    Petitioner Fails to Show Irreparable Harm.**

18        In addition to his failure to show a likelihood of success on the merits, Petitioner does not meet

19  his burden of showing he will be irreparably harmed in the absence of a preliminary injunction.

20  Petitioner primarily claims three categories of injury if he is not afforded a hearing before he is arrested

21  again: (1) alleged deprivation of constitutional rights; (2) inadequate medical care; and (3) separation

22  from his family.

23        However, Petitioner's speculative claimed injuries are "too tenuous" to support a preliminary

24  injunction.  *See Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*, 739 F.2d 466, 472 (9th Cir.

25  1984).  Petitioner supplies no evidence to suggest that received inadequate medical care.  Moreover,

26  Petitioner's claimed injuries regarding harm to him and his family arise from possible *detention*, not

27  from the absence of a bond hearing.  He thus offers no explanation for how those claimed injuries would

28  be prevented by an injunction which—even if granted—could still result in his re-detention following

1   notice and a hearing.

2         The injury that Petitioner asserts from his detention is also insufficient because, as discussed

3   above, it is well established that "detention during deportation proceedings [is] a constitutionally valid

4   aspect of the deportation process." *Demore*, 538 U.S. at 523; *see also, e.g.*, *Flores*, 507 U.S. at 306;

5   *Carlson*, 342 U.S. at 538.  And again, even while detained, Petitioner would have the opportunity to

6   seek review of that detention if it extended over time.  Petitioner therefore cannot show that any injury

7   he might suffer from the specific absence of a *pre*-detention hearing is "irreparable."

8         Finally, the alleged infringement of Petitioner's constitutional rights is insufficient when—as

9   here—Petitioner fails to demonstrate "'a sufficient likelihood of success on the merits of [his]

10  constitutional claims to warrant the grant of a preliminary injunction.'"  *Marin All. For Med. Marijuana*

11  *v. Holder*, 866 F. Supp. 2d 1142, 1160 (N.D. Cal. 2011) (quoting *Assoc'd Gen. Contractors of Cal., Inc.*

12  *v. Coal for Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991)); *see also Meneses v. Jennings*, No. 21-

13  cv-07193-JD, 2021 WL 4804293, at *5 (N.D. Cal. Oct. 14, 2021) (denying TRO where petitioner

14  "assume[d] a deprivation to assert the resulting harm").

15        Given his undisputed status as a noncitizen subject to a final order of removal whose detention

16  has not been prolonged, Petitioner cannot establish that lawfully authorized detention would cause him

17  irreparable harm.

18        **C.    Neither the Balance of Equities Nor Public Interest Favors Petitioner.**

19        When the government is a party, the last two factors that Petitioner must establish to obtain a

20  preliminary injunction merge.  *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)

21  (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).  Here, for the same reasons that Petitioner has not

22  shown the *Mathews* factors favor his requested additional process, Petitioner has not shown that a

23  preliminary injunction barring his detention is in the public interest.  To the contrary, the public interest

24  lies squarely in detaining an individual subject to removal in the near term.  *See Rodriguez Diaz*, 53

25  F.4th at 1208-09.  As the Supreme Court has recognized, "[t]here is always a public interest in prompt

26  execution of removal orders."  *Nken*, 556 U.S. at 436.

27        Indeed, Petitioner's motion ignores the public interest in application of immigration laws that the

28  Supreme Court has long upheld.  *See, e.g.*, *Demore*, 538 U.S. at 523; *see also Stormans, Inc. v. Selecky*,

586 F.3d 1109, 1140 (9th Cir. 2009) (holding that the court "should give due weight to the serious consideration of the public interest" in enacted laws).  Petitioner's claimed harm to himself and his family cannot outweigh this public interest in application of the law, particularly since courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (citation omitted).  Recognizing the availability of a preliminary injunction under such circumstances would permit any noncitizen who had been released pursuant to an order of supervision pending removal to petition a federal district court for additional review, circumventing the comprehensive statutory scheme that Congress enacted.

And Petitioner's reliance on his assumed constitutional entitlement to an extra bond hearing does not save his argument.  While it is "always in the public interest to protect constitutional rights," if, as here, the Petitioner has not shown a likelihood of success on the merits of that claim, that public interest does not outweigh the competing public interest in enforcement of existing laws.  *See Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005).  The public and governmental interest in upholding the existing processes and permitting Petitioner to be detained without additional burdensome processes, while allowing Petitioner to then challenge his detention if it becomes prolonged, is significant.

# V.    CONCLUSION

For the foregoing reasons, the Court should deny the motion for a preliminary injunction and deny the habeas petition.

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

Dated: October 21, 2025        By:    */s/ Kelsey J. Helland*
KELSEY J. HELLAND
Assistant United States Attorney
Attorney for Respondents