UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE RIVERA LARIOS,<br><br>Plaintiff,<br><br>v.<br><br>SERGIO ALBARRAN, et al.,<br><br>Defendants. | Case No. 25-cv-08799-AMO<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 5 |

Before the Court is Petitioner Jorge Rivera Larios's Motion for Preliminary Injunction. On October 14, 2025, Rivera Larios filed a Petition for Writ of Habeas Corpus, and on October 15, he filed a Motion for Temporary Restraining Order ("TRO") against San Francisco Field Office Director for U.S. Immigration and Customs Enforcement Sergio Albarran, Secretary of the Department of Homeland Security Kristi Noem, and United States Attorney General Pamela Bondi ("Respondents" or the "Government"). Dkt. Nos. 1, 5. Petitioner asked this Court to (1) order his immediate release from Respondents' custody pending these proceedings, and (2) enjoin Respondents from transferring him out of this District or deporting him during the pendency of the underlying proceedings. *See* Notice of Mot., Dkt. No. 5. On the same day Petitioner filed his motion, Defendants submitted an opposition. Dkt. No. 6. The Court granted Rivera Larios's motion, issued a TRO, and ordered Respondents to show cause why a preliminary injunction should not issue. Dkt. No. 7. Respondents released Rivera Larios pursuant to the Court's order. Dkt. No. 9. Since then, Respondents submitted a brief opposing a preliminary injunction, Dkt. No. 14, and Rivera Larios submitted a reply brief along with further evidence, Dkt. No. 15. The Court held a hearing regarding Petitioner's request for preliminary injunctive relief on October 28, 2025. At the hearing, the Court ordered both parties to submit supplemental

briefs regarding the Government's contention that Title 8 U.S.C. § 1252(a)(2)(B)(ii) strips this Court of jurisdiction to consider some of Petitioner's arguments, which they submitted on October 30, 2025.  *See* Dkt. Nos. 20, 21.  Having read the parties' papers and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, and good cause appearing, the Court hereby **GRANTS** Rivera Larios's motion for a preliminary injunction for the following reasons.

## I. BACKGROUND

Rivera Larios is a native of Mexico.  *See* Dkt. No. 1 ("Pet.") ¶¶ 12, 16.  ICE records indicate that Petitioner first entered the United States unlawfully in 2005 and was removed pursuant to an expedited removal order.  *See* Dkt. No. 6-1, Helland Decl. ¶ 2.  He reentered unlawfully again in 2005 and 2007 and was again removed under expedited removal orders both times.  *See id*.  He again reentered unlawfully in 2014 and 2016, and on both occasions the government reinstated his prior order of removal and removed him to Mexico.  *See id.*

Rivera Larios last entered the United States in 2017 fleeing the Sinaloa Cartel.  Rivera Larios Decl. ¶ 3; *see also* Pet. ¶ 16.  Cartel members beat him, threw him out of a moving vehicle on a highway, and left him for dead.  *Id.*  In October 2021, Petitioner claimed a fear of torture if he were returned to Mexico.  *See* Pet. ¶ 17.  An asylum officer determined that he had a reasonable fear and referred his claim to the immigration court.  *See id.*  Rivera Larios applied for withholding of removal and deferral of removal under the Convention Against Torture ("CAT") in immigration court.  Shugall Decl. ¶¶ 11, 13, 16; Dkt. No. 14 at 3-4.

On September 29, 2021, the Department of Homeland Security ("DHS") detained Petitioner and reinstated his previous order of removal.  Ramirez Decl. ¶ 18, Ex. 3.  On January 28, 2022, DHS released Rivera Larios on an order of supervision.  Ramirez Decl. ¶ 20, Ex. 2; *see also* Helland Decl., Ex. A.  One of the conditions of that order was that Rivera Larios not commit any crimes.  *See* Helland Decl., Ex. A.

Rivera Larios was the victim of two violent crimes in the United States, one in 2018 and another in 2020.  Rivera Larios Decl. ¶ 8.  The 2018 attack is the basis of his application for U-nonimmigrant status, which remains pending with the U.S. Citizenship and Immigration Services

2

("USCIS"). Dkt. No. 5-4 ¶ 12; Shugall Decl. ¶ 10, Ex. C. USCIS received Rivera Larios's application on July 31, 2023, while he was out of custody. Shugall Decl. ¶ 10, Ex. C. Rivera Larios also pursued his application for withholding of removal and deferral of removal under CAT while on the order of supervision. Shugall Decl. ¶¶ 11, 12. In 2023, Rivera Larios applied for a non-immigrant U-visa based on suffering a criminal attack in the United States and subsequently cooperating with law enforcement. *See id.* ¶ 20. In January 2025, Rivera Larios's withholding-only proceedings were administratively closed due to his pending U-visa application. *See id.*

Rivera Larios met his wife, Phylis Rivera Larios, in 2017 and they married in 2022. Rivera Larios Decl. ¶ 4. Rivera Larios's wife has been physically and emotionally abusive to him on and off since approximately November 2020. *Id.* ¶ 7. She struggles with alcoholism and is abusive to Rivera Larios when she drinks. *Id.* Rivera Larios eventually learned during an argument with his wife that she was behind both attacks against him in the United States. *Id.* ¶ 9.

Although Rivera Larios had been advised by a neighbor that calling the police could lead to his arrest rather than hers, Rivera Larios called the Lake County Sheriff's Office in August 2025 on an occasion when his wife was behaving violently toward him. Rivera Larios Decl. ¶ 9. Although Rivera Larios was the one to call for help and did not engage in any harm against his wife, officers detained him. *Id.* ¶ 14. He was released approximately one day later with a Detention Certificate from the Lake County Sheriff's Office showing that he was detained, not arrested, and no charges were being filed. Shugall Decl. ¶ 7, Ex. B. The Detention Certificate identifies Rivera Larios as a detainee and quotes California Penal Code section 849.5, stating, "In any case in which a person is arrested and released and no accusatory pleading is filed charging him with an offense, any record of arrest of the person shall include a record of release. Thereafter, the arrest shall not be deemed an arrest, but a detention only." *Id.* (Dkt. No. 15-1 at 10).

On October 14, 2025, Rivera Larios attended a check-in appointment at the ICE Field Office in San Francisco. *See* Pet. ¶ 22. The ICE Field Office Director determined that Petitioner's August 2025 contact with the Lake County Sheriff's Office evidenced a violation of his conditions of supervision, and placed Petitioner in detention. Shugall Decl. ¶ 15.

1    Rivera Larios filed this habeas petition on October 14 and moved for a TRO on October

2   15.  *See* Dkt. Nos. 1, 5.  Respondents filed an opposition to the motion for temporary restraining

3   order approximately one hour after Petitioner filed his motion.  *See* Dkt. No. 6.  The Court granted

4   Petitioner's request for a TRO as modified just after midnight on October 16 and ordered

5   Petitioner's release.  *See* Dkt. No. 7.  Respondents confirmed that Petitioner was released at

6   approximately 7:00 a.m. that morning.  *See* Dkt. No. 9.

7   **II.   DISCUSSION**

8    Rivera Larios seeks a preliminary injunction to prevent Respondents from re-detaining him

9   absent notice and a pre-deprivation hearing before an Immigration Judge to evaluate whether his

10  re-detention is warranted.  Before reaching the merits of the motion for preliminary injunction, the

11  Court considers Respondents' argument that this Court lacks jurisdiction to review aspects of the

12  habeas petition.

13   **A.   Subject Matter Jurisdiction**

14   Respondents assert that the ICE officer's determination that Rivera Larios violated the

15  terms of his release is unreviewable under Title 8 U.S.C. § 1252(a)(2)(B)(ii).  *See* Dkt. No. 21.

16  The statute provides that federal courts lack jurisdiction to review "any other decision or action of

17  the Attorney General or the Secretary of Homeland Security the authority for which is specified

18  under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland

19  Security."  8 U.S.C. § 1252(a)(2)(B)(ii).  Respondents argue that Congress gave the agency

20  authority over detention of noncitizens subject to final removal orders, directed the agency to

21  promulgate regulations, and therefore, any discretionary determination under 8 C.F.R. § 241.4(l) is

22  unreviewable pursuant to Title 8 U.S.C. § 1252(a)(2)(B)(ii).  Dkt. No. 21.  The Court finds two

23  bases to reject Respondents' argument, which it explains in turn.

24   First, Respondents' argument directly contravenes Supreme Court authority considering

25  judicial review of a discretionary agency decision under a regulation.  *See Kucana v. Holder*, 558

26  U.S. 233, 237 (2010) ("We hold that the key words 'specified under this subchapter' refer to

27  statutory, but not to regulatory, specifications.").  In *Kucana*, the Supreme Court considered

28  federal court jurisdiction to review an agency decision denying a motion to reopen removal

4

proceedings, where the agency's regulation declares that a decision to grant a motion to reopen is within that agency's discretion. *Kucana*, 558 U.S. at 239 (citing 8 C.F.R. § 1003.2(a) (2009)). Considering the same statute that Respondents assert strips the district court of jurisdiction here, Title 8 U.S.C. § 1252(a)(2)(B)(ii), the Court held that federal courts retained authority to review and stated in part, "[i]f Congress wanted the jurisdictional bar to encompass decisions specified as discretionary by regulation along with those made discretionary by statute, moreover, Congress could easily have said so." *Kucana*, 558 U.S. at 248.[1]

As Respondents emphasize here, Congress afforded the Executive Branch the authority to issue regulations regarding release of a noncitizen after the 90-day removal period. 8 U.S.C. § 1231(a)(3). DHS promulgated such regulations at 8 C.F.R. § 241.4, wherein subsection (l) sets forth procedures for the revocation of release. Thus, as in the context raised in *Kucana*, a decision by the administrative agency to exercise discretion under a regulation, pursuant to 8 C.F.R. § 241.4(l), is not a decision "under this title" and is therefore reviewable notwithstanding Title 8 U.S.C. § 1252(a)(2)(B)(ii).

Second, Respondents aver that an ICE decision to revoke release under 8 C.F.R. § 241.4(l) is a pure factual determination that the district court cannot review under Section 1252(a)(2)(B)(ii). *See* Dkt. No. 21 at 3-4. In a relatively recent case, the Ninth Circuit considered what types of inquiries are questions of fact, which are left to agency discretion where congressionally conferred, what types of inquiries are mixed questions of law and fact, which require the application of a statutory standard to a given set of facts, and what types of inquiries

---

[1] The Supreme Court further warned against the Executive's broad assertion of discretionary authority to shield its conduct from judicial review, stating,

> To read § 1252(a)(2)(B)(ii) to apply to matters where discretion is conferred on the Board by regulation, rather than on the Attorney General by statute, would ignore that congressional design. If the Seventh Circuit's construction of § 1252(a)(2)(B)(ii) were to prevail, the Executive would have a free hand to shelter its own decisions from abuse-of-discretion appellate court review simply by issuing a regulation declaring those decisions 'discretionary.' Such an extraordinary delegation of authority cannot be extracted from the statute Congress enacted.

*Kucana*, 558 U.S. at 252.

are pure questions of law. *Martinez v. Clark*, 124 F.4th 775, 782 (9th Cir. 2024). The Ninth Circuit noted that "underlying factual determinations" that remain unreviewable by federal courts include, for example, "credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides." *Id.* at 783 (quoting *Wilkinson v. Garland*, 601 U.S. 209, 225 (2024)). On the other hand, courts may review mixed questions of law and fact such as those involving "[t]he application of a statutory legal standard (like the exceptional and extremely unusual hardship standard) to an established set of facts." *Wilkinson*, 601 U.S. at 212.

Respondents here contend that ICE's determination that Rivera Larios committed a crime and therefore violated the conditions of his release is a "pure factual determination." Dkt. No 21 at 3. Not so. The question of whether Rivera Larios committed a crime and thus violated the conditions of his release is a mixed question of law and fact that requires the application of some standard to a set of facts. This is not a purely factual determination as Respondents aver, as it does not require merely an assessment of accuracy or credibility. Rather, it requires the identification of a standard, here a criminal statute, and its application to a set of facts. The Court finds that whether Rivera Larios committed a crime – and thus violated the terms of his supervised release – presents a mixed question of law and fact, and Section 1252(a)(2)(B)(ii) does not put the question beyond the reach of this Court.

### B.  Preliminary Injunction

#### 1.  Legal Standard

To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief, (3) the balance of equities tips in the favor of the moving party, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Where the government is a party, courts merge the analysis of the final two *Winter* factors, the balance of equities and the public interest. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Courts "explore the relative harms to applicant and respondent, as well as the interests of the public at large." *Barnes*

1  *v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1305 (1991) (internal

2  quotation marks and citation omitted).  The *Winter* factors may be evaluated on a sliding scale,

3  such that preliminary relief may be issued when the moving party demonstrates "that serious

4  questions going to the merits were raised and the balance of hardships tips sharply in the

5  plaintiff's favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011)

6  (citation omitted).  To grant preliminary injunctive relief, a court must find that "a certain

7  threshold showing [has been] made on each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966

8  (9th Cir. 2011) (per curiam).

### 2. Likelihood of Success on the Merits

Rivera Larios brings his habeas petition on two bases: for violation of Title 8 U.S.C. § 1231 and for violation of the due process protections of the Fifth Amendment.  *See* Dkt. No. 1.  The Court takes up the likelihood of success on both claims in turn.

#### a. Violation of Title 8 U.S.C. § 1231

Rivera Larios first claims that his re-detention outside of the 90-day removal period violates Title 8 U.S.C. § 1231(a)(2) and (6).  *See* Pet. ¶¶ 31-34.  The detention of a noncitizen following reinstatement of a prior order of removal is governed by Title 8 U.S.C. § 1231(a).  *See Johnson v. Guzman Chavez*, 594 U.S. 523, 526 (2021).  Section 1231(a)(2) provides that the government "shall detain" the noncitizen for a 90-day "removal period," the commencement of which can be triggered by various events in the noncitizen's proceedings.  *See* 8 U.S.C. § 1231(a)(1)(B).  "If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." *Id.* § 1231(a)(3).  And, "if released," the noncitizen "shall be subject to the terms of supervision in paragraph (3)." *Id.* § 1231(a)(6).  Section 1231(a)(3) allows the Government to promulgate regulations for the supervision of releasees.  The applicable regulations provide that DHS may release a noncitizen under certain conditions and may revoke the noncitizen's release when those conditions are violated.  *See generally* 8 C.F.R. § 241.4.  Unless an individual violates the terms of their supervision following release upon expiration of the 90-day removal period pursuant to Title 8 U.S.C. § 1231(a)(6) and 8 C.F.R. § 241.4(l), there is no

United States District Court
Northern District of California

statutory or regulatory basis for DHS to take someone back into custody. *See also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (identifying risk of flight and danger to the community as the statutory purposes of civil immigration detention).

Respondents assert here that Rivera Larios violated the terms of his release by committing a crime as demonstrated by his arrest by Lake County Sheriff's Office in August 2025. *See* Dkt. No. 14 at 19. Respondents' reasoning can be distilled to this excerpt from their brief: "[f]aced with the evidence of Petitioner's arrest for a domestic violence offense, and no evidence that Petitioner did not commit such an offense, ICE reasonably determined that Petitioner violated the conditions of his release." Dkt. No. 14 at 19. Respondents made this assertion based solely on Rivera Larios's disclosure of his contact with law enforcement during his ICE check-in with Deportation Officer Jennifer Ramirez and in the absence of any corroborating facts. Ramirez Decl., Exs. 4-5. Respondents fail to point to any authority in support of the premise that a releasee's disclosure of an arrest constitutes a factual basis showing commission of a crime.

In their opposition brief and at the hearing, Respondents tried to bolster the basis of ICE's re-detention determination by pointing to the FBI rap sheet detailing Rivera Larios's criminal history for its entry related to the events of August 17, 2025. *See, e.g.*, Dkt. No. 14 at 19. The report itself does not present factual or legal support for the premise that Rivera Larios committed a crime; instead, it identifies a criminal statute, "INFL CRPL INJ: SPOUSE/COHAB/DATE (273.5(A) PC)," and it includes the following comments: "RELEASED/DETENTION ONLY" and "ARREST/DETAINED/CITED." Ramirez Decl., Ex. 6 (Dkt. No. 14-1 at 40). Such imprecise references to law enforcement contact do not constitute factual support that Rivera Larios committed a crime. Even still, Respondents cannot claim to have relied on the FBI report as factual support for re-detaining Rivera Larios on October 14 when the report is dated October 15. *See* Ramirez Decl., Ex. 6. More importantly, Respondents' assertion that Rivera Larios's arrest demonstrated commission of a crime is severely weakened by the evidence submitted by Petitioner – the certificate of Rivera Larios's detention makes clear that he was not arrested and instead merely detained. Shugall Decl., Ex. B.

8

1        Respondents do not identify an applicable standard of review for their determination that Rivera Larios violated the conditions of his release and instead urge without basis that a standard of "reasonableness" applies. *See* Dkt. No. 14 at 13 ("DHS reasonably determined that Petitioner had violated his conditions of release."). As Respondents describe, in revocation hearings in the criminal context, decisions are made based on a weighing of the evidence, involve application of the preponderance of the evidence standard and, allow for review, albeit under an abuse of discretion standard. Dkt. No. 14 at 12-13. Similar protections were not provided in Rivera Larios's "informal interview." No matter the standard of review applicable, it is difficult to conceive how Respondents' decision to re-detain Rivera Larios – in the absence of any factual support establishing that he committed a crime – comports with the statutory and regulatory scheme for his release.

        Rivera Larios attests that he called the sheriff in August of 2025 because his wife had become violent. Rivera Larios Decl. ¶¶ 13-14. Rivera Larios sought protection from authorities, and officers instead took him into custody. *Id.* Subsequently, the Lake County Sheriff's Office issued a "Detention Certificate" to Rivera Larios, corroborating that he was neither arrested nor charged with criminal conduct. Shugall Decl. ¶ 7, Ex. B. In light of this evidence, as well as the lack of evidence showing commission of a crime, Rivera Larios has not violated the terms of his supervision, and Respondents lack legal or factual support to re-detain him even under an abuse of discretion standard. Thus, Respondents' actions contravene Title 8 U.S.C. § 1231(a)(6) and 8 C.F.R. § 241.4(l).

        Unless a noncitizen violates the terms of their supervision following release upon expiration of the 90-day removal period pursuant to Title 8 U.S.C. § 1231(a)(6) and 8 C.F.R. § 241.4(l), there is no statutory or regulatory basis for the government to take the noncitizen back into custody. Therefore, Rivera Larios has demonstrated a likelihood of success on his claim that Respondents' efforts to re-detain him in the absence of evidence that he committed a crime violate Title 8 U.S.C. § 1231 and 8 C.F.R. § 241.4(l).

//

//

### b. Violation of Fifth Amendment Due Process Clause

Petitioner further asserts that his re-detention violates his right to due process. Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001) (citing *Campos-Sanchez v. I.N.S.*, 164 F.3d 448, 450 (9th Cir. 1999), superseded by statute on other grounds as stated in *Arizmendi-Medina v. Garland*, 69 F.4th 1043, 1053 (9th Cir. 2023)). In deciding what procedural process is due, the court considers well-trodden factors set forth by the Supreme Court: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

At the outset, Respondents question the application of *Mathews* in this case, given "the unique constitutional treatment of detained aliens." Dkt. No. 14 at 15 (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022)). Despite this glancing contention, Respondents avoid citing any case in which a court avoided applying *Mathews* in the immigration context, and to the contrary, the Ninth Circuit and its sister circuits have consistently applied the *Mathews* test to due process challenges like this, where the non-citizen has entered and been residing in the United States. *See Rodriguez Diaz*, 53 F.4th at 1206-07 (collecting cases). This Court follows that reasoning and will apply the *Mathews* three-prong test to assess the propriety of ordering a hearing before a neutral arbiter before an individual is deprived of his liberty. *See also Pinchi v. Noem*, --- F. Supp. 3d ----, 2025 WL 2084921, at *3 (N.D. Cal. July 24, 2025) (applying *Mathews*); *Guillermo M.R. v. Kaiser*, 2025 WL 1983677, at *4 (same); *Rodriguez Rodriguez v. Kaiser*, 1:25-cv-1111-KES-SAB, 2025 WL 2545359, at *4 (E.D. Cal. Sept. 4, 2025) (same). Here, the *Mathews* factors weigh heavily in favor of affording Rivera Larios further due process: his private interest in not being detained remains substantial; the risk of erroneous deprivation

10

1  without a pre-detention hearing is great in light of the questions about whether respondents have a
2  reasonable basis to find he violated the terms of his release; and the Government's interest in
3  detention without a hearing is low in light of the fact that Rivera Larios has complied with his
4  supervision requirements for several years.

### i. Liberty Interest

"Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that the [due process clause] protects." *Zadvydas*, 533 U.S. at 690. Therefore, individuals conditionally released from detention have a protected interest in their "continued liberty." *See Young v. Harper*, 520 U.S. 143, 147, 149, 152-53 (1997) (holding that a pre-parolee released to "reduce prison overcrowding" enjoyed a protected liberty interest). The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country. *Young*, 520 U.S. at 148; *see also Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) ("[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others."); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same in the context of probation). In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, "his condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected liberty interest in his "continued liberty." *Id.* at 481-84.

11

Like the individuals in *Young*, *Morrissey*, and *Gagnon*, Rivera Larios has a liberty interest in his continued release. Rivera Larios has remained out of detention for several years, living with his family and contributing to the household. The evidence demonstrates that he complied with the conditions of his release. Rivera Larios possesses an interest in his continued liberty, which has grown over time, and he also possesses a due process right to a hearing before being re-detained. Indeed, given the civil context of detention in immigration proceedings, Petitioner's "liberty interest is arguably greater than the interest of parolees in *Morrissey*." *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (citing *Morrissey*, 408 U.S. at 487).

Respondents observe that, in *Zadvydas*, the Supreme Court instructed that removable non-citizens' "release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and [they] may no doubt be returned to custody upon a violation of those conditions." 533 U.S. at 700. However, *Zadvydas* provided no instruction for what process is necessary to protect non-citizens' liberty interest when the government seeks to return them to custody. Instead, *Morrissey* and *Young* address that issue, explaining that the deprivation is a "grievous loss" that can be taken away only upon review at a hearing before a neutral arbiter, regardless of whether government agents otherwise possess statutory authority to re-detain. *Morrissey*, 408 U.S. at 482, 489; *see also Young*, 520 U.S. at 148. That Rivera Larios is a noncitizen thus does not reduce his liberty interest or distinguish his circumstances from the petitioner in *Morrissey*, contrary to Respondents' argument.

Respondents describe Rivera Larios's liberty interest as "reduced by the fact that he is a noncitizen subject to a final order of removal who violated the conditions of his release." Dkt. No. 14 at 15 (citing *Uc Encarnacion v. Kaiser*, No. 22-cv-04369-CRB, 2022 WL 9496434, at *3 (N.D. Cal. Oct. 14, 2022); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-08 (9th Cir. 2022)). Respondents also rely on Rivera Larios's immigration history and that he is subject to an administrative order of removal to support their assertion that Rivera Larios has a reduced liberty interest. *See generally* Dkt. No. 14. Neither his immigration history nor the fact that he is subject to an order of administrative removal lessen Rivera Larios's protectable liberty interest. Similarly, none of these aspects of his immigration status justify re-detaining him without process. Indeed,

courts recognize the strong liberty interest implicated in cases like that of Rivera Larios, where a petitioner was previously released on supervision and there has been no change in circumstances. *See, e.g.*, *Guillermo M.R.*, 2025 WL 1983677, at *4; *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL1771438, at *3 (N.D. Cal. June 26, 2025). By releasing Rivera Larios in January 2022, Respondents necessarily determined that he was not a danger to the community or a flight risk, and that his removal was not foreseeable. Respondents were aware of Rivera Larios's immigration history at the time they released him over three years ago. By attempting to re-detain Petitioner without a pre-deprivation hearing before an immigration judge, Respondents contravene the "implicit promise that [petitioner's bond] will be revoked only if he fails to live up to the [bond] conditions." *Morrissey*, 408 U.S. at 482.

The only case cited by Respondents in support of the premise that an arrest may represent "changed circumstances" sufficient to merit re-detention of an individual previously released on bond considered the lawfulness of an arrest under Section 1226(b) in the context of a motion to suppress evidence obtained as a result of the arrest. *United States v. Cisneros*, No. 19-CR-00280-RS-5, 2021 WL 5908407, at *4 (N.D. Cal. Dec. 14, 2021) ("An arrest can be considered in determining whether an immigrant should be detained").[2] There, the defendant challenged his re-arrest by ICE premised on the defendant's arrest by San Francisco Police Department, which was executed in the course of a joint investigation with ICE. *Id.*, at *1-*2. While an arrest in certain instances might constitute sufficient changed circumstances to warrant rearrest by ICE, as in *Cisneros* where ICE was working with local law enforcement related to the underlying arrest, the

---

[2] Respondents also contend that "reinvolvement with the criminal justice system" can qualify as "changed circumstances." *See* Dkt. No. 14 at 16 (citing *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021)). But the quoted excerpts from dicta do not stand for the broader premise asserted by the Government, as the Ninth Circuit found the matter moot following the immigration detainee's release on bond. *Id.* at 787. The *Panosyan* memorandum disposition does not inform the question of whether an arrest may demonstrate commission of a crime sufficient to show a violation of an immigrant's conditions of release that would, in turn, support a deprivation of liberty.

13

Court does not find that logic persuasive here where the ICE lacked any information about Rivera Larios's contact with local law enforcement.[3]

The Court finds that Petitioner has a protected liberty interest in his release as previously ordered by the immigration judge. *See Guillermo M. R.*, 2025 WL 1983677, at *4 (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); *Ortega*, 2025 WL 1771438, at *3 (collecting cases finding that noncitizens released on bond possess a strong liberty interest).

### ii. Risk of Erroneous Deprivation

Civil immigration detention, which is "nonpunitive in purpose and effect," is justified when a noncitizen presents a risk of flight or danger to the community. *Zadvydas*, 533 U.S. at 690; *see also Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). The risk of erroneous deprivation of a noncitizen's liberty interest is particularly high where, after being previously found to not be a flight risk or danger to the community, the government seeks to re-detain them without a hearing or other procedural safeguard. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025); *Arzate v. Andrews*, No. 1:25-CV-00942-KES-SKO (HC), 2025 WL 2230521, at *5 (E.D. Cal. Aug. 4, 2025). In *Guillermo M. R. v. Kaiser*, the court considered a similar habeas petition from an ICE detainee. There, ICE determined that the petitioner was deportable under Title 8 U.S.C. § 1231(a)(6) due to a conviction for an aggravated felony. *Guillermo M. R.*, 2025 WL 1983677, at *1. In March 2023, an Immigration Judge released the petitioner on bond, and ICE imposed a requirement that he "not commit any crimes" as a condition of his release. *Id.* The petitioner remained on bond for several years without incident, maintaining gainful employment and caring for his ailing mother, before he was arrested for robbery and vandalism but released without charge. *Id.* The police report associated with the arrest identified a witness who described and corroborated the petitioner's potentially criminal conduct. *Id.* Though it learned of petitioner's

---

[3] Moreover, the Court finds the Government's selective reliance on *Cisneros* dubious. In *Cisneros*, the defendant was afforded a bond hearing before an immigration judge after being redetained by ICE, 2021 WL 5908407, at *4, a process the Government resists here.

14

arrest the next day, ICE took no action to re-detain him for over five weeks, until petitioner appeared for an in-person check-in with ICE. *Id.* In response to petitioner's motion for preliminary injunction in the habeas action that followed, ICE contended that it could re-detain immigration releasees for purely technical reasons, without even establishing a "change in circumstances" compared to those existing at the time of the initial bond release. *Id.* at *8. The Court concluded that leaving detainees effectively unable to seek review of their detention by an IJ for at least six months "is a recipe for arbitrary and erroneous deprivations of liberty." *Id.* at *8 (citing *Zadvydas*, 533 U.S. at 692 ("The Constitution may well preclude granting 'an administrative body the unreviewable authority to make determinations implicating fundamental rights.' ")). In light of the risk of erroneous deprivation of liberty associated with re-detention without a bond hearing, combined with ICE's lack of factual support to find a material change in circumstances since petitioner's initial release on bond, the court found a likelihood of success on a due process violation under *Mathews*. *Id.* at *8.

In this case, ICE similarly seeks to re-detain Rivera Larios after a tenure on bond that has lasted several years, since January 2022. Petitioner was arrested without notice while appearing for a check-in with ICE and was not provided any procedural safeguards to determine whether the circumstances had changed such that his re-detention was justified. Respondents seek to re-detain Rivera Larios for violating the terms of his release, but they present no evidence of criminal conduct and assert that Rivera Larios is not entitled to a pre-detention hearing under Section 1231(a)(6). *See, e.g.*, Dkt. No. 14 at 13-14. This refusal to afford a pre-detention hearing in the unique posture of re-detention of an immigrant poses a constitutionally impermissible risk of erroneous deprivation. *See Guillermo M. R.*, 2025 WL 1983677, at *8-9.

Respondents' positions only highlight the significant risk of erroneous deprivation of liberty if Rivera Larios is not afforded additional process. Rivera Larios called the Lake County Sheriff in August of 2025 because his wife had become violent toward him. Rivera Larios Decl. ¶¶ 13-14. Rivera Larios sought protection from authorities, which resulted in the officers taking him into custody. *Id.* The Lake County Sheriff's Office subsequently issued a Detention Certificate to Rivera Larios, corroborating that he was neither arrested nor prosecuted. Shugall

15

Decl. ¶ 7, Ex. B. In light of Respondents' apparent lack of justification to re-detain Rivera Larios, the risk of erroneous deprivation is high, and "allowing a neutral arbiter to review [these] facts would significantly reduce the risk of erroneous deprivation." *Guillermo M. R.*, 2025 WL 1983677, at *4.

### iii.   Burden on Respondents Versus Petitioner's Interest

Turning to *Mathews's* third prong, Respondents aver that "the government clearly has a strong interest in preventing aliens from remain[ing] in the United States in violation of our law." Dkt. No. 14 at 19 (quoting *Rodriguez Diaz*, 53 F.4th at 1208 (internal quotation marks omitted)). However, the Government's interests in controlling noncitizens' unlawful presence in the United States does not particularly inform the legal issue presented at this juncture – whether the burden on the Government to present evidence supporting a violation of Rivera Larios's conditions of release outweighs Rivera Larios's interests in remaining free from arbitrary detention. *Mathews*, 424 U.S. at 335. Respondents' interest in detaining Rivera Larios without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 787 F. Supp. 3d at 1094. Any additional burden does not outweigh Rivera Larios's substantial liberty interests and the risk of erroneous deprivation.

### iv.   Due Process Conclusion

On balance, the *Mathews* factors show that Rivera Larios is entitled to a pre-deprivation hearing, which should have been provided before he was detained. " '[T]he root requirement' of the Due Process Clause" is " 'that an individual be given an opportunity for a hearing before [she] is deprived of any significant protected interest.' " *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon v. Burch*, 494 U.S. 113, 127 (1990) ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty"). The Supreme Court has held that due process requires a pre-deprivation hearing before those released on parole from a criminal conviction can have their bond finally revoked. *See Morrissey*, 408 U.S. at 480-86. The same is true for those subject to revocation of probation. *Gagnon v.*

16

*Scarpelli*, 411 U.S. at 782.  Given the absence of "evidence of urgent concerns," the Court concludes that "a pre-deprivation hearing [was] required to satisfy due process." *Guillermo M. R.*, 2025 WL 1983677, at *9.  With these considerations in mind, Rivera Larios is likely to succeed on the merits of his procedural due process claim.

### 3. **Irreparable Harm**

Beyond establishing a likelihood of success of the merits, plaintiffs seeking a preliminary injunction must show that they are likely to suffer irreparable harm without preliminary relief. *Winter*, 555 U.S. at 20.  "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (citation omitted).  A "showing of a mere possibility of irreparable harm is not sufficient under *Winter*." *Earth Island Inst. v. Carlton*, 626 F.3d 462, 468 (9th Cir. 2010).  "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 247, 272 (1976)).  Relevant here, "[t]he Ninth Circuit has recognized 'irreparable harms imposed on anyone subject to immigration detention' including 'the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained.' " *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (quoting *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017)).  In this case, Rivera Larios sets forth a compelling case that his detention would impose severe burdens – both financially and otherwise – on himself and his family.  Rivera Larios faces the loss of freedom, the zenith of a constitutional liberty interest.  The element of irreparable harm weighs heavily in Rivera Larios's favor.

### 4. **Balance of Equities and Public Interest**

In deciding whether to grant an injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017) (quoting *Winter*, 555 U.S. at 24).  Courts "explore the relative harms to applicant and respondent, as well as the interests of the public at large." *Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501

U.S. 1301, 1305 (1991) (internal quotation marks and citation omitted).  Where the government is a party, the balance of equities and public interest factors merge.  *Drakes Bay Oyster Co.*, 747 F.3d at 1092 (citing *Nken*, 556 U.S. at 435).

As the court in *Diaz v. Kaiser* recently explained:

> The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering. . . . Without the requested injunctive relief, Petitioner-Plaintiff might be abruptly taken into ICE custody, subjecting both him and his family to significant hardship.  Yet the comparative harm potentially imposed on Respondents-Defendants is minimal – a mere short delay in detaining Petitioner-Plaintiff, should the government ultimately show that detention is intended and warranted.

*Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (Freeman, J.) (citations omitted).  The same reasoning applies here.  The potential harm to Petitioner due to improper detention far outweighs any delay faced by Respondents or disruption in their effort to re-detain him for a legally cognizable reason.  "Moreover, the [Government] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."  *Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983).  The balance of equities and public interest thus weigh in Rivera Larios's favor.

## III.     CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Petitioner's Motion for a Preliminary Injunction.  Respondents are **ENJOINED AND RESTRAINED** from re-detaining Rivera Larios without notice and a pre-deprivation hearing before an Immigration Judge to evaluate whether his re-detention is warranted based on flight risk or a danger to the community.  No security bond is required, as the government provides no evidence of costs it will incur due to Petitioner's release.

**IT IS SO ORDERED.**

Dated: October 31, 2025

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**